IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

JOHNNY L. MEADOWS, *et al*,　　　　　　§
　　　　　　　　　　　　　　　　　　　§
　　　　Plaintiff,　　　　　　　　　　　§
　　　　　　　　　　　　　　　　　　　§
v.　　　　　　　　　　　　　　　　　　§　　CIVIL ACTION NO. 3:15-cv-01173-N
　　　　　　　　　　　　　　　　　　　§
LATSHAW DRILLING COMPANY, LLC,　　§
　　　　　　　　　　　　　　　　　　　§
　　　　Defendant.　　　　　　　　　　 §

## PLAINTIFFS' BRIEF IN SUPPORT OF THEIR
## MOTION FOR SUMMARY JUDGMENT

Plaintiff, Johnny L. Meadows, on behalf of himself and all opt-in Plaintiffs in this federal Fair Labor Standards Act ("FLSA") lawsuit (collectively "Plaintiffs"), files this Brief in Support of Plaintiffs' Motion for Summary Judgment (the "Brief") requesting that the Court enter judgment requiring Defendant, Latshaw Drilling Company, LLC ("Defendant" or "Latshaw"), to pay Plaintiffs the damages and remedies sought in this lawsuit.

Pursuant to LR 56.5(a), this Brief is filed as a separate document from Plaintiffs' Motion for Summary Judgment (the "MSJ").

Pursuant to LR 56.3(a)(2) and LR 56.6, Plaintiffs file, as a separate document, an Appendix containing materials in support of the MSJ and this Brief. Plaintiffs incorporate that Appendix by reference as if set forth fully in the MSJ and this Brief. Citations to that Appendix are set forth in this Brief pursuant to LR 56.5(c).

The LR 56.3(a)(1) summary of the elements of each claim or defense for which Plaintiffs seek summary judgment is set forth in their Motion, and is incorporated by reference as if set forth fully in this Brief.

## TABLE OF CONTENTS

TABLE OF CONTENTS...................................................................................................2

TABLE OF AUTHORITIES ...........................................................................................5

I.      INTRODUCTION .................................................................................................1

   A.  Summary. .......................................................................................................... 1

   B.  Undisputed Facts Show that Defendant Did Not Pay Plaintiffs Time and One-Half Their
       Regular Rates of Pay for All Hours Worked over Forty in Each Workweek. .................... 1

   C.  Plaintiffs Are Entitled to Judgment as a Matter of Law that Defendant Violated the FLSA
       by Not Including OBM and Bonuses in Plaintiffs' Respective Regular Rates of Pay
       Because Defendant Failed to Plead Any Affirmative Defense that It Could Legally
       Exclude Such Pay from the Regular Rate Pursuant to the FLSA. ..................................... 2

       1.  Under the FLSA There Is a *Legal Presumption* that All Remuneration
           Paid to or on Behalf of an Employee Is Included in Calculating the
           Employee's Regular Rate of Pay Unless the Employer Pleads and Proves,
           by Affirmative Defense, one of the Eight Statutory Exclusions from the
           Regular Rate Set Forth in 29 U.S.C. § 207(e)(1)-(8)................................................3

       2.  Because Defendant Failed to Timely Plead Any Affirmative Defense
           Pursuant to 29 U.S.C. § 207(e)(1)-(8) to Exclude the OBM and Bonus
           Remuneration from Plaintiffs' Respective Regular Rates of Pay,
           Defendant Has Waived Any and All Such Potential Defenses, and the
           Court Should Proceed to Calculate Damages. ...........................................................4

       3.  In the Alternative, and Without Waiving Their Position that Defendant
           Waived Any and All Affirmative Defenses Relative to Exclusion of
           Remuneration from the Regular Rate, Assuming *Arguendo* that Defendant
           Had Timely Pleaded Any Such Affirmative Defense, It Could Not Meet
           Its Burden of Proof Relative to Same. ......................................................................4

   D.  Damages............................................................................................................ 5

       1.  Back Overtime Wages. ..............................................................................5

       2.  Liquidated Damages. .................................................................................7

       3.  Legal Fees, Costs, and Post-Judgment Interest.......................................8

II.     SUMMARY JUDGMENT STANDARD.............................................................8

III.    PROCEDURAL HISTORY....................................................................................9

IV.     FACTUAL BACKGROUND ...............................................................................11

   A.  Plaintiffs' Work for Defendant. .................................................................... 11

B. OBM Pay. ................................................................................................ 12

C. Bonus Pay. .............................................................................................. 13

V.     ARGUMENTS AND AUTHORITIES ................................................................ 15

A. There Is No Genuine Issue of Material Fact, and Plaintiffs Are Entitled to Judgment as a Matter of Law that Defendant Violated the FLSA by Not Including OBM Pay and Bonus Pay in Plaintiffs' Respective Regular Rates of Pay. ........................................................ 15

    1. Under the FLSA There Is a *Legal Presumption* that All Remuneration Paid to or on Behalf of an Employee Is Included in Calculating the Employee's Regular Rate of Pay Unless the Employer Pleads and Proves, by Affirmative Defense, one of the Eight Statutory Exclusions from the Regular Rate Set Forth in 29 U.S.C. § 207(e)(1)-(8). ............................................ 17

    2. Because Defendant Failed to Timely Plead Any Affirmative Defense Pursuant to 29 U.S.C. § 207(e)(1)-(8) to Exclude the OBM and Bonus Remuneration from Plaintiffs' Respective Regular Rates of Pay, Defendant Has Waived Any and All Such Potential Defenses, and the Court Should Proceed to Calculate Damages. ....................................... 18

    3. In the Alternative, and Without Waiving Their Position that Defendant Waived Any and All Affirmative Defenses Relative to Exclusion of Remuneration from the Regular Rate, Assuming *Arguendo* that Defendant Had Timely Pleaded Any Such Affirmative Defense, It Could Not Meet Its Burden of Proof Relative to Same. ................................................. 21

        a. Defendant Cannot Prove Any Affirmative Defense Exclusion for OBM Pay. ................................................................................... 23

        b. Defendant Cannot Prove Any Affirmative Defense Exclusion for Bonus Pay. .................................................................................. 30

            i. Defendant Did Not Retain Sole Discretion as to the Fact or Amount of the Bonus Pay. ................................................. 32

            ii. Bonus Pay Was Premised on Plaintiffs Working More Rapidly, Steadily, and Efficiently in Addition to Being Based on Quality and Accuracy of Their Work. ........................................... 33

            iii. Bonus Pay Was Announced to Plaintiffs and Agreed upon in Advance of the Plaintiffs' Work. ....................................... 36

B. Plaintiffs Are Entitled to Back Unpaid Overtime Wages. ................................................. 37

    1. Representative Discovery and Extrapolation of Damages ..................................... 38

    2. Plaintiffs Seek Back Overtime Wages on the Basis of Half-Time as Opposed to Time and One-Half the Regular Rate of Pay ..................................... 40

        a. Plaintiffs Receiving Only OBM Pay ............................................................. 40

        b. Plaintiffs Receiving Only Bonus Pay. ......................................................... 41

        c. Damage Model Averaging OBM Pay and Bonus Pay ..................................... 42

C.   Defendant's Conduct Was "Willful" and the Court Should Respectfully Award Damages Based on the FLSA's Three Year Statute of Limitations. ................................................. 42

D.   Plaintiffs Are Entitled to Liquidated Damages in an Amount Equal to Back Overtime Wages.................................................................................................................................. 45

E.   Post-Judgment Interest, Legal Fees, and Costs.............................................................. 48

VI.   CONCLUSION...................................................................................................................48

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Alonzo v. Maximus, Inc.*,
    832 F. Supp. 2d 1122 (C.D. Cal. 2011) ...............................................................18, 19, 31, 37

*Alvarez Perez v. Sanford-Orlando Kennel Club, Inc.*,
    515 F.3d 1150 (11th Cir. 2008) .......................................................................................46

*Anderson v. Liberty Lobby*,
    477 U.S. 242 (1986)..........................................................................................................8

*Anderson v. Mt. Clemens Pottery Co.*,
    328 U.S. 680, 66 S.Ct. 1187, 90 L.Ed. 1515 (1946).................................................6, 40

*Barcellona v. Tiffany English Pub, Inc.*
    597 F.2d 464 (5th Cir. 1979) ...........................................................................................46

*Bay Ridge Operating Co. v. Aaron*,
    334 U.S. 446, 68 S. Ct. 1186, 92 L. Ed. 1502 (1948)....................................................24

*Bernard v. IBP, Inc. of Neb.*,
    154 F.3d 259 (5th Cir. 1998) ...........................................................................................46

*Black v. Settlepou, P.C.*,
    732 F.3d 492 (5th Cir. 2013) .....................................................................................38, 48

*Boudreaux v. Swift Transp. Co.*,
    402 F.3d 536 (5th Cir. 2005) .............................................................................................9

*Brantley v. Inspectorate Am. Corp.*,
    821 F. Supp. 2d 879 (S.D. Tex. 2011) ............................................................................46

*Brooklyn Sav. Bank v. O'Neil*,
    324 U.S. 697 (1945)..........................................................................................................45

*Celotex Corp. v. Cattrett*,
    477 U.S. 317 (1986)...............................................................................................8, 29, 37

*Cox v. Brookshire Grocery Co.*,
    919 F.2d 354 (5th Cir. 1990) ...........................................................................................43

*Diaz v. Jaguar Rest. Group, LLC*,
    627 F.3d 1212 (11th Cir. Fla. 2010) ...............................................................................19

*Donovan v. Hamm's Drive Inn,*
   661 F.2d 316 (5th Cir. 1981) ........................................................................6, 40

*Duffie v. United States,*
   600 F.3d 362 (5th Cir. 2010) ...............................................................................9

*E.E.O.C. v. LHC Grp., Inc.,*
   773 F.3d 688 (5th Cir. 2014) ...............................................................................8

*Floridia v. DLT 3 Girls, Inc.,*
   No. 4:11-CV-3624, 2012 WL 1565533 (S.D. Tex. May 2, 2012).........................20

*Gagnon v. United Technisource, Inc.,*
   607 F.3d 1036 (5th Cir. 2010) ..............................................................28, 29, 48

*Gilbertson v. City of Sheboygan,*
   165 F. Supp. 3d 742 (E.D. Wis. 2016)................................................................31

*Gonzalez v. McNeil Techs., Inc.,*
   No. 1:06CV204, 2007 WL 1097887 (E.D. Va. Apr. 11, 2007)..................... *passim*

*Idaho Sheet Metal Works, Inc. v. Wirtz,*
   383 U.S. 190, 86 S.Ct. 737, 15 L.Ed.2d 694 (1966)...........................................17

*Ingraham v. U.S.,*
   808 F.2d 1075 (5th Cir. 1987) .............................................................................18

*Johnson v. Big Lots Stores, Inc.,*
   604 F. Supp. 2d 903 (E.D. La. 2009)..............................................................17, 19

*Martin v. Selker Brothers, Inc.,*
   949 F.2d 1286 (3rd Cir. 1991) .............................................................................43

*Mata v. Home Health, Inc.,*
   94 F. Supp. 3d 867 (S.D. Tex. March 27, 2015)..................................................31

*McLaughlin v. McGee Bros. Co., Inc.,*
   681 F.Supp. 1117 (W.D.N.C. 1988) ...............................................................31, 37

*McLaughlin v. Richland Shoe Co.,*
   486 U.S. 128 (1988)..............................................................................................43

*Mireles v. Frio Foods, Inc.,*
   899 F.2d 1407 (5th Cir. 1990) .............................................................................45

*Mitchell v. Kentucky Fin. Co.,*
   359 U.S. 290 (1959)..............................................................................................18

*Monsivais v. C & D Groceries, Inc.*,
   No. CIV.A. H-12-2754, 2014 WL 2696628 (S.D. Tex. June 13, 2014)................................20

*Moore v. City of Austin*,
   No. A-16-CV-165-LY, 2016 WL 4146199 (W.D. Tex. Aug. 2, 2016)....................................8

*Moore v. Performance Pressure Pumping Servs., LLC*,
   No. 5:15-CV-346-RCL, 2017 WL 1501436 (W.D. Tex. Apr. 26, 2017) ...............................19

*Nero v. Indus. Molding Corp.*,
   167 F.3d 921 (5th Cir. 1999) ..............................................................................................45

*Olibas v. Barclay*,
   838 F.3d 442 (5th Cir. 2016) ..........................................................................6, 39, 40, 42

*Olibas v. Native Oilfield Servs.*,
   LLC, 104 F. Supp. 3d 791 (N.D. Tex. 2015) (Boyle, J.) .................................................. *passim*

*Perkins v. Bank of Am.*,
   602 F. App'x 178 (5th Cir. 2015) ............................................................................................8

*R.H. Cochran & Assocs. Inc., v. Sheet Metal Workers Intern. Ass'n Local
   Uniform No., 33*,
   335 F. App'x 516 (6th Cir. 2009) ..........................................................................................19

*Reyes v. Supervisor of Drug Enforcement Admin.*,
   834 F.2d 1093 (1st Cir. 1987)................................................................................................19

*Smiley v. E.I. Dupont De Nemours & Co.*,
   839 F.3d 325 (3d Cir. 2016)....................................................................................17, 18, 19

*Solis v. Hooglands Nursery, L.L.C.*,
   372 F. App'x 528 (5th Cir. 2010) (unpublished) .................................................................46

*Solis v. Min Fang Yang*,
   345 F. App'x 35 (6th Cir. 2009) (unpublished) ...................................................................46

*Tamez v. BHP Billiton Petroleum (Americas), Inc.*,
   No. 5:15-CV-330-RP, 2015 WL 7075971 (W.D. Tex. Oct. 5, 2015)....................................20

*Tran v. Thai*,
   No. CIV.A. H-08-3650, 2010 WL 5232944 (S.D. Tex. Dec. 16, 2010)................................46

*United States v. Mitchell*,
   518 F.3d 740 (10th Cir. 2008) ..............................................................................................19

*Wheeler v. B.L. Dev. Corp.*,
   415 F.3d 399 (5th Cir. 2005) ..................................................................................................8

*Wherley v. Schellsmidt*,
   No. 3:12-CV-0242-D, 2013 WL 5744335 (N.D. Tex. Oct. 23, 2013)
   (Fitzwater, J.) ...........................................................................................8, 29, 37

*Woodfield v. Bowman*,
   193 F.3d 354 (5th Cir. 1999) .............................................................................19

**Statutes, Regulations, and Rules**

28 U.S.C. § 1961 ............................................................................................48

29 U.S.C. § 203(d) ........................................................................................2,16

29 U.S.C. § 203(e) .......................................................................................2, 16

29 U.S.C. § 203(s) .......................................................................................2, 16

29 U.S.C. § 207(a) .............................................................................4, 15, 16, 22

29 U.S.C. § 207(e) ...................................................................................*passim*

29 U.S.C. § 216(b) ...............................................................................37, 45, 48

29 U.S.C. § 255(a) .............................................................................5, 7, 38, 43

29 U.S.C. § 260 .......................................................................................45, 46

29 C.F.R. § 516.2(a) .....................................................................................6, 40

29 C.F.R. § 778.110(b) ....................................................................................40

29 C.F.R. § 778.207(b) ....................................................................................24

29 C.F.R. § 778.209(a) ....................................................................................40

29 C.F.R. § 778.211(b) ................................................................................30, 32

29 C.F.R. § 778.211(c).......................................................................31, 34, 36, 37

29 C.F.R. § 778.217(a) ....................................................................................29

29 C.F.R. § 778.217(b) ....................................................................................28

29 C.F.R. § 790.22 .........................................................................................45

Fed. R. Evid. 1006 .........................................................................................39

Fed. R. Civ. P. 8(c) .............................................................................18, 19, 20

Fed. R. Civ. P. 56(a)........................................................................................................8

Fed. R. Civ. P. 26(b)(l) ..................................................................................................23

Rule 30(b)(6)........................................................................................................... *passim*

# I.    INTRODUCTION

## A.  Summary.

Plaintiffs are current and/or former non-exempt employees of Defendant under the FLSA. Plaintiffs worked as hourly paid drilling rig employees for Defendant, and regularly worked in excess of 40 hours per workweek.

In addition to their hourly rate of pay, Defendant also paid Plaintiffs additional remuneration known as oil based mud pay ("OBM Pay" or "OBM") and/or Performance and Safety Bonuses ("Bonus Pay" or "Bonuses") during the time period relevant to this lawsuit.[1] It is not disputed that Defendant did not include OBM Pay and Bonus Pay in calculating the Plaintiffs' respective regular rates of pay under the FLSA.

Although Defendant did pay Plaintiffs time and one-half their hourly rate of pay when calculating the overtime wages, Defendant's failure to include OBM Pay and/or Bonus Pay in the Plaintiffs' respective regular rates of pay resulted in an underpayment of the overtime wages which Plaintiffs were owed in violation of the FLSA.

Plaintiffs seek back overtime wages, liquidated damages, legal fees, costs, and post-judgment interest from Defendant in this lawsuit.

## B.  Undisputed Facts Show that Defendant Did Not Pay Plaintiffs Time and One-Half Their Regular Rates of Pay for All Hours Worked over Forty in Each Workweek.

With regard to the elements necessary to prove that Defendant did not pay Plaintiffs time and one-half their respective rates of pay for each and every workweek in the time period

---

[1] The relevant time period is March 9, 2012 to August 1, 2017. The first date is three years preceding the date this lawsuit was filed. **App. pp. 480-490** (Ex. 51 - Plaintiffs' Original Complaint). The latter date is the last date for which Plaintiffs have damages data for the one remaining employee of Defendant who is a Discovery Plaintiff in this lawsuit, Daniel Begley. As shown in Plaintiffs' damages spreadsheet, the exact number of workweeks worked respectively by Plaintiff and the opt-in Plaintiffs for Defendant during the relevant time period is known based on Defendant's records. **App. pp. 471-473** (Ex. 48 – Damages Spreadsheet).

relevant to this lawsuit that they worked in excess of 40 hours, the following facts are not in dispute:

1. Defendant is and has been an "enterprise engaged in commerce" pursuant to the FLSA. 29 U.S.C. § 203(s)(1)(A).

2. Defendant is/was the employer of Plaintiffs pursuant to the FLSA. 29 U.S.C. § 203(d).

3. Plaintiffs are/were employees of Defendant pursuant to the FLSA. 29 U.S.C. § 203(e)(1).

4. In addition to hourly pay, Defendant paid Plaintiffs OBM Pay and/or Bonus Pay.

5. Plaintiffs regularly worked in excess of 40 hours per workweek as employees of Defendant.

6. Defendant did pay Plaintiffs overtime pay based on time and one-half their hourly rates of pay. However, Defendant did not include OBM Pay or Bonus Pay in calculating the Plaintiffs' respective regular rates of pay in any workweek in which they worked more than 40 hours.

7. Plaintiffs were non-exempt and overtime pay eligible employees of Defendant pursuant to the FLSA.

So, there are no genuine issues of material fact that Plaintiffs have met their burden to show they were not paid time and one-half their respective regular rates of pay by Defendant for all hours worked over 40 in each and every workweek.

**C. Plaintiffs Are Entitled to Judgment as a Matter of Law that Defendant Violated the FLSA by Not Including OBM and Bonuses in Plaintiffs' Respective Regular Rates of Pay Because Defendant Failed to Plead Any Affirmative Defense that It Could Legally Exclude Such Pay from the Regular Rate Pursuant to the FLSA.**

In FLSA cases, the burden of proof typically shifts to the employer at this point to establish a lawful reason why its proven failure to pay time and one-half the regular rate of pay did not violate the FLSA. However, that cannot happen in this lawsuit because Defendant failed to plead any affirmative defense as to why its failure to include the OBM Pay and Bonus Pay in the Plaintiffs' respective regular rates of pay did not violate the FLSA's overtime wage provisions. It is the employer's burden of proof to plead and prove by affirmative defense one or more of the eight statutory regular rate exclusions set forth in 29 U.S.C. § 207(e)(1)-(8). Failure to timely plead an such affirmative defense results in waiver of same.

Accordingly, Plaintiffs are entitled to judgment as a matter of law that Defendant's failure to include OBM Pay and Bonus Pay in Plaintiffs' respective regular rates of pay violated the FLSA.

1. **Under the FLSA There Is a _Legal Presumption_ that All Remuneration Paid to or on Behalf of an Employee Is Included in Calculating the Employee's Regular Rate of Pay Unless the Employer Pleads and Proves, by Affirmative Defense, one of the Eight Statutory Exclusions from the Regular Rate Set Forth in 29 U.S.C. § 207(e)(1)-(8).**

Under the FLSA, there is a <u>legal presumption</u> that all remuneration paid to an employee is to be included in the FLSA regular rate of pay when calculating the overtime wages owed. In order for an employer to overcome that legal presumption, it must plead and prove an affirmative defense that the remuneration in question meets one of the eight statutory exclusions from the regular rate as set forth in 29 U.S.C. § 207(e)(1)-(8). Consistent with FLSA exemption, those exclusions are narrowly construed against the employer.

There can be no dispute that Defendant did not plead any affirmative defense in its Answer to Plaintiff's Original Complaint or its First Amended Answer to Plaintiff's Original Complaint which would potentially enable it to overcome the legal presumption that OBM Pay

and/or Bonus Pay should have been included in the Plaintiffs' respective regular rates of pay for each relevant workweek in this lawsuit.

**2.** **Because Defendant Failed to Timely Plead Any Affirmative Defense Pursuant to 29 U.S.C. § 207(e)(1)-(8) to Exclude the OBM and Bonus Remuneration from Plaintiffs' Respective Regular Rates of Pay, Defendant Has Waived Any and All Such Potential Defenses, and the Court Should Proceed to Calculate Damages.**

This lawsuit was filed on March 9, 2017. Defendant filed its Answer to Plaintiffs' Original Complaint on April 20, 2015. Defendant did not plead any of the statutory exclusions set forth in 29 U.S.C. § 207(e)(1)-(8) in that Answer. Defendant then filed its First Amended Answer to Plaintiff's Original Complaint on April 23, 2015. Again, no affirmative defense was pleaded relative to the aforementioned FLSA statutory exclusions.

The deadline to file motions for leave to amend pleadings in this lawsuit was over two years ago - October 16, 2015. Although an amended scheduling order was entered in this lawsuit, neither party requested an extension of the pleading amendment deadline, and the Court did not alter that pleading amendment deadline.

When an employer fails to timely plead an affirmative defense under the FLSA, that affirmative defense is waived. Accordingly, the Court's inquiry as to liability should stop here and the Court should respectfully enter judgment that Defendant failed to pay Plaintiffs all overtime wages owed in violation of 29 U.S.C. § 207(a)(1) and then proceed to the calculation of damages.

**3.** **In the Alternative, and Without Waiving Their Position that Defendant Waived Any and All Affirmative Defenses Relative to Exclusion of Remuneration from the Regular Rate, Assuming *Arguendo* that Defendant Had Timely Pleaded Any Such Affirmative Defense, It Could Not Meet Its Burden of Proof Relative to Same.**

Alternatively, and without Plaintiffs waiving their position that Defendant has waived any and all affirmative defenses relative to the exclusions in 29 U.S.C. § 207(e)(1)-(8), assuming for the sake of argument that Defendant had timely pleaded any such affirmative defense, there is no regular rate of pay exclusion in 29 U.S.C. § 207(e)(1)-(8) for which Defendant could meet its burden of proof to exclude OBM Pay and/or Bonus Pay from the Plaintiffs' respective regular rates of pay. As shown in detail *infra*, Defendant's own evidence and testimony would prevent it proving any potential affirmative defense, assuming *arguendo* any such defense had been pleaded.

**D.  Damages.**

**1.  Back Overtime Wages.**

When an employer violates the FLSA, the affected employees are entitled to recover back overtime wages for a time period of two years preceding the date the lawsuit was filed and forward. 29 U.S.C. § 255(a). A third year of recovery is added if the employee proves that the employer's violation of the FLSA was willful.

Plaintiff and Defendants originally agreed on representative discovery from 20% of the Plaintiffs, but later mutually agreed to reduce that sample to the 24 Plaintiffs who had then been deposed (the "Discovery Plaintiffs"), a representative sample which comprises approximately 15.19% of the Plaintiffs. Deposition and written discovery was conducted with regard to the Discovery Plaintiffs. However, Plaintiffs have data on the total dates of employment in the relevant time period for all Plaintiffs, in addition to data showing which of the Discovery Plaintiffs received both OBM Pay and Bonus Pay, and which of them received only one of the foregoing categories of remuneration.

Defendant's records show the overtime hours, the OBM Pay and/or Bonus Pay from which the Court can determine the regular rate of pay for each Discovery Plaintiffs to extrapolate to all Plaintiffs on the basis of:

1. Only unpaid overtime resulting from OBM Pay extrapolated from the Discovery Plaintiffs to the entire class;

2. Only unpaid overtime resulting from Bonus Pay extrapolated from the Discovery Plaintiffs to the entire class; and

3. Unpaid overtime resulting from both OBM Pay and Bonus Pay extrapolated from the Discovery Plaintiffs to the entire class.

Plaintiffs provide three spreadsheets showing those back overtime wage damages for both a two year and three year limitations period.[2]

Plaintiffs primarily rely on the third provided spreadsheet extrapolating the average regular rate of pay for OBM Pay and Bonus Pay from the Discovery Plaintiffs to all Plaintiffs that calculates back overtime wages for both a two year and three year limitations period, and offer this alternatively as their reasonable computation of their damages should the Court determine that Defendant's records are not accurate.[3] "According to the Supreme Court, the court may [where the employer's records are inaccurate] award damages to the employee, even though the result be only approximate." *Olibas v. Native Oilfield Servs.*, LLC, 104 F. Supp. 3d 791, 804 (N.D. Tex. 2015) (Boyle, J.) (citing *Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680, 688, 66 S.Ct. 1187, 90 L.Ed. 1515 (1946)).

---

[2] **App. pp. 471-479** (Exs. 48-50 – Damage Spreadsheets)
[3] **App. pp. 471-473** (Ex. 48 – Combined Damages Spreadsheet). Plaintiffs addressed data inconsistencies in Defendant's 29 C.F.R. § 516.2(a) records with opposing counsel and with Defendant's Rule 30(b)(6) witness, but believe that any remaining inconsistencies in Defendants records are not material. **App. pp. 90-104** (Ex 1 - Reid 30(b)(6) Depo 147:6-161:19). If Defendant disagrees, then the Court can follow the approach approved by the Fifth Circuit where employers fail to make or produce accurate records and estimate FLSA damages for the class. *Olibas v. Barclay*, 838 F.3d 442, 450 (5th Cir. 2016) (referencing *Donovan v. Hamm's Drive Inn*, 661 F.2d 316, 318 (5th Cir. 1981)).

The FLSA provides that when an employer's violation of the FLSA is willful, then the employees are entitled to recovery back overtime wages for a three year period preceding the date the lawsuit was filed and forward. 29 U.S.C. § 255(a). Plaintiffs present the Court with evidence showing there is no genuine issue of material fact and that they are entitled to judgment as a matter of law that Defendant's violations of the FLSA were willful. For example, Defendant's Rule 30(b)(6) representative testified in her deposition that it would be "reckless" for an employer to not investigate its obligations to include certain remuneration in the regular rate of pay for its employees, and Defendant presented no evidence that it undertook any such investigation. The back overtime wage damages for a three year limitations identified in the Damages Spreadsheets, inclusive of both OBM and Bonus damages totals $155,470.11.[4]

## 2. **Liquidated Damages.**

In addition to back overtime wages, the FLSA provides that aggrieved employees are entitled to recover liquidated damages in an amount equal to the unpaid overtime wages unless the employer pleads and proves an affirmative defense that it had an objective and subjective good faith basis for believing that its act or omission did not violate the FLSA. While Defendant did plead an affirmative defense as to liquidated damages, it has failed to present any evidence showing that it had an objective and subjective good faith basis for believing its failure to include the OBM Pay and Bonus Pay in the Plaintiffs' respective regular rates of pay did not violate the FLSA. The undisputed facts are that Defendant did not consult a lawyer, an accountant, the United States Department of Labor, or any other authority relative to its wage practices complained of in this lawsuit. Plaintiffs seek liquidated damages totaling $155,470.11, an

---

[4] **App. pp. 471-473** (Ex. 48 – Combined Damages Spreadsheet).

amount equal to the 3-year unpaid overtime wages which are itemized in the Damages Spreadsheets.[5]

### 3. <u>Legal Fees, Costs, and Post-Judgment Interest.</u>

Finally, a prevailing plaintiff in a FLSA case is entitled to post-judgment interest, legal fees, and costs. Assuming the Court grants Plaintiffs full relief relative to this Motion, then they ask that the Court set a briefing deadline for the submission of a motion for legal fees and costs 21 days after entry of judgment in their favor.

## II.    <u>SUMMARY JUDGMENT STANDARD</u>

Courts should grant summary judgment if no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). *See also Perkins v. Bank of Am.*, 602 F. App'x 178, 180 (5th Cir. 2015) (citing *Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986)). Summary judgment is appropriate if a non-moving party cannot "designate 'specific facts showing that there is a genuine issue for trial.'" *E.E.O.C. v. LHC Grp., Inc.*, 773 F.3d 688, 694 (5th Cir. 2014) (quoting *Celotex Corp. v. Cattrett*, 477 U.S. 317, 323 (1986)). Ultimately, a non-moving party bears the burden to "go beyond the pleadings and identify specific proof in the record and articulate the precise manner in which that proof supports his claim." *Moore v. City of Austin*, No. A-16-CV-165-LY, 2016 WL 4146199, at * 3 (W.D. Tex. Aug. 2, 2016) (citing *Wheeler v. B.L. Dev. Corp.*, 415 F.3d 399, 401-02 (5th Cir. 2005)).

With regard to any affirmative defense which a FLSA plaintiff does not have the burden of proof at trial, he can meet his summary judgment obligation by pointing the court to the absence of evidence to support the affirmative defense." *Wherley v. Schellsmidt*, No. 3:12-CV-0242-D, 2013 WL 5744335, at *2 (N.D. Tex. Oct. 23, 2013) (Fitzwater, J.) (citing *Celotex Corp.*

---

[5] *Id.*

*v. Catrett*, 477 U.S. 317, 325, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986)). *See also*, *Duffie v. United States*, 600 F.3d 362, 371 (5th Cir. 2010) ("[If] the burden of proof at trial lies with the nonmoving party, the movant may satisfy its initial burden by showing—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case"). (citation omitted) (internal quotation marks omitted)). The movant "must demonstrate the absence of a genuine issue of material fact," but does not have to "*negate* the elements of the nonmovant's case." *Boudreaux v. Swift Transp. Co.*, 402 F.3d 536, 540 (5th Cir. 2005) (emphasis in original) (internal quotation marks omitted). If the non-moving party cannot provide some evidence to support its claim, summary judgment is appropriate. *Id*.

### III.   PROCEDURAL HISTORY

Plaintiffs' Complaint was filed on March 9, 2015.[6] Defendant filed its Original Answer to that Complaint on April 20, 2015.[7] Defendant filed its First Amended Answer to that Complaint on April 23, 2015.[8]

The pleading amendments deadline in this lawsuit was on October 16, 2015.[9] Although an amended scheduling order was entered by the Court on July 5, 2016, the Parties did not request an alteration to that pleading amendments deadline, and the Court did not alter the date for same.[10]

The Court conditionally certified this action as a FLSA collective action on February 24, 2016.[11] Thereafter, 166[12] current or former employees of Defendant opted into this lawsuit

---

[6] **App. pp. 480-490** (Ex. 51 – Plaintiffs' Original Complaint).
[7] **App. pp. 491-501** (Ex. 52 – Defendant's Original Answer).
[8] **App. pp. 502-513** (Ex. 53 – Defendant's First Amended Answer).
[9] **App. pp. 514-516** (Ex. 54 – Scheduling Order).
[10] **App. pp. 517-519** (Ex. 55 – Joint Proposal for Scheduling Contents); **app. pp. 520-523** (Ex. 56 – Amended Scheduling Order).
[11] **App. pp. 524-532** (Ex. 57 – Order Granting Conditional Certification).
[12] ECF Nos. 20-23, 34-48, 50-54, 56-67, & 72.

despite Defendant's efforts to deter those individuals from participating.[13] Ultimately, the Court enjoined Defendant, and its owner, Trent Latshaw, from "contacting actual or absent opt-in Plaintiffs regarding the collective action without leave of the Court until the end of trial."[14]

In connection with written and deposition discovery, Plaintiff and Defendants agreed on a representative sample of Plaintiffs for discovery (the "Discovery Plaintiffs.")[15] Ultimately, there were 24 Discovery Plaintiffs in this lawsuit.[16] Defendant took the depositions of the 24 Discovery Plaintiffs in this lawsuit and provided data relative to those Plaintiffs in written discovery, including data showing total weeks worked during the course of their employment, overtime hours worked, and OBM Pay and/or Bonus Pay received.[17] However, Defendant also provided data showing the total number of weeks each Plaintiff in this lawsuit was employed which will enable the extrapolation of damages to all Plaintiffs based on the Discovery Plaintiffs.

Plaintiffs, in addition to conducting written discovery, took the Rule 30(b)(6) deposition of Defendant's designated representative, Ms. Amanda Reid ("Ms. Reid" or the "30(b)(6) Witness") on September 13, 2017.[18] At all times material, Ms. Reid, who completed the Professional Human Resources testing program allowing her to list "PHR" after her name, was Defendant's Human Resources Director.[19] Plaintiffs also took the deposition of Latshaw's owner, Mr. Trent Latshaw ("Mr. Latshaw") on August 24, 2017.[20]

---

[13] **App. pp. 533-540** (Ex. 58 - Order Granting in Part and Denying in Part Motion for Corrective Notice).
[14] *Id.* **at pp. 540** (p. 8).
[15] **App. p. 470** (Ex. 47 – List of Discovery Plaintiffs).
[16] *Id.*
[17] **App. pp. 541-580** (Ex. 59 – Individual Damage Spreadsheets).
[18] **App. pp. 2-3, 40-41, 84-85, 113-133** (Ex. 1 – Reid 30(b)(6) Dep. 9:9-10:2, 83:19-84:2, 141:24-142:1, and Ex. H to the Dep.).
[19] **App. pp. 5-6, 10-11** (Ex. 1 – Reid 30(b)(6) Dep. 17:19-19:13; 27:11-28:24).
[20] **App. pp. 141, 146-147** (Ex. 2 - Latshaw Dep. 7:11-12, 12:22-13:2).

As of the filing date of this Motion, the Parties have had adequate time for discovery and the Court's deadline for completion of all discovery passed on September 22, 2017.[21] This case is set for trial on March 12, 2018.[22] Accordingly, Plaintiffs' Motion is timely filed.

## IV.   FACTUAL BACKGROUND

### A.  Plaintiffs' Work for Defendant.

Latshaw is a drilling contractor whose primary business function is "to manufacture holes in the ground for customers."[23] Defendant's customers are energy companies which it refers to as "operators."[24] In connection with its drilling operations, Defendant had approximately 41 drilling rigs in the time period relevant to this lawsuit.[25]

Plaintiffs are/were hourly, FLSA non-exempt employees who worked as crew members on Defendant's drilling rigs.[26] Defendant identifies that a drilling rig crew had the following positions: One driller, who operated the drilling rig controls and supervised the crew; one derrick hand, who is responsible for the drilling mud systems, including work in the mud pits, used in a drilling operation in addition to handling drill pipe at the top of the drilling rig derrick; one motor hand who is responsible for working with and maintain the motors and electrical systems which power the drilling rig; and two floor hands who are responsible for working on the floor of the drilling rig, and performing various tasks, such as connecting drill pipe, working drilling slips, maintenance, and cleaning the drilling rig.[27]

---

[21] ECF Doc. 87
[22] *Id*.
[23] **App. p. 26** (Ex. 1 – Reid 30(b)(6) Dep. 43:4-9).
[24] *Id*. **at p. 30** (47:16-18).
[25] *Id*. **at p. 26** (43:10-16).
[26] **App. p. 28-29** (Ex. 1 – Reid 30(b)(6) Dep. 43:17-45:11); *See also* **app. p. 506** (Ex. 53 – Defendant's First Amended Answer at ¶29); **app. p. 438** (Ex. 27 - Defendant's Resp. to Interrogatories at Resp. to No. 4).
[27] **App. pp. 26-27** ( Ex. 1 – Reid 30(b)(6) Dep. 43:17-44:22).

All Plaintiffs in this lawsuit were Defendant's drilling rig crew members who, during the time period relevant to this lawsuit, held one or more of the foregoing job titles as employees of Defendant.[28] Plaintiffs were paid on an hourly basis in addition to receiving OBM Pay and/or Bonus Pay.[29]

Defendant's drilling rigs typically operated 24 hours a day when drilling, so there were generally two crews consisting of drillers, derrick hands, motor hands, and floor hands in a given workday (*i.e.* 10 drilling rig crew members total per workday).[30] Those crews typically worked 12 hours per day each, and generally worked schedules of 14 days on (known as a "hitch") and then were off for the next 14 day period.[31]

It is undisputed that all Plaintiffs worked overtime hours, and Plaintiffs do not dispute the overtime hours recorded for Plaintiffs in Defendant's records.[32]

**B.  OBM Pay.**

In the course of drilling operations, drilling rig crews worked with two types of drilling mud to assist in the drilling operations – oil based drilling mud and water based drilling mud.[33]

It is undisputed that Plaintiffs received extra money when they worked any part of a workday with oil-based mud.[34] Regardless of job title – driller down to floor hand – each Plaintiff received the same amount of additional daily pay when the crew worked with oil based drilling mud.[35] The amount of daily oil based mud pay Plaintiffs received varied over the years relevant to this lawsuit, and ranged from $20 to $35 per day.[36] However, the exact amount of

---

[28] *Id.* **at pp. 26-28** (43:12-45:6).
[29] *Id.* **at pp. 27-28, 36, 41, 51-52** ( 44:25-45:11; 73:5-9; 84:17-20; 94:19-95:17, Ex. K to the Dep.).
[30] *Id.* **at pp. 28, 39** (45:12-25; 76:17-23).
[31] *Id.*
[32] *Id.* **at pp. 35-37, 49** ( 72:7-74:25; 92:2-12).
[33] *Id.* **at pp. 41** (84:8-20); **App. p. 155** (Ex. 2 - Latshaw Dep. 101:14-23).
[34] **App. pp. 41, 45** (Ex. 1 – Reid 30(b)(6) Dep. 84:17-20; 88:13-16).
[35] *Id.* **at pp. 45-46** (88:24-89:10).
[36] *Id.* **at pp. 48** (91:7-25).

OBM Pay to each Plaintiff relative to weeks in which each Plaintiff worked overtime hours is shown in Defendant's records.[37] Although Plaintiffs' earnings statements purport to show the oil based mud pay as hourly, it is undisputed that the pay was actually on a daily basis.[38]

Defendant admits that it did not include OBM Pay when calculating Plaintiffs' respective regular rates of pay.[39]

## C.  Bonus Pay.

Defendant also paid some Plaintiffs compensation labeled simply as "bonuses" in their earnings statements which, like OBM Pay, was not included by Defendant in calculating Plaintiffs' respective regular rates of pay.[40] Defendant admits it has records for all Plaintiffs showing the work periods covered by each bonus they received and the number of overtime hours worked in each such period.[41]

Plaintiffs testified that these bonuses were paid to them as an incentive to complete a drilling project on or ahead of schedule, and generally refer to this pay as performance bonuses, safety bonuses, well completion bonuses, down-hole bonuses and/or bottom-hole bonuses.[42] They testify that criteria had to be met in order to receive these bonuses.[43] Plaintiffs were told during training for Latshaw that these bonuses were available as one of the "perks they offered."[44] Similarly, Plaintiffs were told by tool pushers, drillers, or rig managers, who were

---

[37] *Id*. **at pp. 49** (92:2-12).
[38] *Id*. **at p. 45, 134-138** (88:3-12; Ex. K to the Dep.).
[39] *Id* **at p. 36-37, 47** (73:5-9; 90:4-8).
[40] *Id*. **at p. 36, 50-52** (73:5-9; 93:25-95:17).
[41] *Id*. **at pp. 59** ( 102:1-12).
[42] **App. p. 190** (Ex. 4 – Barela Dep. 39:1-2); **app. pp. 238-240** (Ex. 8 – Blasingame Dep. 27:25-29:3 (bonuses for "[g]etting it done safe and fast.")); **app. p. 260** (Ex. 11 – Cerna Dep. 7:11-16 ("Well completion bonus" for "being ahead of schedule.")); **app. p. 278** (Ex. 12 – Ellis Dep. 27:11-19 ("bottom hole bonus")); **app. pp. 288-289** (Ex. 13 – Foster Dep. 24:12-25:1 ("safety bonus or completion of well before deadline bonus")); **app. p. 367-368** (Ex. 19 - Menasco Dep. 66:24-68:4 ("[bonus] made you want to work better or faster … it's a good incentive")).
[43] **App. p. 182** (Ex. 3 – Abeyta Dep. 23:16-17); **app. p. 265** (Ex. 11 – Cerna Dep. 96:9-20); **app. p. 364** (Ex. 19 – Menasco Dep. 36:2-22 (Latshaw boss and employee Darrell Waites told Menasco's crew that bonus was available if the well was completed in a certain amount of time)).
[44] **App. p. 298** (Ex. 14 – Goodwin Dep. 26:10-19).

employees of Latshaw, that these bonuses would be available during particular drilling operations.[45] Furthermore, the availability of incentive-based bonus pay is also identified in Defendant's employee handbook which Defendant admits was provided to each of the Plaintiffs when they began employment with Defendant.[46]

For litigation purposes, Defendant has called these bonuses "operator bonuses" and claims that its customers (*i.e.* operators) chose which employees to pay bonuses, how much to pay, and that Defendant was simply passing through that pay in the paychecks it issued its employees (not that such a claim is any viable FLSA defense).[47] However, in addition to this remuneration clearly being paid by Latshaw as shown in the earnings statements,[48] Mr. Latshaw testified that Defendant, not the operators, withheld payroll/FICA taxes from the bonuses when paying same to Plaintiffs.[49]

Furthermore, on approximately the last day of the discovery period, Defendant finally turned over documents which had been requested months prior showing that that the bonuses paid to Plaintiffs were based on Plaintiffs' work performance, were referred to as "performance bonuses" and "safety bonuses" by Defendant, not the "operator bonus" phrase fabricated by Defendant in this lawsuit.[50] Moreover, Defendant's invoices to its operator customers included

---

[45] **App. p. 190-191** (Ex. 4 – Barela Dep. 39:19-22, 52:5-13); **app. p. 245** (Ex. 8 – Blasingame Dep. 34:8-19); **app. p. 276** (Ex. 12 – Ellis Dep. 25:18-23); **app. p. 310** (Ex. 15 – Hilyer Dep. 21:1-19); **app. p. 332** (Ex. 17 – Meadows Dep. 16:9-20); **app. p. 367** (Ex. 19 – Menasco Dep. 67:15-23); **app. p. 388** (Ex. 20 - Munger Dep. 50:4-16); **app. p. 413** (Ex. 23 - Weems Dep. 20:1-6); **App. p. 421** (Ex. 24 - Wilkinson Dep. 30:9-18).

[46] **App. p. 470** (Ex. 26 – Excerpt from Latshaw Employee Handbook); **app. pp. 59-60** (Ex. 1 – Reid 30(b)(6) Dep. 102:13-103:23).

[47] **App. p. 438** (Ex. 27 -- Defendant's Resp. to Interrogatories at Resp. to No. 3 (Claiming that the bonuses were "customer discretionary bonuses" and that each operator chooses who, when and if a bonus is to be paid. Latshaw merely provides a service to their customer by passing the bonus to the employee through [Latshaw's] payroll system.")).

[48] **App. p. 50-52** (Ex. 1 – Reid 30(b)(6) Dep. 93:25-95:1); *See also Id.* **at p. 134-138** (Exhibit K to Dep.).

[49] **App. p. 168-170** (Ex. 2 - Latshaw Dep. 124:16-21, 125:23-126:1).

[50] **App. p. 449** (Ex. 30 - Sandridge Notice of Bonus); **app. p. 450** (Ex. 31 - Summary of Sandridge Bonus from July 22, 2014); **app. p. 451** (Ex. 32 - Bonus Program Overview from Operator Approach); **app. p. 452** (Ex. 33 - Email from Operator Centennial ("Centennial will being to implement a Performance Bonus effective for wells spud after October 1, 2014")); **app. p. 453** (Ex. 34 - Drilling Rig Performance Incentive Program from Operator Concho; **app.**

requests for payment for the entire drilling operation, including drilling rig moving time, night operation hours, day operation hours, equipment or tool rentals, Latshaw employee training, "Crew Bonus – Performance," and other matters that a company would typically charge its customer relative to services and products rendered.[51] Defendant's Rule 30(b)(6) Witness testified that Latshaw does not contend that any operators were employers of Plaintiffs under the FLSA or joint employers of Plaintiffs, along with Latshaw, under the FLSA.[52]

## V.   <u>ARGUMENTS AND AUTHORITIES</u>

Plaintiffs incorporate the preceding sections by reference as if set forth fully herein.

**A.   <u>There Is No Genuine Issue of Material Fact, and Plaintiffs Are Entitled to Judgment as a Matter of Law that Defendant Violated the FLSA by Not Including OBM Pay and Bonus Pay in Plaintiffs' Respective Regular Rates of Pay.</u>**

The overtime wage requirements of the FLSA state that **"[e]xcept as otherwise provided in this section, no employer shall employ any of his employees who in any workweek is engaged in commerce or in the production of goods for commerce, or is employed in an enterprise engaged in commerce or in the production of goods for commerce, for a workweek longer than forty hours unless such employee receives compensation for his employment in excess of the hours above specified at a rate not less than one and one-half times the regular rate at which he is employed."** 29 U.S.C. § 207(a)(1). (emphasis added).

---

**p. 454-455** (Ex. 35 - Email from Operator Element ("Element feels this well is the new base line for the project and would like to re-instate the performance bonus of $200.00/day, not to exceed $600.00, for besting this record")); **app. p. 457** (Ex. 37 - Invoice to Operator Approach for "Crew Bonus – Performance"); **app. pp. 458-460** (Ex. 38 - Invoice to Operator Bopco for "Crew Bonuses" and attached description of bonus criteria); **app. p. 461** (Ex. 39 - Description of Bonus from Operator Centennial for "Performance & Safety").

[51] **App. p. 457** (Ex. 37 - Invoice to Operator Approach for "Crew Bonus – Performance"); **app. pp. 458-460** (Ex. 38 - Invoice to Operator Bopco for "Crew Bonuses" and attached description of bonus criteria); **app. p. 462** (Ex. 40 - Invoice to Operator COG for "Crew Bonus – Performance & Safety"); **app. p. 463-464** (Ex. 41 - Invoice to Operator Element for "Crew Bonus – Safety" and attached "Performance & Safety" Bonus Breakdown); **app. p. 465**(Ex. 42 - Invoice to Operator Enervest for "Crew Bonus – Safety"); **app. p. 465** (Ex. 43 - Invoice to Operator Diamondback for "Crew Bonus – Performance"); **app. p. 467** (Ex. 44 - Invoice to Operator Legacy for "Safety & Performance Bonus"); **app. p. 468** (Ex. 45 - Invoice to Operator Sandridge for "Crew Bonus – Performance"); **app. p. 469**(Ex. 46 - Invoice to Operator Tall City for "Crew Bonus – Performance").

[52] **App. pp. 33** (Ex. 1 – Reid 30(b)(6) Dep. 70:9-16).

Relative thereto, the following facts are not in dispute:

1.  Defendant is and has been an "enterprise engaged in commerce" pursuant to the FLSA pursuant to 29 U.S.C. § 203(s)(1)(A).[53]

2.  Defendant is/was the employer of Plaintiffs pursuant to the FLSA relative to the claims in this lawsuit. 29 U.S.C. § 203(d).[54]

3.  Plaintiffs are/were employees of Defendant pursuant to the FLSA. 29 U.S.C. § 203(e)(1).[55]

4.  In addition to hourly pay, Defendant paid Plaintiffs OBM Pay and/or Bonus Pay.[56]

5.  Plaintiffs regularly worked in excess of 40 hours per workweek (typically 84 hours per workweek equaling 44 overtime hours per workweek).[57]

6.  Defendant acknowledges that it has records which demonstrate with peculiarity the amounts of all such remuneration to Plaintiffs and therefore the amount of unpaid overtime due to Plaintiffs.[58]

7.  Defendant did not include OBM Pay or Bonus Pay in calculating the Plaintiffs' respective regular rates of pay in any workweek in which they worked more than 40 hours.[59]

8.  Plaintiffs were non-exempt and overtime pay eligible employees of Defendant pursuant to the FLSA.[60]

"[T]he FLSA requires that employers pay employees at a rate not less than one and one-half times the regular rate of pay for any hours the employees work in excess of forty during the workweek." *Olibas v. Native Oilfield Servs.*, LLC, 104 F. Supp. 3d 791, 796 (N.D. Tex. 2015) (Boyle, J.), *aff'd sub nom. Olibas v. Barclay*, 838 F.3d 442 (5th Cir. 2016) (citing 29 U.S.C.

---

[53] *Compare* **App. p. 482** (Ex. 51 – Plaintiffs' Original Complaint, ¶ 14) *with* **App. p. 504** (Ex. 53 – Defendant's First Amended Answer, ¶ 14).

[54] **App. pp. 33, 35, 64-70** (Ex. 1 – Reid 30(b)(6) Dep. 70:9-16; 72:7-19; 107:5-113:22 ).

[55] *Id*. **at pp. 35, 64-70** (72:7-19; 107:5-113:22).

[56] *Id*. **at pp. 41, 45, 50-53** (84:17-20; 88:13-16; 93:25-95: 17; 96:5-10

[57] *Id*. **at pp. 17** (34:24-25).

[58] *Id*. **at pp. 49, 59, 65** (92:2-12; 102:1-12; 108:14-114:7).

[59] *Id*. **at pp. 36, 47, 50, 51** (73:4-9; 90:4-8; 93:25-95: 17).

[60] *Id*. **at pp. 87-88** (144:20:-145:2); **app. p. 438** (Ex. 27 – Defendant's Resp. to Plaintiff's Interrogatories at Resp. to Rog. 4); *Compare* **App. p. 485** (Ex. 51 – Plaintiff's Original Complaint ¶ 29). *with* **App. p. 502-513** (Ex. 53 – Defendant's First Amended Answer ¶ 29).

§ 207(a)(1)). "Given its remedial purposes, courts generally construe the FLSA liberally in favor of employees." *Id.* at 795–96.

The FLSA regular rate of pay "**shall be deemed** to include all remuneration for employment **paid to, or on behalf of**, the employee… ." 29 U.S.C. § 207(e) (emphasis added). Indeed, there is a "presumption [that] monies paid to employees are included in calculating regular rates of pay." *Gonzalez v. McNeil Techs., Inc.*, No. 1:06CV204, 2007 WL 1097887, at *2 (E.D. Va. Apr. 11, 2007) (citing 29 U.S.C. § 207(e)).

Plaintiffs have shown there is no genuine issue of material fact, and that they are entitled to judgment as a matter of law that Latshaw, an enterprise engaged in commerce, was their employer, and that, as employees of Latshaw, Plaintiffs worked more than 40 hours per workweek without being paid time and one-half their respective regular rates of pay because Defendant did not include OBM Pay and/or Bonus pay in calculating Plaintiffs' respective regular rates of pay.

1.  **Under the FLSA There Is a *Legal Presumption* that All Remuneration Paid to or on Behalf of an Employee Is Included in Calculating the Employee's Regular Rate of Pay Unless the Employer Pleads and Proves, by Affirmative Defense, one of the Eight Statutory Exclusions from the Regular Rate Set Forth in 29 U.S.C. § 207(e)(1)-(8).**

At this point in an FLSA proceeding, the burden of proof usually shifts to the employer to prove, by affirmative defense, that it can overcome the legal presumption that all remuneration paid to or on behalf of the employee must be included in the regular rate. 29 U.S.C. § 207(e); *Johnson v. Big Lots Stores, Inc.*, 604 F. Supp. 2d 903, 927 (E.D. La. 2009) ("The employer bears the burden of demonstrating that certain payments should not be included in determining its employees' regular rate.") (citing *Idaho Sheet Metal Works, Inc. v. Wirtz*, 383 U.S. 190, 209, 86 S.Ct. 737, 15 L.Ed.2d 694 (1966)); *Smiley v. E.I. Dupont De Nemours & Co.*, 839 F.3d 325, 330

(3d Cir. 2016) ("[T]here are several exceptions to the otherwise all-inclusive rule set forth in section 207(e) [for calculating the regular rate], but the statutory exclusions are narrowly construed, and the employer bears the burden of establishing that an exemption applies.") (brackets and quotations omitted); *Alonzo v. Maximus, Inc.*, 832 F. Supp. 2d 1122, 1130 (C.D. Cal. 2011) ("The burden is on Defendant to establish that its bonus payments fall within one of the exceptions in § 207(e)."). Furthermore, "[e]xceptions to the regular rate are to be interpreted narrowly against the employer." *Gonzalez*, 2007 WL 1097887, at *3 (citing *See Mitchell v. Kentucky Fin. Co.,* 359 U.S. 290, 295-96 (1959)); *Smiley*, 839 F.3d at 330 (same).

However, there can be no dispute that Defendant did not plead any affirmative defense in its Answer to Plaintiff's Original Complaint[61] or its First Amended Answer to Plaintiff's Original Complaint[62] which would potentially enable it to try and prove an affirmative defense to overcome the legal presumption that OBM Pay and/or Bonus Pay should have been included in the Plaintiffs' respective regular rates of pay for each relevant workweek in this lawsuit.

2.   **Because Defendant Failed to Timely Plead Any Affirmative Defense Pursuant to 29 U.S.C. § 207(e)(1)-(8) to Exclude the OBM and Bonus Remuneration from Plaintiffs' Respective Regular Rates of Pay, Defendant Has Waived Any and All Such Potential Defenses, and the Court Should Proceed to Calculate Damages.**

As Defendant did not timely affirmatively plead that any of the remuneration at issue in this case is falls within one of the statutory exclusions listed under 29 U.S.C. § 207(e)(1)-(8), it has waived the right to argue that its failure to include OBM Pay and Bonus Pay in Plaintiffs' respective rates of pay did not violate the FLSA.[63]

A Defendant is required to affirmatively plead "any matter constituting an avoidance or affirmative defense." Fed. R. Civ. P. 8(c); *See also Ingraham v. U.S.*, 808 F.2d 1075, 1078 (5th

---

[61] *See* **app. pp. 491-501** (Ex. 52 – Defendant's Original Answer).
[62] *See* **app. pp. 502-513** (Ex. 53 – Defendant's First Amended Answer).
[63] *Id.*

Cir. 1987) (Residuary clause of Rule 8(c) includes "statutory limitation on liability [and] statutory exemption").

"The Federal Rules require an affirmative defense to be pleaded; failure to plead such a defense constitutes waiver." *Woodfield v. Bowman*, 193 F.3d 354, 362 (5th Cir. 1999). *See also, Reyes v. Supervisor of Drug Enforcement Admin.*, 834 F.2d 1093, 1096 (1st Cir. 1987) ("Ordinarily, an affirmative defense . . . must be asserted in the first responsive pleading or waived."); *R.H. Cochran & Assocs. Inc., v. Sheet Metal Workers Intern. Ass'n Local Uniform No., 33*, 335 F. App'x 516, 519 (6th Cir. 2009); (defenses not raised in party's first responsive pleading are generally deemed waived); *United States v. Mitchell*, 518 F.3d 740 (10th Cir. 2008) ("[A]ffirmative defenses must usually be pleaded by the party in the first responsive pleading. . ..").

As discussed in detail *supra*, pleading exclusion of remuneration from the regular rate of pay is an affirmative defense in a FLSA case that must be pleaded and proven by the employer. *Johnson*, 604 F. Supp. 2d at 927; *Smiley*, 839 F.3d at 330; *Alonzo*, 832 F. Supp. 2d at 1130; *Gonzalez*, 2007 WL 1097887, at *3. Like all other affirmative defenses, FLSA affirmative defenses can be waived if the employer does not timely plead them. *See Diaz v. Jaguar Rest. Group, LLC*, 627 F.3d 1212, 1214-15 (11th Cir. Fla. 2010) (FLSA case holding that the failure to plead exemption as an affirmative defense in the first responsive pleading constituted a "classic case of waiver.").

Consistent with the Fifth Circuit's ruling in *Woodfield*, numerous district courts have determined that an employer's failure to timely plead an FLSA affirmative defense constitutes waiver of same. *See, e.g., Moore v. Performance Pressure Pumping Servs., LLC*, No. 5:15-CV-346-RCL, 2017 WL 1501436, at *5 (W.D. Tex. Apr. 26, 2017) (Where a defendant's answer

fails to raise a FLSA exemption, a court should not consider any such un-pleaded affirmative defenses in connection with summary judgment.); *Tamez v. BHP Billiton Petroleum (Americas), Inc.*, No. 5:15-CV-330-RP, 2015 WL 7075971, at *4 n.2 (W.D. Tex. Oct. 5, 2015) ("FLSA exemptions are waived unless pled as an affirmative defense in the answer."); *Monsivais v. C & D Groceries, Inc.*, No. CIV.A. H-12-2754, 2014 WL 2696628, at *2 (S.D. Tex. June 13, 2014) ("A claim of exemption under the FLSA is an affirmative defense that, pursuant to Fed.R.Civ.P. 8(c), must be specifically pleaded or it will be deemed waived."); *Floridia v. DLT 3 Girls, Inc.*, No. 4:11-CV-3624, 2012 WL 1565533, at *3 (S.D. Tex. May 2, 2012) ("A claim of exemption under the FLSA is an affirmative defense that, pursuant to Fed. R. Civ. P. 8(c), must be specifically pleaded or it will be deemed waived.").

This lawsuit was filed on March 9, 2017.[64] Defendant filed its Answer to Plaintiffs' Original Complaint on April 20, 2015.[65] Defendant did not plead any of the statutory exclusions set forth in 29 U.S.C. § 207(e)(1)-(8) in that Answer.[66] Defendant then filed its First Amended Answer to Plaintiff's Original Complaint on April 23, 2015.[67] Again, no affirmative defense was pleaded relative to the aforementioned FLSA statutory exclusions.[68]

The deadline to file motions for leave to amend pleadings in this lawsuit was over two years ago - October 16, 2015.[69] Although an amended scheduling order was entered in this lawsuit, neither party requested an extension of the pleading amendment deadline, and the Court did not alter that pleading amendment deadline.[70]

---

[64] *See* **app. pp. 480-490** (Ex. 51 – Plaintiff's Original Complaint).
[65] *See* **app. pp. 491- 501** (Ex. 52 – Defendant's Original Answer).
[66] *Id.*
[67] **App. p. 502-513** (Ex. 53 – Defendant's First Amended Answer).
[68] *Id.*
[69] **App. p. 514-516** (Ex. 54 – Scheduling Order).
[70] **App. pp. 517-523** (Exs. 55 & 56 – Joint Scheduling Proposal and Amended Scheduling Order).

As show *supra*, Plaintiffs have proven a *prima facie* case that Defendant violated the FLSA by not including OBM Pay and Bonus Pay in their respective regular rates of pay. As Defendant failed to plead any affirmative defense to exclude that remuneration under any of the eight statutory exclusions set forth in 29 U.S.C. § 207(e)(1)-(8), and has waived its right to assert any such argument, there is no genuine issue of material fact that Defendant violated the FLSA's overtime wage provisions as to Plaintiffs, and Plaintiffs are entitled to judgment as a matter of law relative to same. Accordingly, the Court's inquiry as to liability should respectfully stop here and proceed to the calculation of damages.

**3. In the Alternative, and Without Waiving Their Position that Defendant Waived Any and All Affirmative Defenses Relative to Exclusion of Remuneration from the Regular Rate, Assuming *Arguendo* that Defendant Had Timely Pleaded Any Such Affirmative Defense, It Could Not Meet Its Burden of Proof Relative to Same.**

Alternatively, and without Plaintiffs waiving their position that Defendant has waived any and all affirmative defenses relative to the exclusions in 29 U.S.C. § 207(e)(1)-(8), assuming for the sake of argument that Defendant had timely pleaded any such affirmative defense(s), there is no regular rate of pay exclusion in 29 U.S.C. § 207(e)(1)-(8) for which Defendant could meet its burden of proof to exclude OBM Pay and/or Bonus Pay from the Plaintiffs' respective regular rates of pay.

The eight categories of remuneration that may be excluded from the regular rate of pay (assuming the employer pleads and proves an affirmative defense relative to same) are:

1. Sums paid as gifts … not measured by or dependent on hours worked, production, or efficiency.

2. Payments made for occasional periods when no work is performed due to vacation, holiday, illness, failure of the employer to provide sufficient work, or other similar cause; reasonable payments for traveling expenses, or other expenses, incurred by an employee in the furtherance of his employer's interests and properly reimbursable by the employer; and other similar payments to an employee which are not made as compensation for his hours of employment.

3. Sums paid in recognition of services performed during a given period if either, (a) both the fact that payment is to be made and the amount of the payment are determined at the sole discretion of the employer at or near the end of the period and not pursuant to any prior contract, agreement, or promise causing the employee to expect such payments regularly; or (b) the payments are made pursuant to a bona fide profit-sharing plan or trust or bona fide thrift or savings plan…; or (c) the payments are talent fees paid to performers, including announcers, on radio and television programs.

4. Contributions irrevocably made by an <u>employer</u> to a trustee or third person pursuant to a bona fide plan for providing old-age, retirement, life, accident, or health insurance or similar benefits for employees.

5. Extra compensation provided by a premium rate paid for certain hours worked by the employee in any day of workweek because such hours are hours worked in excess of eight in a day or in excess of the maximum workweek applicable to such employee under [29 U.S.C. § 207(a)(1) (*i.e.* overtime pay)] or in excess of the employee's normal working hours or regular working hours, as the case may be.

6. Extra compensation provided by a premium rate paid for work by the employee on Saturdays, Sundays, holidays, or regular days of rest, or on the sixth or seventh day of the workweek, where such premium rate is not less than one and one-half times the rate established in good faith for like work performed in non-overtime hours on other days.

7. Extra compensation provided by a premium rate paid to the employee, in pursuance of an applicable employment contract or collective-bargaining agreement, for work outside of the hours established in good faith by the contract or agreement as the basic, normal, or regular workday (not exceeding eight hours) or workweek (not exceeding the maximum workweek applicable to such employee under [29 U.S.C. § 207(a)(1) (*i.e.* overtime pay)], where such premium rate is not less than one and one-half times the rate established in good faith by the contract or agreement for like work performed during such workday or workweek.

8. Any value or income derived from employer-provided grants or rights provided pursuant to a stock option, stock appreciation right, or bona fide employee stock purchase program which is not otherwise excludable under any of paragraphs (1) through (7) [above].

29 U.S.C. § 207(e)(1)-(8).

Plaintiffs asked Defendant the following in an interrogatory:

If Defendant contends that it could properly exclude/exempt any remuneration, including safety pay, oil base mud pay, retention pay, longevity pay, per diem pay, and/or other incentive pay, from any Discovery Plaintiff's regular rate of pay, then identify the basis for each such claimed exclusion/exemption, every fact in support of why Defendant contends that exclusion/exemption applies as to each such Discovery Plaintiff, and all persons with knowledge of relevant facts as to each such claimed exclusion/exemption.[71]

In response, Defendant objected to that interrogatory and provided the following ambiguous statements subject to its objection:

Defendant **objects to this interrogatory** pursuant to FRCP 26(b)(l) as parts of this interrogatory **are not relevant to the claims in this matter, are not reasonably calculated to lead to the discovery of admissible evidence, and are not proportional to the needs of the case**. Defendant objects to this interrogatory to the extent it asks for legal conclusions and mental impressions of counsel.

Defendant would state that the remuneration at issue in this case, i.e.: customer discretionary bonuses and oil based mud per diem payments, are not subject to inclusion in an overtime calculation. Mud per diem payments to employees are solely as remuneration for extraordinary wear on an employee's person, clothes, and property. Customer/operator bonuses are totally discretionary and thus not subject to inclusion in an overtime calculation. Each operator chooses who, when and if a bonus is to be paid. Latshaw merely provides a service to their customer by passing the bonus to the employee through its payroll system.[72]

It is odd that a defendant would object to something on which it bears the burden of proof as "not relevant," "not reasonably calculated to lead to the discovery of admissible evidence," and "not proportional to the needs of the case." In any event, the statements made subject to the objection, in addition to the other evidence from Defendant in this lawsuit, fail to adequately present facts establishing each element for any exclusion under 29 U.S.C. § 207(e)(1)-(8).

   a.   *Defendant Cannot Prove Any Affirmative Defense Exclusion for OBM Pay.*

---

[71] **App p.438** (Ex. 27 – Defendant's Resp. to Interrogatories at Rog. No. 3).
[72] *Id.*

Again, assuming *arguendo* that Defendant had not waived all affirmative defenses for exclusion of OBM Pay from the regular rate, it could still not meet its burden of proof to show it could exclude that remuneration.

In the interrogatory response, Defendant refers to the OBM Pay as a "per diem" to employees "solely as remuneration for extraordinary wear on an employee's person, clothes, and property."

As an initial matter, Defendant's admission that the OBM pay was because of "extraordinary wear on an employee's person" shows that it must be included in the regular rate as a type of shift differential. "The [FLSA] requires the inclusion in the regular rate of … **premiums paid for hazardous, arduous, or dirty work**." 29 C.F.R. § 778.207(b) (emphasis added). *See also, Bay Ridge Operating Co. v. Aaron*, 334 U.S. 446, 468–69, 68 S. Ct. 1186, 1198–99, 92 L. Ed. 1502 (1948) ("Where an employee receives a higher wage or rate because of undesirable hours or disagreeable work, such wage represents a shift differential or higher wages because of the character of work done or the time at which he is required to labor rather than an overtime premium. Such payments enter into the determination of the regular rate of pay.").

Consistent with Defendant's admission, Plaintiffs deposed have repeatedly described oil-based mud pay as "hazard pay."[73] Workers prefer to handle water-based mud to oil-based mud.[74] Plaintiffs describe oil based mud as unpleasant and even dangerous to work with. For example, Oil based mud sticks to the skin, hair, and clothes of workers who handle it, and is difficult to

---

[73] **App. p. 174** (Ex. 3 – Abeyta Dep. 10:20-25); **App. p. 192** (Ex. 4 – Barela Dep. 65:5-14); **App. p. 199** (Ex. 5 – Batten Dep. 40:19-25); **App. p. 211** (Ex. 6 – Begley Dep. 24:10-12); **App. p. 231-232** (Ex. 7 – Bissell Dep. 24:8-25:11); **App. p. 261** (Ex. 11 – Cerna Dep. 13:3-5); **App. p. 269** (Ex. 12 – Ellis Dep.  17:3-10); **App. p. 300-301** (Ex. 14 - Goodwin Dep. 43:24-44:4); **App. pp. 339-340** (Ex. 17 - Meadows Dep. 23:18-24:5); **App. p. 351** (Ex. 18 - Medlin Dep. 14:18-19); **App. p. 359** (Ex. 19 - Menasco Dep. 31:21-25); **App. p. 384** (Ex. 20 - Munger Dep. 29:15-22); **App. p. 393** (Ex. 21 - Osburn Dep. 18:12-13); **App. p. 404** (Ex. 22 - Rodriguez Dep. 31:10-12); **App. p. 418-419** (Ex. 24 - Wilkinson Dep. 18:19-24); **App. p. 433** (Ex. 25 - Woods Dep. 46:9-14).
[74] **App. p. 365-366** (Ex. 19 - Menasco Dep. 65:23-66:3); **App. p. 305** (Ex. 14 - Goodwin Dep. 47:3-9).

remove even with extensive washing or cleaning.[75] It has a strong and unpleasant odor, burns workers' skin, and can cause workers handling it to break out in rashes or hives.[76] Additionally, unlike water-based mud, if oil-based mud is spilled on the drilling rig or on the ground, it must immediately be cleaned up by the workers, and thus requires rig employees working with it to not only be more cautious, but to also shut down operations to clean up the spilled oil based mud, which in turn negatively impacted Bonus Pay.[77] Oil-based mud can also pose a slipping hazard when on the ground.[78] Some Plaintiffs have even witnessed or sustained physical injuries as a result of oil-based mud.[79] Even Defendant's owner and president, Mr. Latshaw, testified that Defendant charged extra to operators when it had to use oil based mud on its rigs – generally $250 to $300 a day – because the oil based mud causes accelerated wear on its drilling rig component parts.[80] Mr. Latshaw also testified that, having personally worked with oil-based mud, that such mud has a "certain aroma to it," "it don't smell like perfume," and that it is "possible" that individuals working with oil base mud could have physical side effects.[81]

With regard to Defendant's comments about OBM Pay supposedly being per diem "for extraordinary wear on an employee's person, clothes, and property," the evidence provided by Defendant in this case shows that is incorrect.

---

[75] **App. p. 179** (Ex. 3 – Abeyta Dep. 20:14-21); **App. p. 213** (Ex. 6 – Begley Dep. 26:1-5); **App. p. 252** (Ex. 9 – Brown Dep. 17:16-20); **App. p. 257** (Ex. 10 – Burge Dep. 37:12-20); **App. p. 270** (Ex. 12 – Ellis Dep.  19:6-15); **App. p. 301-302** (Ex. 14 - Goodwin Dep. 43:24-44:6); **App. p. 404** (Ex. 22 - Rodriguez Dep. 31:19-24).
[76] **App. p. 175** (Ex. 3 – Abeyta Dep. 11:1-8); **App. p. 211** (Ex. 6 – Begley Dep. 24:13-19); **App. p. 237** (Ex. 8 – Blasingame Dep. 14:11-14); **App. p. 250** (Ex. 9 – Brown Dep. 15:14-25); **App. p. 257** (Ex. 10 – Burge Dep. 37:2-6); **App. p. 261** (Ex. 11 – Cerna Dep. 13:6-12); **App. p. 269-270** (Ex. 12 – Ellis Dep.  18:19-19:5); **App. p. 283** (Ex. 13 - Foster Dep. 19:5-7); **App. p. 302-303** (Ex. 14 – Goodwin Dep. 44:5-44:11); **App. p. 340** (Ex. 17 – Meadows Dep. 24:13-23); **App. p. 353** (Ex. 18 - Medlin Dep. 16:3-11); **App. p. 393** (Ex. 21 - Osburn Dep. 18:14-17); **App. p. 404** (Ex. 22 - Rodriguez Dep. 31:19-24); **App. p. 419** (Ex. 24 - Wilkinson Dep. 19:4-12).
[77] **App. p. 368** (Ex. 19  -- Menasco Dep. 68:5-22).
[78] **App. p. 193** (Ex. 4 – Barela Dep. 66:2-3); **App. p. 216** (Ex. 6 – Begley Dep. 29:10-16); **App. p. 296** (Ex. 14 - Goodwin Dep. 24:10-18); **App. p. 313** (Ex. 15 – Hilyer Dep. 24:9-18); **App. p. 351** (Ex. 18 - Medlin Dep. 14:20-22); **App. p. 395** (Ex. 21 – Osburn Dep. 20:17-21).
[79] **App. p. 216** (Ex. 6 – Begley Dep. 29:20-24); **App. p. 251-252** (Ex. 9 – Brown Dep. 16:3-17:5); **App. p. 293** (Ex. 14 - Goodwin Dep. 21:17-8); **App. p. 309** (Ex. 15 - Hilyer Dep. 9:2-11).
[80] **App. pp. 154-155** (Ex. 2 - Latshaw Dep. 100:9-21; 101:14-23).
[81] *Id.* **at pp. 155-156** (101:24-102:25).

Defendant admits it provided Plaintiffs with work clothing, including multiple sets of fire-retardant clothing (sometimes called "FRCs"), jackets, hard hats, and safety glasses at the outset of their employment. For example, Mr. Latshaw testified in his deposition as follows:

Q. Okay. Is there -- are the workers at these rigs provided with coveralls when they start?
A. They are.
Q. Are they provided with any other clothing throughout the course of their employment?
A. Okay. Let me explain this way: There's certain -- excuse me, there's certain what we call PPE, personal protective equipment. And we provide them a hard hat, safety glasses, FRC coveralls, or should say FRC clothing, which is fire retardant, okay. And then they provide basically their gloves and their work boots. Okay. So when they – when they're a brand new employee -- excuse me here a minute. I'm doing this from memory, but when they're a brand new employee and they first start out, I think we provide them with like three pairs of FRC coveralls, okay. And by the way, this is OSHA legal requirement that the employer provide the FRC to the employee. So we'll provide them initially three pairs of coveralls. Then a winter jacket, even though it might be in the middle of the summer if they're a new employee. A winter FRC jacket, and then basically some rain gear, FRC rain gear or slicker suits as we call them. And so that's what we provide them initially.[82]

Defendant's 30(b)(6) Witness, Ms. Reid, likewise confirms that Plaintiffs were provided with FRC clothing upon commencement of their employment.[83] That testimony as to Defendant providing work clothing is consistent with that of Plaintiffs. For example, Discovery Plaintiff Brian Menasco testified as follows:

Q. Did Latshaw ever provide you with any coveralls?
A. When you first hired on you get three pair.
Q. Can you tell us whether or not Latshaw had any type of program where you could get additional coveralls if you wanted them or needed them?
A. Yes.
Q. What was that?
A. Safety Points Program. You can go online.
Q. Do you recall anything about how many points you needed in order to get a new set of coveralls?

---

[82] *Id*. **at p. 159-160** (105:23-106:20).
[83] **App. p. 109** (Ex. 1 – Reid 30(b)(6) Dep.  177:2-16).

A.   Yes. The time you were there as long as -- I don't know how it really worked. Just how many days you worked you got so many points. If you had enough points to get whatever you needed you could order it.

Q.   And did you ever use that program to get new coveralls through Latshaw?

A.   Yes.[84]

The Latshaw points system identified in that testimony was also used by Plaintiffs to acquire new work boots.[85] Mr. Menasco further testified that, although Latshaw's employee handbook had a written policy on recovering out of pocket expenses employees incurred on behalf of Latshaw, he never submitted any expense reimbursement for to Latshaw for work clothes.[86] Plaintiffs asked for records of any such expense reimbursements in this lawsuit, but Defendant has represented that it has no such records in its possession with respect to Plaintiffs.[87]

Furthermore, Mr. Latshaw confirmed the existence of the aforementioned "points system" for employees to acquire new work clothing.

Q.   Is there a process if those things [work clothes] are lost or get damaged that the employees go through to get more?

A.   Yes. The -- what we do, and this has been kind of a trail [sic] and error thing until we finally got on a formula that kind of worked, is every month we basically give them, I think, it's 50 points so to speak in their account with a company in Houston  that's a third party group that manages this kind of stuff. And basically each month they get these 50 points. And then when they need FRC clothing, they can access their account through the internet or they can call the group up and basically order some replacement FRC clothing, whether it be coveralls or they have FRC blue jeans, long sleeve t-shirts, whatever. Has to be FRC. So there is a mechanism, yes, where we continue to pay for and provide replacement FRC for them.

Q.   Are these point given automatically each month?

A.   Uh-huh.

Q.   And do you have any idea of how many points a particular item of clothing might cost?

---

[84] **App. p. 369** (Ex. 19 - Menasco Dep. 69:1-20).

[85] **App. p. 324-325** (Ex. 16 - Dep. of Discovery Plaintiff Ricky Loomis at 20:24-21:4); **App. pp. 385-386** (Ex. 20 - Munger Dep. 47:23-48:1); **App. p. 420** (Ex. 24 - Wilkinson Dep. 20:16-18).

[86] **App. pp. 369-370** (Ex. 19 - Menasco Dep. 69:21-70:11); *See also* **App. p. 202** (Ex. 5 – Batten Dep. 43:9-14).

[87] **App. p. 441** (Ex. 28 - Discovery Supplementation Letter from Defendant ("Discovery Plaintiffs did not submit to Latshaw reimbursable out-of-pocket costs in furtherance of Latshaw's business operations.")).

A. You know, we were talking about that not too long ago. I think a set of coveralls typically is going to be kind of the 50 to $60 range. And the 50 points equates to about 40, $45.

Q. So effectively Latshaw is providing, fair to say, the equivalent of say a pair of coveralls every month or two months?

A. Yeah. And again, keep in mind, they've got three brand new sets when they first go out on the rig the first day. So that's -- those three sets -- let's just say you went through a set a month. By the time they go through those three sets, they've already built up enough points to probably get two sets of coveralls.[88]

Defendant's 30(b)(6) Witness also confirms the existence of this point system by which Plaintiffs may replace their work clothes.[89] Ms. Reid also testified that the value of the points provided Plaintiffs was not included in their respective regular rates of pay.[90] The Discovery Plaintiffs deposed have repeatedly averred that they never had to pay for work clothes out of pocket due to this system.[91] Furthermore, Defendant's policy regarding FRCs states that all laundering of work clothes must be done in a Latshaw laundering facility on site at the rig, and therefore even the cost of cleaning this clothing is deferred from Plaintiffs.[92] Mr. Latshaw even admitted that Defendant does not and cannot track whether the oil-based mud payment accurately reflect the amount of any wear on property from oil-base mud.[93]

"The FLSA broadly defines 'regular rate' as the hourly rate actually paid the employee for 'all remuneration for employment.'" *Native Oilfield Servs., LLC*, 104 F. Supp. 3d at 800 (citing *Gagnon v. United Technisource, Inc.*, 607 F.3d 1036, 1041 (5th Cir. 2010)). "Although per diem can be excluded from an employee's regular rate, 29 U.S.C. § 207(e)(2); see also 29

---

[88] **App. p. 160-161** (Ex. 2 - Latshaw Dep. 106:21-108:8).

[89] **App. p. 109-110** (Ex. 1 – Reid 30(b)(6) Dep. 177:17-178:15).

[90] **App. p** 63-64 (Ex. 1 – Reid 30(b)(6) Dep. 106:23-107:4).

[91] **App. p. 177** (Ex. 3 – Abeyta Dep. 13:5-15); **App. p. 193** (Ex. 4 – Barela Dep. 66:4-21); **App. p. 201** (Ex. 5 – Batten Dep. 42:6-11); **App. p. 233** (Ex. 7 – Bissell Dep. 34:16-23); **App. p. 320** (Ex. 15 - Hilyer Dep. 31:8-24); **App. p. 341-342** (Ex. 17 - Meadows Dep. 69:19-70:11); **App. p. 354** (Ex. 18 - Medlin Dep. 24:17-25:1); **App. p. 385-386** (Ex. 20 - Munger Dep. 47:3-48:5); **App. pp. 400-401** (Ex. 21 - Osburn Dep. 32:17-33:2); **App. p. 420** (Ex. 24 - Wilkinson Dep. 20:8-15); **App. pp. 434-435** (Ex. 25 - Woods Dep. 63:15-64:2).

[92] **App. p. 447** (Ex. 29 - Latshaw FRC Policy); *See also* **App. p. 177-178** (Ex. 3 – Abeyta Dep. 13:20-14:15); **App. p. 342** (Ex. 17 - Meadows Dep. 70:12-23); **App. pp. 398-399** (Ex. 21 - Osburn Dep. 23:24-24:3).

[93] **App. pp. 166-167** (Ex. 2 – Latshaw Dep. 112:11-113:9. ("And, you know, to say it's, you know, it lasted two years when it should have lasted three years because we're in oil-based mud, no. We don't have any way to track that kind of stuff.")).

C.F.R. § 778.217(b), the " 'regular rate' of pay ... cannot be left to a declaration by the parties as to what is to be treated as the regular rate for an employee; it must be drawn from what happens under the employment contract." *Gagnon*, 607 F.3d at 1041. The regulation referenced in *Gagnon* states, in relevant part:

> Where an employee incurs expenses on his employer's behalf or where he is required to expend sums solely by reason of action taken for the convenience of his employer, section 7(e)(2) is applicable to reimbursement for such expenses. Payments made by the employer to cover such expenses are not included in the employee's regular rate (if the amount of the reimbursement reasonably approximates the expenses incurred). Such payment is not compensation for services rendered by the employees during any hours worked in the workweek.

29 C.F.R. § 778.217(a). Based on the testimony in this case, most notably testimony from Mr. Latshaw and Defendant's Rule 30(b)(6) Witness, there is no genuine issue of material fact that the OBM Pay was not per diem pay as it was not reimbursement for any expenses Plaintiffs incurred on Defendant's behalf of or for the convenience of Defendant. Defendant provided Plaintiffs with work clothes upon hiring, and had a points system where Plaintiffs could and did acquire additional work clothing thereafter as needed. Mr. Latshaw testified that Defendant "does not and cannot track whether the oil-based mud payment accurately reflect the amount of any wear on property from oil-base mud."[94] Finally, although Defendant has a written policy for employees to submit expense reimbursement requests, Defendant could not produce a single document showing any of the Plaintiffs ever requested expenses reimbursements despite being asked for same in written discovery.[95]

With regard to any affirmative defense which a FLSA plaintiff does not have the burden of proof at trial, he can meet his summary judgment obligation by pointing the court to the absence of evidence to support the affirmative defense." *Wherley*, 2013 WL 5744335, at *2 (citing *Celotex*

---

[94] **App. p. 166-167** (Ex. 2 – Latshaw Dep. 112:11-113:9).
[95] **App. p. 441** (Ex. 28 - Discovery Supplementation Letter from Defendant ("Discovery Plaintiffs did not submit to Latshaw reimbursable out-of-pocket costs in furtherance of Latshaw's business operations.")).

*Corp.*, 477 U.S. at 325)). Accordingly, even had Defendant timely pleaded any affirmative defense for statutory exclusion for OBM Pay per 29 U.S.C. § 207(e)(1)-(8), which is denied, it could not meet its burden of proof to show that OBM Pay could be excluded as a type of "per diem" pay based on its own testimony and evidence in this lawsuit.

      *b.  Defendant Cannot Prove Any Affirmative Defense Exclusion for Bonus Pay.*

Again, without waiving their position that Defendant has waived all affirmative defenses for exclusion of Bonus Pay from the regular rate, Defendant could not meet its burden of proof to exclude that remuneration had it pleaded an affirmative defense on same.

In Defendant's answer to the interrogatory identified above, it states the following with regard to the Bonus Pay.

> Customer/operator bonuses are totally discretionary and thus not subject to inclusion in an overtime calculation. Each operator chooses who, when and if a bonus is to be paid. Latshaw merely provides a service to their customer by passing the bonus to the employee through its payroll system.[96]

The discretionary bonus exemption/exclusion states "[s]ums paid in recognition of services performed during a given period [may be excluded from the regular rate] if both the fact that payment is to be made and the amount of the payment are determined at the **sole discretion of the *employer*** at or near the end of the period **and not pursuant to any prior contract, agreement, *or* promise causing the employee to expect such payments regularly**." 29 U.S.C. § 207(e)(3)(a) (emphasis added). That regulation further states "the ***employer* must retain discretion both as to the fact of payment and as to the amount** until a time quite close to the end of the period for which the bonus is paid." 29 C.F.R. § 778.211(b) (emphasis added).

Moreover, that discretionary bonus regulation states:

---

[96] **App. pp. 438** (Ex. 27 – Defendant's Resp. to Interrogatories at Resp. to No. 3).

[A]ny bonus which is promised to employees upon hiring ... would not be excluded from the regular rate under this provision of the [FLSA]. **Bonuses which are announced to employees to induce them to work more steadily or more rapidly or more efficiently or to remain with the firm are regarded as part of the regular rate of pay**. Attendance bonuses, **individual or group production bonuses, bonuses for quality and accuracy of work**, bonuses contingent upon the employee's continuing in employment until the time the payment is to be made and the like are in this category. They **must be included in the regular rate of pay**.

29 C.F.R. § 778.211(c) (emphasis added). The case law addressing discretionary bonuses further

stands for the proposition that bonuses which are used to induce employees to work more rapidly

or efficiently are not "discretionary." *See, e.g., Mata v. Home Health, Inc*., 94 F. Supp. 3d 867,

875-6 (S.D. Tex. March 27, 2015) (rejecting an employer's position that bonuses were

discretionary where a plaintiff would get a bonus by meeting a criterion – working a certain

number of hours); *Gilbertson v. City of Sheboygan*, 165 F. Supp. 3d 742, 749–50 (E.D. Wis.

2016) ("[B]onuses which are announced to employees to induce them to work more steadily or

more rapidly or more efficiently or to remain with the firm are regarded as part of the regular rate

of pay.") (quotations omitted); *Alonzo*, 832 F. Supp. 2d at 1130 ("Bonuses which are announced

to employees to induce them to work more steadily or more rapidly or more efficiently or to

remain with the firm are regarded as part of the regular rate of pay."); *McLaughlin v. McGee*

*Bros. Co., Inc.,* 681 F.Supp. 1117, 1133-34 (W.D.N.C. 1988) ("[I]ncentive-type bonuses ... given

pursuant to an agreement or understanding as a reward for specific employee behavior ... must be

included in the regular rate."); *Gonzalez*, 2007 WL 1097887, at *3-4 (even though plaintiffs

testified that they believed the bonuses were at the discretion of the employer, and despite

employer's written policy stating it retained discretion to pay bonuses, the court held that the

bonus pay was not discretionary and had to be included in the regular rate because "once a bonus

is promised to an employee as an inducement to achieve some business goal, even if that promise

is not a guarantee of payment but contingent on other factors such as the financial state of the company, it is to be included in the regular rate of pay if and when it is actually paid.").

The regulations and case law, outlined above, relative to the undisputed facts in this case, show three distinct reasons why Defendant cannot meet its burden of proof to show that the Bonus Pay could have been excluded from the regular rate as a so-called discretionary bonus even if Defendant had pleaded such an affirmative defense – (1) Latshaw, as the "employer," states that it did not retain "sole discretion" as to the "fact" of the bonus and "amount" of the bonus; (2) the availability of Bonus Pay was announced to Plaintiffs when they began work for Defendant in addition to work meetings; and (3) the Bonus Pay was premised on Plaintiffs working more rapidly, steadily and efficiently in addition to being based on quality and accuracy of their work.

>    i.   Defendant Did Not Retain Sole Discretion as to the Fact or Amount of the Bonus Pay.

In order for a bonus to be "discretionary" both the fact that payment is to be made and the amount of the payment are determined at the sole discretion of the employer... . 29 C.F.R. § 778.211(b). However, Mr. Latshaw testified that Defendant, as the employer, had no discretion over the fact or amount of the payment. [97] For example, on the specific issue of Bonus Pay, Mr. Latshaw testified:

> The operator bonus is money that comes from our customer. It doesn't even come from us. It's something that is paid by some operators, others not. It's at their sole discretion … . They ask us to run it through our payroll system and pay our employees… . [98]

---

[97] **App. p. 168-170** (Ex. 2 - Latshaw Dep. 124:16-21, 125:23-126:1).
[98] *Id*. **at p. 148** (67:5-12).

Mr. Latshaw testified that Defendant, as the "employer," did not have "sole discretion" over the fact and amount of the Bonus Pay. Similarly, Defendant's interrogatory responses claim that "Each operator chooses who, when, and if a bonus is to be paid."[99]

However, that Bonus Pay was paid to Plaintiffs in earnings statements issued to them by Latshaw, and Latshaw withheld payroll taxes relative to that Bonus Pay.[100] Defendant's Rule 30(b)(6) witness testified that Defendant did not contend any operator was an employer or joint employer, along with Latshaw, of Plaintiffs.[101] The Bonus Pay was paid to Plaintiffs by Latshaw, plain and simple. The notion that Defendant was allegedly just doing its customer a "favor" by paying its employees bonuses through its payroll system does not fit into any of the statutory exclusions of 29 U.S.C. § 207(e)(1)-(8). Instead, the FLSA expressly states that "the regular rate at which an employee is employed shall be deemed to include all remuneration for employment **paid to, or on behalf of, the employee**. 29 U.S.C. § 207(e) (emphasis added).

The language of the discretionary bonus regulation is clear that the employer must retain "sole discretion" as to both the fact and amount of the bonus in order for it to be excluded from the regular rate of pay. Defendant's testimony and written discovery responses show that it cannot present facts proving all elements required to establish the discretionary bonus exclusion.

> ii. Bonus Pay Was Premised on Plaintiffs Working More Rapidly, Steadily, and Efficiently in Addition to Being Based on Quality and Accuracy of Their Work.

In order for Defendant to prove "discretionary bonus," it would also have to prove that the Bonus Pay was not pursuant to any "prior contract, agreement, or promise causing the employee to expect such payments regularly" and that the Bonuses "were not announced to

---

[99] **App. p. 438** (Ex. 27 -- Defendant's Resp. to Interrogatories at Resp. to No. 3).
[100] **App. pp. 50-52** (Ex. 2 - Latshaw Dep. 125:19-126:1); **App. p. 78, 82-83,** (Ex. 1 – Reid 30(b)(6) Dep. 130:3-14; 134:10-135:8; 93:25-95:11).
[101] *Id*. **at p. 33** (70:9-16).

employees to induce them to work more steadily or more rapidly or more efficiently." 29 U.S.C.

§ 207(e)(3)(a); 29 C.F.R. § 778.211(c). However, the evidence in this case shows that Defendant

cannot prove same.

For example, Defendant's employee handbook, which was provided to Plaintiffs upon

being hired, states, "The company offers various safety awards and incentive programs that vary

by position. Some of the programs may consist of safety points, programs, and/or *safety*

*bonuses*."[102] Plaintiffs have repeatedly testified that the requirements for a bonus were known to

them in advance completion of the work, generally when they first arrived at a rig site.[103] The

requirements for a Safety and Performance bonus were generally similar from operator to

operator, namely that a well be completed within a certain amount of time and that no safety

incidents occur.[104] These requirements would often be written on a white board or posted in the

office of the tool pusher, a Latshaw supervisory employee.[105] Defendant's 30(b)(6)

representative testified that some Safety and Performance bonuses are defined in the initial

"contract" between Latshaw and its customers.[106]

Additionally, Discovery Plaintiff Derek Munger testified regarding the criteria for bonus

pay as follows:

> Q.  Do you understand what operator bonus is when I use that term?
> A.  I understand, yeah. It's a type of bonus.
> Q.  What type of bonus is it?
> A.  It is for – depending on the operator, a production or safety based incentive.

---

[102] **App. p. 437** (Ex. 26 - Excerpt from Latshaw Employee Handboook).

[103] **App. p. 183** (Ex. 3 – Abeyta Dep. 24:4-20); **App. p. 194** (Ex. 4 – Barela Dep.at 67:15-16); **App. p. 243-244, 246** (Ex. 8 - Blasingame Dep. 32:21-23, 33:4-11, 62:12-23); **App. p. 263** (Ex. 11 - Cerna Dep. 89:23-25) (plaintiffs were entitled to bonuses "because we had an agreement"); **App. p. 344-346** (Ex. 17 - Meadows Dep. 72:17-73:4, 74:16-25); **App. pp. 387-389** (Ex. 20 - Munger Dep. 49:5-12, 50:20-51:4); **App. p. 423-424, 428** (Ex. 24 - Wilkinson Dep. 32:25-33:9, 37:19-38:7).

[104] **App. p. 183** (Ex. 3 – Abeyta Dep. 24:4-12); **App. p. 265** (Ex. 11 - Cerna Dep. 96:9-20); **App. p. 276** (Ex. 12 - Ellis Dep. 25:11-17).

[105] **App. p. 186** (Ex. 3 – Abeyta Dep. 27:4-12); **App. p. 195** (Ex. 4 – Barela Dep.at 68:3-10); **App. p. 243-244** (Ex. 8 - Blasingame Dep. 32:24-33:3).

[106] **App. p. 31-32** (Ex. 1 - Reid 30(b)(6) Dep.  52:23-53:8).

[…]
Q. Any other possibilities you can think of?
A. When you said, you know, the perimeters basically of the drilling operation being met, yeah, there's probably several situations that could encompass what you said. Absolutely.
Q. Okay. Tell me what situations that could encompass.
A. Safety is one of them.
Q. So no one gets injured on this particular drilling project, everyone is paid a bonus?
A. Safety could be one. Yeah. That's – there's different perimeters for different drilling operations. Safety is one of the perimaters. If you can meet the perimeters that were set, then you could get a bonus for safety. Or it could be the speed of the process.
Q. Any others you can think of?
A. Generally speed and safety were the two I'm familiar with that I can recall.
[…]
Q. Regarding the bonuses, when would you find out whether a bonus was possible on a well site?
A. Pretty – pretty shortly after we get on-site. I don't know. Some of my crew would be talking about it and I would get confirmation from my Driller. And generally everybody would be talking about it. It's like, you know, it's money or potential extra money. Everybody would be talking about it.
Q. So there were Latshaw employees?
A. Latshaw employees. Yes.[107]

Another Discovery Plaintiff, Chance Blasingame, recalls that the tool pusher would have "a little deal written in the toolpusher's shack of each day how much we would get bonus-wise" if the speed criteria were met.[108] Several of Latshaw's customers similarly provided written descriptions of the criteria of the bonuses.[109] A bonus which is announced in advance pursuant to a "prior contract, agreement, or promise" is not discretionary. 29 U.S.C. § 207(e)(3)(a). Consequently, according to the testimony and evidence described above, the Safety and Performance bonuses at issue in the instant case must be included in the regular rate of pay.

---

[107] **App. pp. 374, 381, 387** (Ex. 20 – Munger Dep. 19:11-21, 26:6-23, 49:5-14).
[108] **App. p. 243-242** (Ex. 8 – Blasingame Dep. 32:24-33:3).
[109] **App. p. 451** (Ex. 32 - Bonus Program Overview from Operator Approach); **App. p. 452** (Ex. 33 - Email from Operator Centennial ("Centennial will being to implement a Peformance Bonus effective for wells spud after October 1, 2014")); **App. p. 454** (Ex. 34 - Drilling Rig Performance Incentive Program from Operator Concho); **App. pp. 454-455** (Ex. 35 - Email from Operator Element ("Element feels this well is the new base line for the project and would like to re-instate the performance bonus of $200.00/day, not to exceed $600.00, for besting this record")).

iii. Bonus Pay Was Announced to Plaintiffs and Agreed upon in Advance of the Plaintiffs' Work.

Furthermore, the regulation addressing discretionary bonuses states "[b]onuses which are announced to employees to induce them to work more steadily or more rapidly or more efficiently or to remain with the firm are regarded as part of the regular rate of pay." 29 C.F.R. § 778.211(c). As discussed above in detail, Plaintiffs provide ample testimony that the Safety and Performance bonuses were announced ahead of time to induce them to complete wells on or ahead of schedule (*i.e.* more rapidly and efficiently).[110] Notably, if the Plaintiffs failed to meet the criteria laid out in advance for receiving these bonuses, the bonus would not be issued.[111] Mr. Latshaw also testified that it is "industry tradition" for workers to receive these types of bonuses.[112] Latshaw has produced numerous examples the invoices it sent to its customers, and in addition to charging it customers for work and services such as rig moves, rig hours worked at day and night, training for Latshaw employees on the specifics of a well, rental of equipment and tools, those invoices also charge for bonus pay for Latshaw drilling rig crew members in terms of

---

[110] **App. p. 182-184** (Ex. 3 – Abeyta Dep. 23:16-17, 24:24-25:2); **App. p. 190** (Ex. 4 – Barela Dep.at 39:12-16 ("They was either bottom-hole or curve pay. Deadlines. You know, beat the deadline. You know, the number of days drilled.")); **App. p. 227** (Ex. 6 – Begley Dep. 47:12-19 ("If you complete it in a timely manner then you get paid for that much time.")); **App. p. 238-240** (Ex. 8 - Blasingame Dep. 27:25-29:3 (bonuses for "[g]etting it done safe and fast.")); **App. p. 253** (Ex. 9 - Brown Dep. 30:4-6 (bonus because they "drilled the hole quick")); **App. p. 260, 262** (Ex. 11 - Cerna Dep. 7:11-8:4, 63:2-21); **App. p. 279** (Ex. 12 - Ellis Dep. 28:10-20 ("I gave a hundred percent all the time, but if – you know, if we knew there was going to a bonus involved, we'd do 110 percent.")); **App. p. 288-289** (Ex. 13 - Foster Dep. 24:12-25:1 ("[bonus pay in earnings statement shown to witness by defense counsel was a] safety bonus or completion of well before deadline bonus.")); **App. p. 299** (Ex. 14 - Goodwin Dep. 41:5-10 ("Pretty much the faster you could do it without injuries the higher the bonus could be.")); **App. pp. 329, 347** (Ex. 17 - Meadows Dep. 13:18-25, 75:11-20); **App. pp. 366-368** (Ex. 19 - Menasco Dep. 66:24-68:4 ("[bonus] made you want to work better or faster … it's a good incentive")); **App. p. 374** (Ex. 20 - Munger Dep. 19:11-21 (bonuses are "a production or safety based incentive.")); **App. p. 409** (Ex. 23 - Weems Dep. 16:25-17:5) (availability of bonuses "fired you up", "speed wise."); **App. p. 432** (Ex. 25 - Woods Dep. 36:1-7 ("if we drilled the hole within this amount of days or whatever, we would get bonuses.")).

[111] **App. p. 405** (Ex. 22 - Rodriguez Dep. 50:2-15 (never received a performance bonus because "I can't recall that we finished drilling a hole in time.")); **App. p. 414** (Ex. 23 - Weems Dep. 21:18-25 ("I think if anybody got hurt they wouldn't give you a bonus […] because it was a kind of a safety and production.")); **App. p. 382** (Ex. 20 – Munger Dep. 27:8-14 ("There were many [bonuses] offered throughout my career, but only a few that were achieved.")); **App. p. 423** (Ex. 24 - Wilkinson Dep. 32:18-24).

[112] **App. p. 154** (Ex. 2 - Latshaw Dep. 88:16-23).

performance, safety, and/or completion speed.[113] Because these bonuses were clearly and repeatedly understood and described  by the operators, Plaintiffs, and Defendant itself as being intended to induce Plaintiffs to work more steadily, more rapidly or more efficiently, Defendant cannot meet its burden of proof to show that Bonus Pay is a "discretionary bonus." 29 U.S.C. § 207(e)(3)(a); 29 C.F.R. § 778.211(c); *Alonzo*, 832 F. Supp. 2d at 1130; *McLaughlin.*, 681 F.Supp. at 1133-34; *Gonzalez*, 2007 WL 1097887, at *3-4.

As to any FLSA affirmative defense which a plaintiff does not have the burden of proof at trial, he can meet his summary judgment obligation by pointing the court to the absence of evidence to support the affirmative defense." *Wherley*, 2013 WL 5744335, at *2 (citing *Celotex Corp.*, 477 U.S. at 325)). Accordingly, even had Defendant timely pleaded any affirmative defense relative to Bonus Pay per 29 U.S.C. § 207(e)(1)-(8), which is denied, it could not meet its burden of proof to show that pay could be excluded from the regular rate based on its own testimony and evidence in this lawsuit.

**B.  Plaintiffs Are Entitled to Back Unpaid Overtime Wages.**

An employer who violates the FLSA is liable to its employees for their unpaid overtime wages. 29 U.S.C. § 216(b). It is undisputed that Plaintiffs regularly worked over 40 hours in a given workweek.[114] It is undisputed that Latshaw did not include OBM Pay in Plaintiffs'

---

[113] **App. p. 456** (Ex. 36 - Invoice to Operator Alta Mesa for "Safety and Perfomance Bonus"); **App. p. 457** (Ex. 37  - Invoice to Operator Approach for "Crew Bonus – Performance"); **App. pp. 458-459** (Ex. 38 - Invoice to Operator Bopco for "Crew Bonuses" and attached description of bonus criteria); **App. p. 461** (Ex. 39 - Description of Bonus from Operator Centennial for "Performance & Safety"); **App. p. 462** (Ex. 40 - Invoice to Operator COG for "Crew Bonus – Performance & Safety"); **App. p. 463-464** (Ex. 41 - Invoice to Operator Element for "Crew Bonus – Safety" and attached "Performance & Safety" Bonus Breakdown); **App. p. 465** (Ex. 42 - Invoice to Operator Enervest for "Crew Bonus – Safety"); **App. p. 467** (Ex. 43 - Invoice to Operator Diamondback for "Crew Bonus – Performance"); **App. p. 467** (Ex. 44 - Invoice to Operator Legacy for "Safety & Performance Bonus"); **App. p. 468** (Ex. 45 - Invoice to Operator Sandridge for "Crew Bonus – Performance"); **App. p. 469** (Ex. 46 - Invoice to Operator Tall City for "Crew Bonus – Performance").
[114] **App. p. 17-18** (Ex. 1 - Reid 30(b)(6) Dep.  34:17-35:6).

respective regular rates of pay.[115] It is undisputed that Latshaw did not include Bonus Pay in Plaintiffs' respective regular rates of pay.[116] As shown above, Defendant cannot prove that it could exclude OBM Pay or Bonus Pay from the regular rates of pay. Therefore, summary judgment should be entered that Defendant owes Plaintiffs unpaid overtime wages due to failing to include OBM Pay and/or Bonus Pay in the Plaintiffs' respective regular rates of pay.

"The Fifth Circuit holds that once the fact finder has established that the employee is due unpaid overtime, the proper determination of the regular rate of pay and overtime premium to which an employee is entitled is a question of law." *Native Oilfield Servs., LLC*, 104 F. Supp. 3d at 798 (citing *Black v. Settlepou, P.C.*, 732 F.3d 492, 496 (5th Cir. 2013)). As there is no dispute as to the number of overtime hours worked by Plaintiffs based upon agreed representative discovery, it is the Court's role, and not the role of a jury, to determine the Plaintiffs' regular rate of pay and corresponding overtime wage damages owed due to Defendant not calculating OBM Pay and Bonus Pay in the Plaintiffs' Respective regular rates of pay. *Id.*

Plaintiffs may seek recovery of damages spanning a time period of, at a minimum, two years prior to the filing of this lawsuit and forward in the case of a continuing violation (the "FLSA two year statute of limitations"). 29 U.S.C. § 255(a). As described further, below, if a plaintiff demonstrates that an employer's violation was willful, they may extend their period of recovery up to three years prior to the filing this lawsuit and forward (the "FLSA three year statute of limitations"). *Id.* The relevant time period for the Court to consider damages, whether under a two year or three year period, is March 9, 2012 to August 1, 2017.[117]

## 1.   <u>Representative Discovery and Extrapolation of Damages.</u>

---

[115] *Id.* **at p. 47** (90:4-8).
[116] *Id.* **at p. 51-52** (94:19-95:17).
[117] **App. p. 480-490** (Ex. 51 – Plaintiff's Original Complaint).

The Fifth Circuit expressly allows damages for an entire class to be extrapolated and calculated based on representative evidence. *Barclay*, 838 F.3d at 450 (Upholding jury verdict on overtime violations and the district's court's judgment as to the regular rate of pay and damages based on the testimony and evidence of 5% of the Plaintiffs in a 108 member class). Plaintiff and Defendants originally agreed on representative discovery from 20% of the Plaintiffs, but later mutually agreed to reduce that sample to the 24 Plaintiffs deposed (the "Discovery Plaintiffs.") who represent approximately 15.19% of the total class.[118] Deposition and written discovery was conducted with regard to the Discovery Plaintiffs.

Plaintiffs have data from Defendants on the total weeks of employment in the relevant time period for all Plaintiffs, the average overtime hours worked by the Discovery Plaintiffs per workweek, and data showing which of the Discovery Plaintiffs and Plaintiffs received OBM Pay and Bonus Pay, and which of them received only one of the foregoing categories of remuneration.[119] So, the Court has two options it can take to determine back overtime wage damages.

First, the Court can calculate damages on the basis of:

1. Only OBM Pay Damages extrapolated from the Discovery Plaintiffs to all remaining Plaintiffs;

2. Only Bonus Pay Damages extrapolated from the Discovery Plaintiffs to all remaining Plaintiffs; and

3. Damages for both OBM and Bonus Pay extrapolated from the Discovery Plaintiffs to all remaining Plaintiffs.

---

[118] **App. p. 470** (Ex. 47 – List of Discovery Plaintiffs).
[119] **App. p. 541-580** (Ex. 59 – Damage Spreadsheets for Discovery Plaintiffs). Plaintiffs offer this data as a summary of the voluminous records produced by Defendant for these individuals pursuant to Fed. R. Evid. 1006. Should the Court so order, Plaintiffs will produce the underlying documentation they summarize, all of which were produced by Defendant.

Plaintiffs provide three spreadsheets showing those damages.[120] Plaintiffs contend that damages should be extrapolated to the class in the third fashion based on the data it obtained during discovery in this lawsuit. The Court can calculate damages on the basis of the Discovery Plaintiffs' average data extrapolated to all Plaintiffs as though Discovery Plaintiffs and all Plaintiffs received both OBM Pay and Bonus Pay. Plaintiffs provide a single spreadsheet calculating those damages, which Plaintiffs alternatively would assert constitutes their reasonable estimate of their damages should the Court determine that Defendant's records are not accurate.[121] "According to the Supreme Court, the court may [where the employer's records are inaccurate] award damages to the employee, even though the result be only approximate." *Native Oilfield Servs., LLC*, 104 F. Supp. 3d at 804 (citing *Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680, 688, 66 S.Ct. 1187, 90 L.Ed. 1515 (1946)).

## 2. Plaintiffs Seek Back Overtime Wages on the Basis of Half-Time as Opposed to Time and One-Half the Regular Rate of Pay.

Here, Plaintiffs seek damages at one-half the regular rate of pay (*i.e.* half-time) as opposed to the standard time and one-half for both OBM Pay and Bonus Pay. 29 C.F.R. § 778.110(b); 29 C.F.R. § 778.209(a).

### a. *Plaintiffs Receiving Only OBM Pay.*

With regard to Plaintiffs who received OBM Pay only, Plaintiffs divided the total OBM Pay and hourly wages received by each Discovery Plaintiff in a given workweek by the total

---

[120] **App. pp. 471-479** (Exs. 48-50 – Damage Spreadsheets).

[121] **App. pp. 90-104** (Reid 30(b)(6) Dep. 147:6-161:19). Plaintiffs addressed data inconsistencies in Defendant's 29 C.F.R. § 516.2(a) records with opposing counsel and with Defendant's Rule 30(b)(6) witness, but believe that any remaining inconsistencies in Defendants records are not material. If Defendant disagrees, then the Court can follow the approach approved by the Fifth Circuit where employers fail to make or produce accurate records and estimate FLSA damages for the class. *Barclay*, 838 F.3d at 450 (referencing *Donovan v. Hamm's Drive Inn*, 661 F.2d 316, 318 (5th Cir. 1981)). Should the Court determine that three classes/sub-classes are necessary relative to Plaintiffs who received OBM Pay and Bonus Pay, Plaintiffs who received only OBM Pay, and Plaintiffs who received only Bonus Pay, then Plaintiffs request same as Defendant admits their data allows for such determination, and Plaintiffs have provided damage calculations for same in the three spreadsheets at **App. pp. 471-479** (Exhibits 48-50); *See also* **App. pp. 59, 66** (Reid 30(b)(6) Dep. 102:1-12; 109:19-114:7).

hours worked per workweek by each such Discovery Plaintiff. That resulted in the regular rate of pay for each Discovery Plaintiff. Plaintiffs then multiply one half of that number added with the hourly rate already paid to that Discovery Plaintiff  by the number of overtime hours worked. That number, less the amount of overtime pay that individual did receive, is the amount of overtime pay that ought to have been paid had OBM been factored into their regular rate. After these number are computed for each Discovery Plaintiff who received OBM, the total amount of unpaid overtime pay derived from OBM pay is divided by the total number of workweeks in which that amount was earned. This figure is then divided by the total number of Discovery Plaintiffs to determine the average amount of unpaid overtime per week that resulted from OBM pay. That average unpaid overtime wage number was then multiplied by the number of workweeks worked by each Plaintiff who received only OBM Pay. The foregoing calculation can be seen in the attached damages spreadsheet,[122] and totals $20,900.41 for a two year limitations period and $34,897.47 for a three year limitations period.

> b.   *Plaintiffs Receiving Only Bonus Pay.*

With regard to Plaintiffs who received Bonus Pay only, Plaintiffs divided the total Bonus Pay received by each Discovery Plaintiff by the numbers hours worked over the course of those workweeks in which the bonus was earned. This figure is the average regular rate for the particular Bonus Payment. One-half this average regular rate was then multiplied by the number of overtime hours worked for each workweek during which the bonus was earned, which yields the amount of unpaid overtime pay associated with that bonus. Plaintiffs then added that number for each Discovery Plaintiff who received only Bonus Pay and divided it by the total number of Discovery Plaintiffs. That determined the total unpaid overtime pay for Bonus Pay for the

---

[122] **App. pp. 474-476** (Ex. 49 – Damage Spreadsheet – OBM Only).

Discovery Plaintiffs. The total unpaid overtime pay was then divided by the number of weeks worked by all Discovery Plaintiffs to arrive at the average amount of unpaid overtime resulting from Bonus Pay per week worked by the Discovery Plaintiffs. That average unpaid overtime wage number was then multiplied by the number of workweeks worked by each Plaintiff. The foregoing calculation can be seen in the attached damages spreadsheet,[123] and totals $71,434.04 for a two year limitations period and $120,572.64 for a three year limitations period.

       *c.   Damage Model Averaging OBM Pay and Bonus Pay.*

The Parties have agreed in this matter to conduct representative discovery. The 24 representative Discovery Plaintiffs are listed in the attached spreadsheet along with the dates of their respective depositions.[124] Damages for the entire class may be extrapolated on the basis of representative evidence. *Olibas v. Barclay*, 838 F.3d 442, 450 (5th Cir. 2016). Plaintiffs have computed the amounts of unpaid overtime wages owed to each Discovery Plaintiff, and have extrapolated the amounts thereof to reflect the overall damages owed to the class as a whole based on the average weekly unpaid overtime wages of the representative Discovery Plaintiffs and applying it to the total weeks worked by each class member.[125] Defendant's 30(b)(6) corporate representative agreed that the method used to compute "weeks worked" for the class members in the spreadsheet was accurate, given that Plaintiffs worked 14 on and 14 off schedules.[126] As shown below, Plaintiffs are entitled to liquidated damages for the three years prior to filing a consent to join in this action.

## C. Defendant's Conduct Was "Willful" and the Court Should Respectfully Award Damages Based on the FLSA's Three Year Statute of Limitations.

---

[123] **App. pp. 477-479** (Ex. 50 – Damage Spreadsheet – Bonus Only).
[124] **App. p. 470** (Ex. 47 - List of Discovery Plaintiffs).
[125] **App. p. 471-473** (Ex. 48 - Plaintiff Damage Calculations).
[126] **App. p. 105-106** (Ex. 1 – Reid 30(b)(6) Dep. 173:2-174:24).

The FLSA provides for an automatic two year statute of limitations for violations of the statute. 29 U.S.C. § 255(a). However, that time period may be extended to three years if the plaintiff proves that the defendant's conduct was in willful violation of the law. *Id. See also*, *Cox v. Brookshire Grocery Co.*, 919 F.2d 354, 356 (5th Cir. 1990). A violation of the FLSA is willful if the employer either knew its conduct violated the FLSA or showed reckless disregard for whether its conduct complied with the law. *McLaughlin v. Richland Shoe Co.*, 486 U.S. 128, 133 (1988); *Cox*, 919 F.2d at 1416. Courts have found a defendant's conduct to be willful where the defendant had knowledge of the law's requirement and still refused to comply. *Martin v. Selker Brothers, Inc.*, 949 F.2d 1286, 1296 (3rd Cir. 1991).

Defendant's Rule 30(b)(6) Witness, Ms. Reid, testified that it would be "reckless" for an employer to not take actions to determine whether or not certain remuneration should be included in the regular rate.[127] Plaintiffs' counsel went through an exhaustive effort to get that witness to identify any bona fide actions Defendant took to determine whether or not it should have included the OBM Pay and Bonus Pay in Plaintiffs' regular rates of pay pursuant to the FLSA. Ms. Reid ultimately testified that, even though she and Mr. Latshaw were the individuals responsible for making that determination, she could not identify a single person who made that determination. In relevant part, that testimony is as follows:

> Q.  So you don't know an individual at Latshaw that made that determination for oil-based mud pay or bonuses, true?
> A.  Yeah. It's industry standard. I mean, I wouldn't include a per diem in -- in regular rates of I wouldn't include this operator bonus in regular rates of pay.[128]

With regard to that alleged "industry standard" statement, Ms. Reid was then simply asked to identify any drilling company, other than Latshaw, which excluded OBM Pay and/or

---

[127] **App. p. 22** (Ex. 1 - Reid 30(b)(6) Dep. 39:16-24).
[128] **App. p. 14, 53** (Ex. 1 – Reid 30(b)(6) Dep. 31:12-25; 96:5-17).

Bonus Pay from its drilling rig crew member employees' regular rates of pay, but she could not identify a single one.[129] After a series of attempts to avoid answering the question to identify a single other drilling company which supported her "industry standard" accusation, the truth finally emerged:

> Q. (BY MR. VAUGHT) Let me ask you this way, ma'am. Are you aware of any company other than Latshaw Drilling, specific company, that excluded oil-based mud pay and bonuses from their employees' regular rate of pay? Can you name a particular company?
> MS. WITTERHOLT: Is this during the dawn of time or just today?
> MR. VAUGHT: Well, as I said at the beginning, my questions are limited to the relevant time period unless otherwise specified.
> A. Again, I -- I'm sorry, Allen. I'm not familiar with the pay practices of any employer other than Latshaw Drilling during the relevant time period. I'm not.
> Q. (BY MR. VAUGHT) Thank you. You just answered my question.[130]

Ms. Reid further confirmed Defendant did not have a single document showing any investigation into excluding OBM Pay or Bonus Pay from the regular rate, or any basis for that determination, despite testifying that determining whether certain remuneration could be excluded from the regular rate of pay was a "pretty important decision."[131] Ms. Reid confirmed that Defendant was aware, at all times relevant, that the failure to pay all overtime wages owed to employees was a violation of the FLSA.[132] For his part, Mr. Latshaw admitted that he is not familiar with the FLSA requirements for overtime, other that the very general requirement that overtime premiums be paid for hours worked over 40 in a given week.[133]

Based on the testimony and evidence from Defendant, there is no genuine issue of material fact, and Plaintiffs are entitled to judgment as a matter of law that Defendant's

---

[129] **App. p. 53-58** (Ex. 1 – Reid 30(b)(6) Dep. 96:18-101:23).
[130] **App. pp. 58** (Ex. 1 – Reid 30(b)(6) Dep. 101:10-25).
[131] **App. pp. 16** (Ex. 1 – Reid 30(b)(6) Dep. 33:16-22).
[132] **App. pp. 6, 9** (Ex. 1 – Reid 30(b)(6) Dep. 19:4-14; 22:11-17).
[133] **App. p. 151** (Ex. 2 - Latshaw Dep. 70:8-19).

violations of the FLSA made the basis of this lawsuit were willful, and that the FLSA's three

year limitations period applies in calculating back overtime wages.

**D.  Plaintiffs Are Entitled to Liquidated Damages in an Amount Equal to Back Overtime
Wages.**

      Plaintiffs request liquidated damages in an amount equal to back overtime wages.

Liquidated damages "constitute compensation for the retention of a workman's pay" where the

required wages are not paid on time. *Brooklyn Sav. Bank v. O'Neil*, 324 U.S. 697, 707 (1945); 29

C.F.R. § 790.22. Under 29 U.S.C. § 216(b), employers who violate the FLSA's overtime

provisions "shall be liable to the [. . .] employees affected in the amount of their unpaid

minimum wages, or their unpaid overtime compensation, as the case may be, and in an additional

equal amount as liquidated damages."

      Plaintiffs are entitled to liquidated damages unless Defendant proves that its failure to

pay overtime compensation was in good faith. 29 U.S.C. § 260. The burden is on the Defendant

to show "that the act or omission giving rise to such action was in good faith and that [it] had

reasonable grounds for believing that [its] act or omission was not a violation of the [FLSA]." 29

U.S.C. § 260; *Mireles v. Frio Foods, Inc.*, 899 F.2d 1407, 1415 (5th Cir. 1990).

      Defendant has the "**substantial burden**" of proving both their subjective good faith in

taking its actions and that it was on objectively reasonable grounds to do so. *Id.* (emphasis

added). *See also Native Oilfield Services, LLC*, 104 F. Supp. 3d at 809 ("[An] employer faces a

substantial burden of demonstrating good faith and a reasonable belief that its actions did not

violate the FLSA."). There is a strong presumption in favor of imposing full liquidated damages

under the FLSA. *Nero v. Indus. Molding Corp.*, 167 F.3d 921, 929 (5th Cir. 1999).

      To prove subjective good faith in failing to comply with the law, Defendant must show

that it took "active" or "affirmative" steps to investigate its compliance, or lack thereof, with the

FLSA. *Barcellona v. Tiffany English Pub, Inc.* 597 F.2d 464, 468-69 (5th Cir. 1979); *Brantley v. Inspectorate Am. Corp.*, 821 F. Supp. 2d 879, 895 (S.D. Tex. 2011). To establish objective reasonableness, courts require more than the absence of intent or misunderstanding; there must be "objectively reasonable grounds for the employer to believe itself in compliance with the Act." *Tran v. Thai*, No. CIV.A. H-08-3650, 2010 WL 5232944, at *6 (S.D. Tex. Dec. 16, 2010) (citing *Solis v. Min Fang Yang*, 345 F. App'x 35, 39 (6th Cir. 2009) (unpublished)). Even if a defendant shows both subjective good faith and objective reasonableness, an award of liquidated damages remains in the discretion of the district court. *Solis v. Hooglands Nursery, L.L.C.*, 372 F. App'x 528, 530 (5th Cir. 2010) (unpublished).

The FLSA assigns the Court, and not the jury, with the role of finding whether or not the employer acted in subjective and objective good faith with regards to liquidated damages. 29 U.S.C. § 260; *Bernard v. IBP, Inc. of Neb.*, 154 F.3d 259, 267 (5th Cir. 1998) ("[T]he award of liquidated damages remains within the *discretion of the trial court* [. . .]") (emphasis added); *Alvarez Perez v. Sanford-Orlando Kennel Club, Inc.*, 515 F.3d 1150, 1163 (11th Cir. 2008) ("[T]he [FLSA] assigns to the judge the role of finding whether the employer acted in subjective and objective good faith for liquidated damages purposes.").

Initially, Plaintiffs incorporate by reference as if set forth fully herein their facts presented in connection with the willfulness argument above. If the Court enters summary judgment in Plaintiffs' favor on willfulness, there is no need to address the elements relative to Defendant proving "good faith" relative to liquidated damages. *Native Oilfield Servs., LLC*, 104 F. Supp. 3d at 809 (Where the fact finder finds that "the employer acted willfully in violating the FLSA…the employer cannot show that it acted in good faith, and as such a liquidated damages is warranted.") (quotations omitted).

In any event, Latshaw is unable to identify any affirmative steps it took to investigate its compliance with the FLSA.[134] Latshaw did not keep any records which reflect its investigations or decision making processes with respect to computing the regular rate of pay under the FLSA.[135] Latshaw never consulted with the Department of Labor to attempt to ensure that its practices relative to calculating Plaintiffs regular rate of pay were in compliance with the FLSA.[136] Latshaw never consulted with any attorneys prior to the filing of the lawsuit to investigate whether the remuneration at issue in the case may be properly excluded from the regular rate.[137] Latshaw also did not consult with an accountant in order to investigate its exclusion of oil-based mud pay and bonus pay from the regular rate of pay.[138] In fact, the only specific affirmative act Defendant claims it took with respect to investigating the FLSA regular rate of pay is that their HR director "routinely reviews employment laws to confirm that the company is in compliance."[139] However, Defendant's HR Director and 30(b)(6) representative was unable to recall any specific continuing education program that addressed employer compliance with the FLSA.[140] She was likewise unable to identify any specific  materials she consulted to become familiar with the FLSA regular rate.[141] And while she contends she researched Department of Labor fact sheets on the internet, she was unable to identify any specific information from the Department of Labor that she consulted regarding inclusion or exclusion of remuneration from the regular rate of pay.[142]

---

[134] **App. p. 15-16** (Ex. 1 - Reid 30(b)(6) Dep.  32:6-33:15).
[135] *Id*. **at p. 16** (33:19-22).
[136] *Id*. **at p. 20** (37:14-22).
[137] *Id*. **at p. 76** (119:20-25).
[138] *Id* **at p. 77** (120:14-23).
[139] *Id*. **at p. 89** (146:14-19).
[140] *Id*. **at p. 7** (20:13-17).
[141] *Id*. **at p. 19** (36:6-14).
[142] *Id*. **at p. 20** (37:23-38:15).

In short, Defendant has not presented any documentation, nor any specific action it took, with regards to proving its affirmative defense of "good faith." Accordingly, there is no genuine issue of material fact, and Plaintiffs are entitled to judgment as a matter of law that liquidated damages in an amount equal to back overtime wages are warranted.

**E.  Post-Judgment Interest, Legal Fees, and Costs.**

"[P]ost-judgment interest [pursuant to 28 U.S.C. § 1961] is permitted for damages awarded under the FLSA." *Native Oilfield Services, LLC*, 104 F. Supp. 3d at 813. Plaintiffs ask that the Court award post-judgment interest.

"The FLSA provides that reasonable attorney's fees and costs are penalties that shall be awarded to the employee." *Gagnon*, 607 F.3d at 1043 (citing 29 U.S.C. § 216(b)); *see also Black*, 732 F.3d at 502 ("Under the FLSA, an employer who violates the statute is also required to pay attorney's fees."). Should the Court find that Plaintiffs are prevailing parties, then it is requested that the Court enter a deadline for Plaintiffs to submit a motion for legal fees and costs 21 days after entry of judgment granting them all relief requested herein. However, should any matter remain for trial, then Plaintiffs request that such motion have a deadline after the conclusion of any such trial.

## VI.   CONCLUSION

For the foregoing reasons, Plaintiffs ask that the Court enter summary judgment in their favor as to all claims, and award them all available damages. Plaintiffs respectfully request such other and further relief to which they may be justly entitled including, but not limited to, partial summary judgment on any matter or element deemed appropriate by the Court.

*[signature block on following page]*

Respectfully submitted,

Baron & Budd, P.C.

By: s/Allen R. Vaught
　　　Allen R. Vaught
　　　TX Bar No. 24004955
　　　MS Bar No. 101659
　　　Melinda Arbuckle
　　　TX Bar No. 24080773
　　　Michael V. Ellis
　　　TX Bar No. 24068602
　　　Farsheed Fozouni
　　　TX Bar No. 24097705
　　　3102 Oak Lawn Ave., Suite 1100
　　　Dallas, TX 75219
　　　(214) 521-3605 Phone
　　　(214) 520-1181 Fax
　　　avaught@baronbudd.com
　　　marbuckl@baronbudd.com
　　　mellis@baronbudd.com
　　　ffozouni@baronbudd.com

　　ATTORNEYS FOR PLAINTIFFS


## CERTIFICATE OF SERVICE

On October 19, 2017 I electronically submitted the foregoing document with the clerk of court for the U.S. District Court, Northern District of Texas, using the electronic case filing system of the Court. I hereby certify that I have served all Counsel of record electronically.

　　　　　s/Allen R. Vaught
　　　　　Allen R. Vaught