IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| JOHNNY L. MEADOWS, *et al*, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 3:15-cv-01173-N |
| | § | |
| LATSHAW DRILLING COMPANY, LLC, | § | |
| | § | |
| Defendant. | § | |

## PLAINTIFFS' BRIEF IN OPPOSITION TO
## DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

Plaintiff, Johnny L. Meadows, on behalf of himself and all opt-in Plaintiffs in this federal Fair Labor Standards Act ("FLSA") lawsuit (collectively "Plaintiffs"), files this Brief in Opposition to Defendant's Motion for Summary Judgment (the "Brief") requesting that the Court enter an appropriate order denying Defendant's Motion for Summary Judgment (the "Motion").

Pursuant to LR 56.5(a), this Brief is filed as a separate document from Plaintiffs' Response in Opposition to Defendant's Motion for Summary Judgment (the "Response").

Pursuant to LR 56.4(a)(2) and LR 56.6, Plaintiffs file, as a separate document, an Appendix containing materials in opposition to the Motion and in support of this Brief. Plaintiffs incorporate that Appendix by reference as if set forth fully in the Response and this Brief. Citations to that Appendix are set forth in this Brief pursuant to LR 56.5(c).

The LR 56.4(a)(1) summary of the basis on which Plaintiffs oppose the Motion is set forth in this Brief pursuant to LR 56.4(b).

# **TABLE OF CONTENTS**

TABLE OF CONTENTS ................................................................................................ ii

TABLE OF AUTHORITES ......................................................................................... iv

I. SUMMARY ......................................................................................................... 1

    A. Background. ................................................................................................. 1

    B. Defendant Has No Affirmative Defenses to Support the Arguments in Its Motion for Summary Judgment, and Plaintiffs Object to Defendant Raising Such Affirmative Defenses Now. ............................................... 2

II. LEGAL STANDARDS ........................................................................................ 6

    A. Standard for Summary Judgment .............................................................. 6

    B. Defendant Has the Burden of Proof to Show that OBM Pay and Bonus Pay Could Be Lawfully Excluded from the Regular Rate of Pay ............ 7

III. OBJECTIONS ..................................................................................................... 8

    A. Objections to Unpleaded Affirmative Defenses that Have Been Waived by Defendant. ............................................................................................. 8

        1. Defendant Has Not Pleaded Any Affirmative Defense, and Cannot Evade the Strong Presumption in Favor of Including All Remuneration in an Employee's Regular Rate of Pay .................................. 8

        2. Defendant Waived Unpleaded Affirmative Defenses Raised for the First Tine in its Motion for Summary Judgment – Consideration of Such Defenses Is Clearly Prejudicial to Plaintiffs Where Defendant Knew of Those Potentially Applicable Defenses Under Well-Settled Law but Never Previously Pleaded Them. ...................................... 9

    B. Objections to the Affidavits of Cochran, Stockton, and O'Neal. .......... 12

        1. The Cochran and Stockton Affidavits Are Sham Affidavits and Those Individuals Were Not Offered as Corporate Representatives Pursuant to Plaintiffs' Properly Noticed Rule 30(b)(6) Deposition .............. 12

            a. Cochran's Affidavit Impermissibly Attempts to Controvert the Testimony of Defendant's Designated Corporate Representative. ...................................................................... 14

        b.   Stockton's Affidavit Should Similarly Be Stricken in Its Entirety as It Impermissibly Seeks to Vary the Testimony of Defendant's 30(b)(6) Corporate Representative. ...............................17

    2.   The Cochran and Stockton Affidavits Are Improper as They Assert Legal Conclusions and Are Not Based on Personal Knowledge. ................18

        a.   Objections to Baseless and Conclusory Statements in the Cochran Affidavit. ...............................................................................18

        b.   Objections to Baseless and Conclusory Statements in the Stockton Affidavit. ...............................................................................19

    3.   Cochran and Stockton Were Not Designated In Defendant's Rule 26(a)(1)(A) Disclosures. ...............................................................................20

    4.   Objections to the O'Neal Affidavit...............................................................23

  C.   Objections to Defendant's Statement of "Undisputed" Facts." ............................28

IV.   ARGUMENTS AND AUTHORITIES........................................................................ 36

  A.   Defendant Cannot Meet Its Burden to Prove that Oil-Based Mud Pay Could Be Excluded from Plaintiffs' Regular Rate of Pay – Defendant is Liable for Its Willful Failure to Pay Proper Overtime Wages. ............................36

    1.   Oil-Based Mud Pay Did Not Reasonably Approximate Plaintiffs' Purported Expenses to Qualify as a Per Diem Expense Reimbursement. ............................................................................................37

    2.   Oil-Based Mud Pay Represents a Shift Differential for "Hazardous, Arduous, and Dirty" Work Which Must Be Included in the Regular Rate of Pay. ..................................................................................................41

  B.   Defendant Cannot Meet Its Burden to Prove that Bonus Pay Was Properly Excluded from Plaintiffs' Regular Rate of Pay When Calculating the Overtime Pay Due to Them. ...................................................................................43

V.   PRAYER ....................................................................................................................... 49

# TABLE OF AUTHORITES

Page(s)

## Cases

*Allied Chem. Corp. v. Mackay*,
  695 F.2d 854 (5th Cir. 1983) .................................................10

*Alonzo v. Maximus, Inc.*,
  832 F. Supp. 2d 1122 (C.D. Cal. 2011) .................................8

*Batiste v. Burke*,
  746 F.2d 257 (5th Cir. 1984) .................................................10

*Bay Ridge Operating Co. v. Aaron*,
  334 U.S. 446 (1948).................................................................41

*Bennett v. GEO Group, Inc.*
  ˏ No. 12-60017, 2013 WL 5916765 (5th Cir. May 22, 2013) ...........................20, 21

*Bernal v. Vankar Enters., Inc.*,
  579 F. Supp. 2d 804 (W.D. Tex. 2008).................................7

*Brock v Two R Drilling Co., Inc.*
  ˏ 789 F.2d 1177 (5th Cir. 1986) .............................................46

*Celotex Corp. v. Catrett*,
  477 U.S. 317 (1986).................................................................7

*Chavez v. T&B Mgmt., LLC*,
  No. 1:16-cv-01019, 2017 WL 2275013 (M.D.N.C. May 24, 2017)........................25

*DAC Surgical Partners P.A. v. United Healthcare Servs., Inc.*,
  No. 4:11-CV-1355, 2016 WL 7157522 (S.D. Tex. Dec. 7, 2016)...........................12

*DAC Surgical Partners P.A. v. United Healthcare Servs., Inc.*,
  No. 4:11-CV-1355, 2017 WL 3484507 (S.D. Tex. Aug. 14, 2017) ........................12

*Denman Tire Corp. v. Compania Hulera Tornel, S.A. De C.V.*,
  No. DR-12-CV-027-AM/VRG, 2014 WL 12564118 (W.D. Tex. Mar. 31,
  2014) ..........................................................................................22

*Diaz v. Jaguar Rest. Group, LLC*,
  627 F.3d 1212 (11th Cir. 2010) .............................................10

*Dogan-Carr v. Saks Fifth Avenue Tex.*,
  LP, No., 2007 WL 646375 (S.D. Tex. Feb. 26, 2007)...........................................22

*Gagnon v. United Technisource, Inc.*,
607 F.3d 1036 (5th Cir. 2010) ................................................................. 36, 40, 44

*Galindo v. Precision Am. Corp.*
¸754 F.2d 1212 (5th Cir. 1985) .........................................................................18, 24

*Gonzalez v. McNeil Techs., Inc.*,
No. 1:06cv204, 2007 WL 1097887 (E.D. Va. April 11, 2007) ..................... 8, 9, 47

*Gonzalez v. Tanimura & Antle, Inc.*,
No. 2:06-cv-02485, 2009 WL 1457030 (D. Ariz. May 21, 2009)...........................26

*Hyde v. Stanley Tools*,
107 F. Supp. 2d 992 (E.D. La. 2000), *aff'd*, 31 F. App'x 151 (5th Cir. 2001)......12, 13, 16, 18

*Idaho Sheet Metal Works, Inc. v. Wirtz*,
383 U.S. 190 (1966)...................................................................................8, 11, 37, 45

*Imperium IP Holdings (Cayman), Ltd. v. Samsung Elecs. Co.*,
203 F. Supp. 3d 755 (E.D. Tex. 2016) ..................................................................11

*Johnson v. Big Lots Stores, Inc.*,
604 F. Supp. 2d 903 (E.D. La. 2009).........................................................8, 37, 45

*Lackey v. SDT Waste and Debris Services, LLC*,
No. 11-1087, 2014 WL 3866465 (E.D. La. Aug. 6, 2013)...............................24, 25

*Lavespere v. Niagara Mach. & Tool Works, Inc.*,
910 F.2d 167 (5th Cir. 1990) .........................................................................7

*Lipnicki v. Meritage Homes Corp.*,
No. 3:10-CV-605, 2014 WL 923524 (S.D. Tex. Feb. 13, 2014) ...........................25

*Mata v. Caring for You Home Health, Inc.*,
No. 7:13–CV–287, 2014 WL 12538135 (S.D. Tex. Aug. 12, 2014)............... 46, 48

*Mitchell v. Kentucky Fin. Co.*,
359 U.S. 290 (1959)........................................................................................8, 9

*Moore v. Ashland Chem., Inc.*
¸151 F.2d 269 (5th Cir. 1998) .........................................................................26

*Orthopedic & Sports Injury Clinic v. Wang Labs., Inc.*,
922 F.2d 220 (5th Cir. 1991) .........................................................................25

*Pasco ex rel. Pasco v. Knoblauch*,
566 F.3d 572 (5th Cir. 2009) ........................................................................10, 11

*Poitra v. Sch. Dist. No. 1*,
  311 F.R.D. 659 (D. Colo. 2015) ........................................................22

*Reid v. State Farm Mut. Auto. Ins. Co.*,
  784 F.2d 577 (5th Cir. 1986) ............................................................7

*S&W Enters, L.L.C. v. SouthTrust Bank of Ala.*,
  315 F.3d 533 (5th Cir. 2003) ...........................................................11

*S.W.S. Erectors, Inc. v. Infax, Inc.*,
  72 F.3d 489 (5th Cir. 1996) .............................................................12

*Salas v. Carpenter*,
  980 F.2d 299 (5th Cir. 1992) ...........................................................25

*Salter v. Upjohn Co.*,
  593 F.2d 649 (5th Cir. 1979) ...........................................................21

*In re Sambrano*,
  440 b.R. 702 (Bankr. W.D. Tex. 2010)..............................................21

*Serna v. Law Office of Joseph Onwuteaka, P.C.*,
  614 Fed. App'x 146 (5th Cir. 2015) .................................................18

*Skidmore v. Swift & Co.*
  ˎ 323 U.S. 134 (1944) ................................................................25, 26

*Smiley v. E.I. Dupont De Nemours & Co.*,
  839 F.3d 325 (3d Cir. 2016)......................................................7, 8, 9

*Stagliano v. Cincinnati Ins. Co.*,
  633 Fed. App'x 217 (5th Cir. 2015) .................................................24

*Starlight Int'l Inc. v. Herlihy*,
  186 F.R.D. 626 (D. Kan. 1999).........................................................12

*Texas Tech. Inst., Inc. v. Silicon Valley, Inc.*,
  No. CIV.A. H-04-3349, 2006 WL 237027 (S.D. Tex. Jan. 31, 2006)....................13

*In the Matter of the Arbitration Between [Claimant] and [Respondent]*,
  2017 WL 1364323 (AAA) (March 27, 2017)............................40, 41, 47

*Tyler v. Cedar Hill Indep. Sch. Dist.*
  ˎ 426 Fed. App'x 306 (5th Cir. 2011) ..............................................29

*United States v. Taylor*,
  166 F.R.D. 356 (M.D.N.C. 1996) .................................................13, 16

*W.R. Grace & Co. v. N & M, Inc.*,
  No. 1:06mc602WJG, 2006 WL 3694595 (S.D. Miss. Dec. 13, 2006) ....................................16

*Waltman v. Int'l Paper Co.*,
  875 F.2d 468 (5th Cir. 1989) ................................................................................................ 7

**Statutes, Regulations, and Rules**

29 U.S.C. § 207(a)(1) ........................................................................................................ 37

29 U.S.C. § 207(e) .................................................................................................... *passim*

Fair Labor Standards Act, 29 U.S.C. §§ 201-219 and Portal-to-Portal Pay Act, 29
  U.S.C. §§ 251-262 ("FLSA") ...................................................................... *passim*

29 C.F.R. § 778.207(b) ......................................................................................................37

29 C.F.R. § 778.211(b) ......................................................................................................43

29 C.F.R. § 778.211(c) ...................................................................................................... 47

29 C.F.R. § 778.217(a) ......................................................................................................37

Federal Rule of Civil Procedure 26 ...........................................................................4, 20, 21, 23

Federal Rule of Civil Procedure 30(b)(6) ...................................................................... *passim*

Federal Rule of Civil Procedure 37(c)(1) ...................................................................................20

Federal Rule of Civil Procedure 56(a) ......................................................................................... 7

Federal Rule of Civil Procedure 56(c) ......................................................................................... 7

Federal Rule of Civil Procedure 56(c)(4) ...............................................................................18, 20

Federal Rule of Civil Procedure 16(b)(4) ..................................................................................11

Federal Rule of Evidence 702 ....................................................................................................26

Federal Rules of Evidence 702 and 703 ................................................................................5, 27

# I.   SUMMARY

## A.   Background.

Plaintiffs are current and/or former non-exempt employees of Defendant under the FLSA. Plaintiffs were paid an hourly rate of pay, and also received additional remuneration in the form of oil-based mud pay ("OBM Pay" or "OBM") and/or Performance and Safety Bonuses ("Bonus Pay" or "Bonuses"). They filed this action under the Fair Labor Standards Act, 29 U.S.C. §§ 201-219, and the federal Portal-to-Portal Pay Act, 29 U.S.C. §§ 251-262, (collectively, the "FLSA") for Defendant's failure to pay Plaintiffs time and one half their regular rate of pay for all hours worked over 40 in a given workweek. Specifically, Defendant failed to include all remuneration required by the FLSA in calculating Plaintiffs' respective regular rates of pay which resulted in an underpayment of the overtime wages owed.

Plaintiffs were employed as drillers, derrick hands, motor hands, and/or floor hands on Defendant's drilling rigs. Their typical work schedule comprised 14 consecutive shifts working twelve hours per day, followed by a 14 day period during which they were "off." Therefore, a typical workweek in which Plaintiffs were working consisted of 84 working hours, or 40 regular and 44 overtime hours. Defendant concedes that Plaintiffs were nonexempt employees under the FLSA, and it paid them time and one half their hourly rate of pay for hours worked in a given workweek in excess of 40 hours per work week. However, it is undisputed that Defendant did not include OBM Pay or Bonus Pay in its computation of Plaintiffs' respective regular rates of pay when calculating the overtime wages owed to Plaintiffs.

**B.**     **Defendant Has No Affirmative Defenses to Support the Arguments in Its Motion for Summary Judgment, and Plaintiffs Object to Defendant Raising Such Affirmative Defenses Now.**

Defendant filed its Motion for Summary Judgment on October 19, 2017.[1] In its Memorandum in Support of Defendant's Motion for Summary Judgment, Defendant purports to prove that OBM Pay was properly excluded as a reimbursement for expenses for purchasing and laundering Plaintiffs' clothing, uniforms, and equipment under 29 U.S.C. § 207(e)(2). Defendant also claims that Bonus Pay is properly excluded from Plaintiffs' regular rates of pay pursuant to 29 U.S.C. § 207(e)(3) as a discretionary bonus.

Under the FLSA, all remuneration paid to employees is presumed to be included in the regular rate of pay for the purposes of computing overtime premiums unless it falls within an exclusive list of statutory exclusions set forth in 29 U.S.C. § 207(e). Defendant, as the employer, bears the burden of proof to show that any remuneration can properly be excluded from the regular rate pay by affirmative defense.

Initially, Plaintiffs object to Defendant's Motion for Summary Judgment on the grounds that Defendant has not timely pleaded any affirmative defense which would support exclusion from the regular rate of pay, and has waived any affirmative defense relative to 29 U.S.C. § 207(e).[2] This lawsuit was filed on March 15, 2015.[3] The Court ordered the parties to file any motions for leave to amend pleadings by October 16, 2015.[4] Defendant's most recent responsive pleading, its First Amended Answer, was filed on April 23, 2015.[5] That pleading did not allege

---

[1] ECF No. 91.
[2] Defendant filed a motion for leave to amend its pleadings after Plaintiffs filed their Motion for Summary Judgment, but Plaintiffs oppose that motion and will file a response to same within the time limits allowed by the Local Rules. *See* ECF No. 103.
[3] ECF No. 1.
[4] ECF No. 18.
[5] ECF No. 13.

any affirmative defense relative to statutory exclusions from the FLSA regular rate of pay.[6] The Court subsequently ordered that discovery closed on September 22, 2017.[7] Nevertheless, only after the parties' filing of their respective Motions for Summary Judgment, and almost two years after the Court's deadline to file motions for leave to amend pleadings, did Defendant seek leave to amend its answer to assert, for the first time, affirmative defenses relative to exclusion of OBM Pay and Bonus Pay from the FLSA regular rate of pay.[8] Accordingly, Plaintiffs ask the Court to deny Defendant's Motion for Summary Judgment as Defendant has not pleaded any affirmative defense under 29 U.S.C. § 207(e) relative to OBM Pay and Bonus Pay which would allow it to meet its burden of proof to establish that it could exclude same from Plaintiffs' respective regular rates of pay. Furthermore, Defendant, by failing to timely plead any such affirmative defense has waived its right to assert same at this late stage of the litigation.

## C.    Objections to the Affidavits of Cochran, Stockton, and O'Neal.

Plaintiffs also object to three affidavits submitted by Defendant in support of its Motion. Plaintiffs object to the Affidavits of Mark Cochran (the "Cochran Affidavit"), Joey Stockton (the "Stockton Affidavit"), and Randall G. O'Neal (the "O'Neal Affidavit"). Cochran and Stockton are employees of Defendant. O'Neal is the purported expert witness for Defendant.

### 1.    Cochran and Stockton Affidavit Objections.

First, Plaintiffs object to the Cochran and Stockton Affidavits as sham affidavits. Cochran and Stockton were not offered or presented as corporate representatives of Defendant relative to Plaintiffs' Federal Rule of Civil Procedure 30(b)(6) deposition taken on September 13, 2017, although the testimony set forth in their respective affidavits was covered by the topics in Plaintiffs' Rule 30(b)(6) notice. Instead, Defendant offered Amanda Reid ("Reid") on all

---

[6] *Id.*
[7] ECF No. 87.
[8] *See Id.*; ECF No. 103.

deposition topics requested by Plaintiffs. While Cochran was present at Reid's Rule 30(b)(6) deposition, Defendant did not offer him for testimony and agreed that Reid was the designated corporate representative on all of Plaintiffs' deposition topics. Understandably, Defendant knows Reid's deposition testimony was not favorable to its position. However, Defendant cannot attempt to undo that testimony by providing sham affidavits from Cochran and Stockton.

Furthermore, as Cochran's and Stockton's affidavit testimony is covered by the topics of Plaintiffs' Rule 30(b)(6) deposition notice, Cochran and Stockton should have been presented for deposition as Rule 30(b)(6) corporate representatives prior to the discovery deadline and should not be allowed to now testify on topics covered by Plaintiffs' Rule 30(b)(6) notice.

In addition to the foregoing issues with Cochran's and Stockton's testimony, Defendant never designated Cochran or Stockton as "individuals likely to have discoverable information" in its Federal Rule of Civil Procedure 26(a)(1)(A) disclosures despite now attempting to use those individuals as Defendant's chief witnesses. Plaintiffs accordingly object to their testimony.

Finally, the affidavits of Cochran and Stockton contain improper legal conclusions and are not based on personal knowledge.

**2.      O'Neal Affidavit Objections.**

With regard to the O'Neal Affidavit, Plaintiffs object to same as untimely and because it asserts improper legal conclusions.

First, Plaintiffs served Defendant written discovery on July 19, 2016, requesting extensive data relative to expert witnesses, including the production of all documents provided to any expert Defendant expected to call as a witness, and every expert whose opinion, impressions, or work were reviewed by a testifying expert. Defendant never provided responsive documents to same. Additionally, with regard to untimeliness, Defendant did not produce the expert report

of O'Neal, which is different than the O'Neal Affidavit, until after it filed its Motion for Summary Judgment. That report, should Defendant attempt to use it in the future in this lawsuit, will be subject to objection and a *Daubert* Motion. However, it is not currently before the Court.

Second, O'Neal's affidavit offers impermissible legal conclusions to be drawn from Defendant's version of the facts (although Plaintiffs and the Court do not know what those alleged facts are due to Defendant failing to answer written discovery with regard to its purported expert). Courts routinely strike such expert testimony in FLSA cases like this. Such testimony should not be permitted pursuant to controlling case law in addition to Federal Rules of Evidence 702 and 703. Plaintiffs ask that the Court strike O'Neal's affidavit, in whole or in part, as it consists of legal analysis and conclusions.

**D.**     **Even if Defendant Had Timely Asserted Affirmative Defenses Pursuant to 29 U.S.C. § 207(e), the Facts in this Case Demonstrate that Defendant Could Not Have Met Its Burden of Proof to Overcome the Legal Presumption that the OBM Pay and/or Bonus Pay Should Have Been Included in the Regular Rate of Pay.**

Plaintiffs show in this Response, as well as their own Motion for Summary Judgment[9] that OBM Pay did not reasonably approximate any expense or group of expenses, and that Defendant has not and cannot prove that it does so. Defendant supplies Plaintiffs with Fire Retardant Clothing ("FRC") which it requires them to wear while working. Defendant also maintains a "point system" which allows Plaintiffs to obtain new FRCs at no personal expense. Plaintiffs further show that OBM Pay is not an expense reimbursement but rather a "shift differential" meant to compensate them for the hazardous, arduous, and unpleasant process of working with OBM. While OBM can damage clothing, the evidence shows that it also has an extremely unpleasant odor, it causes rashes, hives, and burning of the skin, it poses a dangerous slipping hazard which makes it more intensive and difficult to work with, and it creates a risk of

---

[9] ECF No. 95.

bodily injury or harm when a person is exposed to it. Therefore, the evidence demonstrates that OBM Pay actually compensated Plaintiffs for the "hazardous, arduous, and dirty" nature of working with OBM. The FLSA is clear that remuneration for such work must be included in the regular rate of pay.

The evidence in this case shows that Bonus Pay was not a discretionary bonus within the meaning of FLSA, and therefore not properly excludable from the regular rate of pay. Defendant's president, Trent Latshaw ("Latshaw") testified that Defendant did not retain sole discretion as to either the fact or the amount of the Bonus Pay. That testimony alone prevents Defendant from meeting its burden of proof relative to discretionary bonuses even had it timely pleaded an affirmative defense relative to same. Defendant takes the bizarre position that, despite undisputed evidence that it paid Plaintiffs the Bonus Pay and Plaintiffs were aware of the Bonus Pay as an incentive to work faster, safer, and more efficiently, the Bonus Pay should be excluded from the regular rate as a discretionary bonus because the money was paid to Defendant by its customers (sometimes called "operators") and that Defendant was simply providing a "payroll service." Defendant asserts that argument despite the fact that its Rule 30(b)(6) witness admitted that Defendant does not contend that its customers were employers or joint employers of Plaintiffs. Accordingly, even had Defendant timely pleaded any affirmative defense relative to discretionary bonus, it cannot meet its burden of proof to establish same.

Defendant's Motion for Summary Judgment should respectfully be denied.

## II.   <u>LEGAL STANDARDS</u>

### A.   <u>Standard for Summary Judgment.</u>

A motion for summary judgment is properly granted only if the movant shows that "there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a

matter of law." FED. R. CIV. P. 56(c). The party moving for summary judgment bears the burden of identifying those portions of the record which it believes demonstrate the absence of a genuine issue of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). To establish that there is no genuine issue as to any material fact, the movant must either submit evidence that negates the existence of some material element of the non-moving party's claim or defense, or, if the crucial issue is one for which the non-moving party will bear the burden of proof at trial, merely "point out that the evidence in the record is insufficient to support an essential element of the nonmovant's claim or defense." *Bernal v. Vankar Enters., Inc.*, 579 F. Supp. 2d 804, 806 (W.D. Tex. 2008), *citing Lavespere v. Niagara Mach. & Tool Works, Inc*., 910 F.2d 167, 178 (5th Cir. 1990).

A court must deny a motion for summary judgment if there is a genuine dispute as to any material fact. FED. R. CIV. P. 56(a). Under this standard, fact questions are considered with deference to the nonmovant. *Waltman v. Int'l Paper Co.*, 875 F.2d 468, 474 (5th Cir. 1989). Summary judgment is only appropriate when the movant can establish it is entitled to judgment as a matter of law. FED. R. CIV. P. 56(a). A court must review the facts drawing all inferences most favorable to the party opposing summary judgment. *Reid v. State Farm Mut. Auto. Ins. Co.*, 784 F.2d 577, 578 (5th Cir. 1986).

**B.**   **Defendant Has the Burden of Proof to Show that OBM Pay and Bonus Pay Could Be Lawfully Excluded from the Regular Rate of Pay.**

Under the FLSA, all remuneration paid by an employer to its employees is presumed to be included in the FLSA regular rate of pay when calculating overtime wages owed. 29 U.S.C. § 207(e).

The employer bears the burden of proving by affirmative defense that one of eight statutory exclusions to this general rule apply. 29 U.S.C. § 207(e)(1)-(8). *See also, e.g.*, *Smiley v.*

*E.I. Dupont De Nemours & Co.*, 839 F.3d 325, 330 (3d Cir. 2016) ("[T]here are several exceptions to the otherwise all-inclusive rule set forth in section 207(e) [for calculating the regular rate], but the statutory exclusions are narrowly construed, and the employer bears the burden of establishing that an exemption applies.") (some brackets and internal quotations omitted); *Johnson v. Big Lots Stores, Inc.*, 604 F. Supp. 2d 903, 927 (E.D. La. 2009) ("The employer bears the burden of demonstrating that certain payments should not be included in determining its employees' regular rate.") (citing *Idaho Sheet Metal Works, Inc. v. Wirtz*, 383 U.S. 190, 209 (1966)). Furthermore, "[e]xceptions to the regular rate are to be interpreted narrowly against the employer." *Gonzalez v. McNeil Techs., Inc.*, No. 1:06cv204, 2007 WL 1097887, at *3 (E.D. Va. April 11, 2007) (citing *Mitchell v. Kentucky Fin. Co.,* 359 U.S. 290, 295-96 (1959)); *Smiley*, 839 F.3d at 330 (same). As the moving party, Defendant bears the burden of proving by affirmative defense that as a matter of law the remuneration at issue in the instant case is subject to the appropriate respective statutory exclusions.

## III.   OBJECTIONS

### A.   Objections to Unpleaded Affirmative Defenses that Have Been Waived by Defendant.

#### 1.   Defendant Has Not Pleaded Any Affirmative Defense, and Cannot Evade the Strong Presumption in Favor of Including All Remuneration in an Employee's Regular Rate of Pay.

As stated above, employers bear the burden of proof to show, by affirmative defense, that remuneration paid to their employees may lawfully be excluded from their respective regular rates of pay. 29 U.S.C. § 207(e). *See also, e.g.*, *Alonzo v. Maximus, Inc.*, 832 F. Supp. 2d 1122, 1130 (C.D. Cal. 2011) ("The burden is on Defendant to establish that its bonus payments fall within one of the exceptions in § 207(e)."). Furthermore, "[e]xceptions to the regular rate are to

be interpreted narrowly against the employer." *Gonzalez*, 2007 WL 1097887, at *3 (citing *Mitchell.,* 359 U.S. at 295-96 (1959)); *Smiley*, 839 F.3d at 330 (same).

Here, Defendant failed to timely plead any affirmative defense that the remuneration at issue in this case falls within one of the statutory exclusions listed under 29 U.S.C. § 207(e)(1)-(8).[10] Instead, Defendant attempts to replead to include FLSA statutory exclusion defenses for the first time not only years after the deadline to file amended pleadings,[11] but also subsequent to the dispositive motion deadline.[12] Only after receiving Plaintiffs' Motion for Summary Judgment, and filing its own Motion for Summary Judgment, did Defendant seek leave to amend its answer to include the affirmative defenses it failed to plead in any previous responsive pleading.[13] Defendant's Motion for Leave to file an amended answer was filed over <u>two years</u> after the Court's deadline to amend pleadings.[14] Plaintiffs oppose that Motion for Leave and will fully respond to same by the responsive briefing deadline, which is December 5, 2017, pursuant to Local Rule 7.1(e). However, for the purposes of summary judgment, the Court should respectfully deem that these last minute affirmative defenses are not before the Court and deny Defendant's Motion for Summary Judgment based on those grounds.

2.  <u>**Defendant Waived Unpleaded Affirmative Defenses Raised for the First Time in its Motion for Summary Judgment – Consideration of Such Defenses Is Clearly Prejudicial to Plaintiffs Where Defendant Knew of Those Potentially Applicable Defenses Under Well-Settled Law but Never Previously Pleaded Them.**</u>

---

[10] ECF No. 13 (Defendant's First Amended Answer to Plaintiff's Original Complaint (filed on April 23, 2015).

[11] ECF No. 18 (Scheduling Order – setting amended pleading deadline at October 16, 2015).

[12] *See* ECF No. 87 (Second Amended Scheduling Order - setting dispositive motion deadline at October 19, 2017). *Compare* ECF No. 13 (Defendant's First Amended Answer to Plaintiff's Original Complaint (filed on April 23, 2015) (no statutory exclusion defenses)) *with* ECF No. 103 (Defendant Latshaw Drilling Company, LLC's Motion for Leave to Amend Its First Amended Answer to Plaintiffs' Original Complaint Out of Time (filed on November 14, 2017)).

[13] ECF Nos. 92, 93, 95, 96, & 103.

[14] *Compare* ECF No. 18, ¶ 6 *with* ECF No. 103.

Alternatively, the Court should respectfully deny Defendant's Motion for Summary Judgment on its late affirmative defenses due to waiver of same. Plaintiffs incorporate by reference Section V(A)(2) to their Brief in Support of Plaintiffs' Motion for Summary Judgment, which more fully sets out the standards for waiver of an FLSA statutory exclusion not properly pleaded as an affirmative defense.[15] FLSA affirmative defenses may be waived by an employer if they are not timely pleaded. *See, e.g.*, *Diaz v. Jaguar Rest. Group, LLC*, 627 F.3d 1212, 1214-15 (11th Cir. 2010) (failure to plead FLSA exemption as an affirmative defense in first responsive pleading is a "classic case of waiver.").

Defendant should not be permitted to raise for the first time in its Motion for Summary Judgment any affirmative defense which it has never pleaded in response to Plaintiffs' Complaint. The Fifth Circuit has permitted such "pleading through motion" only in two situations.

First, the practice is permitted where no objection is made by the nonmovant. *Batiste v. Burke*, 746 F.2d 257, 258 n.1 (5th Cir. 1984) (observing in dicta that "the propriety of raising affirmative defenses by motion is in some doubt.").

Second, the Fifth Circuit has permitted litigants to raise affirmative defenses by motion rather than responsive pleading where a defendant raises such defenses "at a pragmatically sufficient time, and [the plaintiff] was not prejudiced in its ability to respond" particularly where "the law on the topic is not clearly settled." *Pasco ex rel. Pasco v. Knoblauch*, 566 F.3d 572, 577 (5th Cir. 2009) (citing *Allied Chem. Corp. v. Mackay*, 695 F.2d 854, 855-56 (5th Cir. 1983)). In *Pasco*, and in opposition to the instant case, the Fifth Circuit declined to find waiver where a defense was raised two months prior to the close of discovery and a Supreme Court decision did not clarify the applicable law relating to the defense until after an intervening stay and appeal. *Id.*

---

[15] ECF No. 96 at pp. 18-21.

However, where an affirmative defense is raised after the summary judgment deadline and a defendant admits it knew about the defense but failed to raise it, the affirmative defense is waived. *See, e.g.*, *Imperium IP Holdings (Cayman), Ltd. v. Samsung Elecs. Co*., 203 F. Supp. 3d 755, 759 (E.D. Tex. 2016), *amended in part by* No. 4:14-CV-00371, 2017 WL 1716589 (E.D. Tex. Apr. 27, 2017), *reconsideration denied by* No. 4:14-CV-00371, 2017 WL 1716788 (E.D. Tex. Apr. 27, 2017) (also describing *Pasco* as a "special circumstance where the relevant law [. . .] was not clearly settled prior to a Supreme Court decision that was passed down.").

The *Imperium* court held that a defendant waived its affirmative defense in part because it admitted to knowing of it while choosing not to raise the defense until nearly two months before the discovery deadline. *Id*. at 760. Here, Defendant claims it was aware of the affirmative defenses as early as May 5, 2015, which was over 2 years prior to filing its Motion Summary Judgment.[16] Defendant has offered no basis for the Court to find good cause, as required by Federal Rule of Civil Procedure 16(b)(4),[17] for the failure to raise the defense in accordance with the Court's scheduling order. Moreover, Defendant's omission of affirmative defenses it now claims are necessary for its defense will clearly prejudice Plaintiffs where summary judgment briefing is in progress.

Additionally, in stark contrast to *Pasco¸* the proposition that statutory exclusions to the FLSA are affirmative defenses on which the employer bears the burden of proof has been settled law by Supreme Court precedent for decades and has not changed in the time this case has been pending. *See¸ e.g., Idaho Sheet Metal,* 383 U.S. at 209. Accordingly, because Defendant waived its affirmative defenses of exclusion from the regular rate of pay under § 207(e), the Court should deny its Motion.

---

[16] ECF No. 103 at p. 3, ¶ 5.
[17] *See S&W Enters, L.L.C. v. SouthTrust Bank of Ala.*, 315 F.3d 533, 535 (5th Cir. 2003).

**B.      Objections to the Affidavits of Cochran, Stockton, and O'Neal.**

Plaintiffs object to three affidavits submitted by Defendant in support of its Motion for Summary Judgment – the . Cochran Affidavit,[18] the Stockton Affidavit,[19] and the O'Neal Affidavit.[20] Cochran and Stockton are employees of Defendant. O'Neal is the purported expert witness for Defendant.

**1.      The Cochran and Stockton Affidavits Are Sham Affidavits and Those Individuals Were Not Offered as Corporate Representatives Pursuant to Plaintiffs' Properly Noticed Rule 30(b)(6) Deposition.**

Corporations are bound by the statements of their Rule 30(B)(6) designated representatives. *See, e.g.*, *Starlight Int'l Inc. v. Herlihy*, 186 F.R.D. 626, 638 (D. Kan. 1999) (holding that a corporation has a duty under Rule 30(b)(6) to provide someone who is knowledgeable in order to provide "binding answers on behalf of the corporation." (quoting *Audiotext Commc'ns Network, Inc. v. U.S. Telecom, Inc.*, No. 94-2395-GTV, 1995 WL 625962, at *13 (D. Kan. Oct. 5, 1995))). Accordingly, a party may not use a self-serving affidavit that contradicts the testimony of its Rule 30(b)(6) witness. *Hyde v. Stanley Tools*, 107 F. Supp. 2d 992, 993 (E.D. La. 2000), *aff'd*, 31 F. App'x 151 (5th Cir. 2001) (citing *S.W.S. Erectors, Inc. v. Infax, Inc.*, 72 F.3d 489, 495 (5th Cir. 1996)); *DAC Surgical Partners P.A. v. United Healthcare Servs., Inc.*, No. 4:11-CV-1355, 2016 WL 7157522, at *3 (S.D. Tex. Dec. 7, 2016) ("Unless it can prove that the information was not known or was inaccessible, a corporation cannot later proffer new or different allegations that could have been made at the time of the 30(b)(6) deposition."); *DAC Surgical Partners P.A. v. United Healthcare Servs., Inc.*, No. 4:11-CV-1355,

---

[18] ECF No. 94-1, pp. 15-20.
[19] ECF No. 94-1, pp. 21-25.
[20] ECF No. 94-3, pp. 66 to 72.

2017 WL 3484507, at *3 (S.D. Tex. Aug. 14, 2017); *Texas Tech. Inst., Inc. v. Silicon Valley, Inc.*, No. CIV.A. H-04-3349, 2006 WL 237027, at *5 (S.D. Tex. Jan. 31, 2006) ("[B]ecause there is no distinction between a Rule 30(b)(6) corporate representative and the corporation, the corporation may not defeat a summary judgment motion with an affidavit that directly contradicts an earlier Rule 30(b)(6) deposition.").

In the *Hyde* case, the plaintiff noticed and took the Rule 30(b)(6) deposition of the defendant's corporate representative, Mr. Russell Powers, on certain topics. *Id.* at 992. After plaintiff filed his motion for summary judgment, the defendant provided the affidavit of Mr. Kenneth Hreha to testify on matters covered by the Rule 30(b)(6) notice and in a manner inconsistent with Mr. Powers' testimony. *Id.* at 993. In striking the affidavit of Mr. Hreha, the court stated "[w]hen a party does not fully prepare for its Rule 30(b)(6) deposition, the other parties are severely prejudiced and the orderly scheduling of a case for discovery and trial is severely disrupted." *Id.* (citing *United States v. Taylor*, 166 F.R.D. 356, 368 (M.D.N.C. 1996)). The court further noted that:

> [I]n a Rule 30(b)(6) deposition, the corporation appears vicariously through its designee. The Rule 30(b)(6) designee does not give his personal opinion. Rather, he presents the corporation's position on the topic. The designee testifies on behalf of the corporation and holds it accountable accordingly. [A] corporation has a duty under Rule 30(b)(6) to provide someone who is knowledgeable in order to provide binding answers on behalf of the corporation.

*Id.* (citations, quotations, and brackets omitted).

Plaintiffs object to the Cochran Affidavit and Stockton Affidavits as sham affidavits. Cochran and Stockton were not offered or presented as corporate representatives of Defendant relative to Plaintiffs' Federal Rule of Civil Procedure 30(b)(6) deposition taken on September 13, 2017 although the testimony set forth in their respective affidavits was covered by the topics in

Plaintiffs' Rule 30(b)(6) notice.[21] Instead, Defendant offered Amanda Reid ("Reid") on all deposition topics requested by Plaintiffs.[22] While Cochran was present at Reid's Rule 30(b)(6) deposition, Defendant did not offer him for testimony and agreed that Reid was the designated corporate representative on all of Plaintiffs' deposition topics.[23] Defendant cannot attempt to undo Reid's testimony by providing sham affidavits from Cochran and Stockton.

> ### a. Cochran's Affidavit Impermissibly Attempts to Controvert the Testimony of Defendant's Designated Corporate Representative.

Cochran contradicts Defendant's corporate representative testimony in several key respects. For instance, Cochran states that OBM payments are standard within the drilling industry.[24] However, Defendant, through Ms. Reid's testimony, expressed Latshaw's lack of knowledge as to the practices of other drilling companies.[25]

Cochran also to state that OBM Pay was compensation to reimburse employees for expenses which "include, but are not limited to, replacing FR clothing, street clothing (i.e., jeans, shirts, underwear, socks, etc….), replacing boots and gloves, laundering expenses, purchasing soaps and detergents, car washes, lotions, ointments, and other incidental expenses."[26] Defendant's 30(b)(6) representative, however, testified that OBM Pay was meant only as reimbursement for "wear and tear on their clothes, personal property, boots, [and] vehicles"[27] (a much narrower set of expenses than the proverbial "laundry list" Defendant now wishes to adopt

---

[21] *Compare* **App. pp. 129-145** (Reid 30(b)(6) Dep. Notice, Topics 1-19 (pp. 5-20)) *with* ECF No. 94-1, pp. 15-25.

[22] **App. p. 6-8** (Reid 30(b)(6) Dep. 9:14-11:12 (designating Reid as corporate representative on all topics)).

[23] **App. pp. 116-117** (Reid 30(b)(6) Dep. 165:11-166:1 (Cochran present throughout)); A**pp. pp. 45-46** (Reid 30(b)(6) Dep. 83:17-84:4 (confirming Reid testified as corporate representative on all designated topics)).

[24] ECF No. 94-1, pp. 15-20 (LDC App. 000017, ¶21).

[25] **App. pp. 63** (Reid 30(b)(6) Dep. 101:10-25) ("Again, I - - I'm sorry, Allen. I'm not familiar with the pay practices of any employer other than Latshaw Drilling during the relevant time period. I'm not.").

[26] ECF No. 94-1, pp. 15-20 (LDC App. 00015-16, ¶ 9).

[27] **App. pp. 113** (Reid 30(b)(6) Dep. 162:24-163:6).

through Mr. Cochran's sham affidavit in order to justify the substantial OBM Pay offered by Latshaw). Ms. Reid also adopted the interrogatory response in which Latshaw contends that OBM Pay was reimbursement for "wear on the employee's person, clothes, and property."[28] Therefore Cochran has both added expenses said to be reimbursed by OBM, i.e., laundering expenses, purchasing soaps and detergents, car washes, lotions, ointments, and other incidental expenses, and omitted an expense that Defendant's 30(b)(6) representative testified OBM Pay was meant to reimburse, *i.e.*, wear on the employee's person.

Cochran goes on states that the range for OBM Pay was $25.00-$35.00 per day.[29] Defendant's 30(b)(6) representative, however, stated that the range of OBM Pay was $20.00-$35.00 per day.[30]

Perhaps most blatantly, Cochran states, "[w]hile Latshaw's contract with the operators provided for the OBM Per Diem, the contracts do not provide for a bonus."[31] Ms. Reid, on the other hand, testified at the 30(b)(6) deposition "I know there are contracts that mention bonus programs. . ..."[32] Defendant cannot, through this blatantly self-serving statement, erase Ms. Reid's 30(b)(6) testimony to secure summary judgment, nor controvert it to create a fact issue and avoid summary judgment. Rather, the Court must find that bonuses were provided for in contracts between Latshaw and its customers.

Finally, the Cochran Affidavit occasionally purports to offer testimony as to Defendant's opinions or intentions, or contradicts the testimony of Defendant's 30(b)(6) representative with respect to the same. "In a Rule 30(b)(6) deposition, there is no distinction between the corporate representative and the corporation; the Rule 30(b)(6) designee presents the corporation's

---

[28] **App. pp. 83-85** (Reid 30(b)(6) Dep. 124:18-126:12).
[29] ECF No. 94-1, pp. 15-20 (LDC App. 00016, ¶ 10).
[30] **App. pp. 53** (Ex. 2 – Reid 30(b)(6) Dep. 91:7-13).
[31] ECF No. 94-1, pp. 15-20 (LDC App. 00018, ¶ 23).
[32] **App. pp. 36-37** (Reid 30(b)(6) Dep. 52:23-53:8).

'position' on the topic." *W.R. Grace & Co. v. N & M, Inc.*, No. 1:06mc602WJG, 2006 WL 3694595, at *2 (S.D. Miss. Dec. 13, 2006) (citing *Hyde*, 107 F. Supp. 2d at 992). Where an affidavit filed in connection with a summary judgment motion contradicts the earlier testimony of the 30(b)(6) representative, the court need not consider it in connection with the summary judgment motion. *Hyde¸* 107 F. Supp. 2d at 993 ("[The defendant] should not be allowed to defeat [the plaintiff's] motion for summary judgment based upon its self-serving abuse of a Rule 30(b)(6) deposition.").

Here, Cochran states, "[w]hile Latshaw's contract with the operators provided for the OBM Per Diem, the contracts do not provide for a bonus."[33] However, Cochran's self-serving statement directly contradicts the binding testimony of Defendant's 30(b)(6) representative.[34] Moreover, where Cochran does not facially contradict the 30(b)(6) testimony, he impermissibly encroaches on it by making assertions about Latshaw's "intentions" and "purpose."[35] However, it is the Rule 30(b)(6) representative who "presents the corporation's 'position' on the topic." *Hyde¸* 107 F. Supp. at 993 (citing *U.S. v. Taylor*, 166 F.R.D. 356, 361 (M.D.N.C. 1996)). Again, these self-serving statements, clearly meant to "take back" Ms. Reid's 30(b)(6) testimony, can neither support Defendant's motion for summary judgment, nor oppose summary judgment by creating a fact issue in Plaintiffs' Cross-Motion for Summary Judgment. The Cochran Affidavit is properly stricken in its entirety for its blatant intrusion into the role of Defendant's 30(b)(6) corporate representative.

---

[33] ECF Doc. 94-1, LDC 00018, ¶ 23).

[34] **App. p. 36-37** (Reid 30(b)(6) Dep. 52:23-53:8) ("I know there are contracts that mention bonus programs. . . .").

[35] ECF No. 94-1, LDC 00016, ¶¶ 11, 14 and 00018, ¶ 31) ("The sole purpose of the OBM Per Diem . . ."; "Latshaw did not intend. . ."; "Latshaw did not include bonuses in Plaintiffs' regular rate of pay because . . .").

> b. *Stockton's Affidavit Should Similarly Be Stricken in Its Entirety as It Impermissibly Seeks to Vary the Testimony of Defendant's 30(b)(6) Corporate Representative.*

Stockton also directly contradicts the testimony of Defendant's 30(b)(6) corporate representative. He states that OBM causes extra wear to employees' property including their "personal washer and dryer."[36] As a result, like Cochran, he adds supposed expenses that Defendant's 30(b)(6) corporate representative, Ms. Reid, did not testify were reimbursed by OBM Pay.[37] Moreover, Stockton's testimony self-servingly assumes Plaintiffs used personal washers and dryers (as opposed to laundromats or other cleaning methods), again exposing his lack of personal knowledge, speculation, and inability to testify as to these topics.

Stockton also asserts that, relative to Defendant's FRC replacement points system, "the majority of individual FRC items (i.e., coveralls, jeans, outerwear) require 50 points or more to purchase."[38] Defendant's 30(b)(6) representative, however, indicated that clothing could be replenished every 2 months with the FRC points system, and that coveralls cost fewer points than pants and shirts to purchase.[39] Stockton's unnecessary testimony clearly intrudes into Ms. Reid's testimony as Defendant's corporate representative.

Furthermore, as Cochran's and Stockton's affidavit testimony is covered by the topics of Plaintiffs' Rule 30(b)(6) deposition notice, Cochran and Stockton should have been presented for deposition as Rule 30(b)(6) corporate representatives prior to the discovery deadline and should not be allowed to now testify on topics covered by Plaintiffs' Rule 30(b)(6) notice.[40] Their

---

[36] ECF No. 94-1, pp. 15-20 (LDC App. 00023, ¶20).

[37] *See* **App. pp. 113-114** (Reid 30(b)(6) Dep. 162:24-163:6).

[38] ECF No. 94-1, LDC 00023, ¶ 17.

[39] **App. p. 122** (Reid 30(b)(6) Dep. 178:8-15).

[40] *Compare* **App. pp. 129-145** (Reid 30(b)(6) Dep. Notice, Topics 1-19 (pp. 5-20)); **App. pp. 6-8** (Reid 30(b)(6) Dep. 9:14-11:12) (designating Reid as corporate representative on all topics) *with* ECF No. 94-1, pp. 15-25.

affidavits are properly stricken from consideration. *See Hyde*, 107 F. Supp. 2d at 993 (striking a defendant's self-serving affidavit and granting summary judgment in favor of plaintiff).

### 2. The Cochran and Stockton Affidavits Are Improper as They Assert Legal Conclusions and Are Not Based on Personal Knowledge.

Additionally, affidavits submitted in support of summary judgment must be "made on personal knowledge" and "show that the affiant or declarant is competent to testify on the matters stated." FED. R. CIV. P. 56(c)(4). In connection with these requirements, "affidavits setting forth ultimate or conclusory facts and conclusions of law are insufficient to either support or defeat a motion for summary judgment." *Serna v. Law Office of Joseph Onwuteaka, P.C.*, 614 Fed. App'x 146, 153 (5th Cir. 2015) (internal quotations omitted) (citing *Galindo v. Precision Am. Corp.*¸ 754 F.2d 1212, 1216 (5th Cir. 1985)).

> *a. Objections to Baseless and Conclusory Statements in the Cochran Affidavit.*

The Cochran Affidavit contains numerous conclusory statements, sometimes bordering on legal conclusions. He states that OBM pay "approximate[s] business expenses" of the Plaintiffs, that this is its sole purpose, that it is standard practice in the oil industry, and that Latshaw did not intend it as hazard pay, but offers no justification in support of these conclusory statements.[41] Similarly, with respect to Bonus Pay, Cochran asserts that "the fact and the amount of the bonuses are discretionary" as a free standing conclusion, but offers no justification.[42] The Court should strike these and all conclusory statements and legal conclusions contained within the Cochran affidavit.

Furthermore, even where he makes assertions that do not appear conclusory on their face, it is often apparent that Mr. Cochran does not have personal knowledge of the matters discussed

---

[41] ECF No. 94-1, LDC App. 00015, ¶ 9, 00016, ¶¶ 11, 14, and 00017, ¶ 22.
[42] *Id*. at 00018, ¶ 20.

beyond a bare recitation his purported understanding. Mr. Cochran states that he is "responsible for all facets of accounting, operations, and management of the business aspect of Latshaw."[43] Nonetheless, thereafter he opines on a broad range of topics including, for example, standard oil industry practices[44] and whether or not working with OBM is unpleasant or dangerous,[45] but never reveals how he came to have personal knowledge of these matters. In fact, aside from a single example from one of Meadows's paystubs, Cochran never reveals what materials he consulted or how he acquired personal knowledge regarding any of the assertions he makes about Latshaw's business practices.[46] Because Cochran's affidavit does not demonstrate on its face that he is qualified to testify as to the matters therein, or that he has personal knowledge of them, Plaintiffs request that the Court strike the affidavit.

      *b. Objections to Baseless and Conclusory Statements in the Stockton Affidavit.*

Stockton likewise makes a number of conclusory and unsupported allegations. First, he asserts that laundry detergents are ineffective at cleaning clothing contaminated by OBM, but provides no basis for his conclusion.[47] He certainly does not provide any scientific credentials, and does not purport to be an industrial hygienist. He does not even submit that he has ever attempted to launder clothing which has been in contact with oil-based mud.

He also impermissibly offers purported expert commentary on the tendency of OBM's chemical composition to cause deterioration in clothing and other equipment, but does not state the basis for this claim nor the mechanism by which it occurs.[48] Again, Mr. Stockton is not a chemist or scientist of any kind. He has not been designated by Defendant as any kind of expert,

---

[43] *Id.* at LDC App. 00014, ¶ 2.
[44] *Id.* at LDC App.00016, ¶ 11.
[45] *Id.* at LDC App.00016, ¶ 13.
[46] *Id.* at LCD App. 00016-00019.
[47] *Id.* at LDC App. 00023, ¶ 19.
[48] *Id.* at LDC App.00023, ¶ 20.

let alone an expert on the chemical composition of oil-based mud and its purported chemical reactions with textiles. He is, by his own declaration, an operations manager responsible for "job assignments, personnel and equipment management."[49] Those job duties do not adequately demonstrate that he has had the kind of training or understanding of valid scientific principles that he would be held to pursuant to the *Daubert* standard to opine as to the claims he purports to make. His claims regarding the effect OBM has on the useful life of clothing and equipment are similarly unsupported by any factual or evidentiary basis.[50]

### 3.   Cochran and Stockton Were Not Designated In Defendant's Rule 26(a)(1)(A) Disclosures.

In addition to the foregoing issues with Cochran's and Stockton's testimony, Defendant never designated Cochran or Stockton as "individuals likely to have discoverable information" in its Federal Rule of Civil Procedure 26(a)(1)(A) disclosures, despite now attempting to use those individuals as Defendant's chief witnesses.

An affiant first must show that the advanced affidavit would be "admissible in evidence." FED. R. CIV. P. 56(c)(4). As it pertains to the Cochran Affidavit, Plaintiffs contend that the testimony of Mr. Cochran would be inadmissible at trial because Mr. Cochran was not disclosed as a witness with knowledge of material facts in Defendant's Initial Disclosure.[51] Where a witness is not disclosed in initial disclosures, a trial court may prohibit the non-disclosing party from "using that [. . .] witness to supply evidence on a motion, at a hearing, or at trial." *Bennett v. GEO Group, Inc.*, No. 12-60017, 2013 WL 5916765, at *4 (5th Cir. May 22, 2013) (citing Fed. R. Civ. P. 37(c)(1)). The district court is given broad discretion in striking such testimony as a discovery sanction, as in all other discovery matters, and should consider why the disclosure

---

[49] *Id*. at LCD App. 00020, ¶¶ 1 & 2.
[50] *Id*. at LCD App. 00024, ¶ 21.
[51] **App. p. 1-2** (Defendant's Initial Disclosures).

was not made, the prejudice to the opposing party, and whether the prejudice can be cured by means of a continuance. *Id.*

Admittedly, Defendant did disclose "Latshaw Accounting and Financial Employees" who "may have information on issues related to the oil industry and other pertinent topics."[52] Mr. Cochran may qualify as one of these employees as a "Chief Financial Officer."[53] However, Plaintiffs do not concede that a designation of a broad category of person is sufficient to put Plaintiffs on notice that Mr. Cochran could be deposed on such topics. *See, e.g.*, *In re Sambrano*, 440 b.R. 702, (Bankr. W.D. Tex. 2010) (disapproving of broad categories in Rule 26(a) initial disclosures, and noting that "[t]he plain language of the rule requires the disclosing party **to list the names of these individuals.**" (emphasis added)). Moreover, the Apex Deposition Doctrine also generally prohibits Plaintiffs from taking the depositions of "c-level" executives unless they submit themselves to deposition or are material to the case. *See generally*, *Salter v. Upjohn Co.*, 593 F.2d 649 (5th Cir. 1979). Often "c-level" executives become exposed to deposition by submitting affidavits of the type Defendant now advances after the close of discovery, when Plaintiffs are unable to depose Mr. Cochran.

Furthermore, Mr. Cochran's affidavit addresses matters far beyond "issues related to the oil industry" and instead addresses intensive facts associated with Latshaw's business operations and substantive issues in the case (which were the topics of the Rule 30(b)(6) deposition for which he did not testify). Plaintiffs had no notice from the disclosures that Mr. Cochran in particular would be expected to testify. Nor did they have notice that he would be a person expected to testify about such matters as, *e.g.,* which Plaintiffs did or did not receive Bonus and

---

[52] *Id.*
[53] ECF No. 94-1, LDC App. 00014, ¶ 1.

OBM Pay,[54] purported settlement agreements between collective action members and Latshaw,[55] the approximate business expenses of Latshaw's field employees,[56] or the nature of OBM and accidents associated with it.[57]

Nonetheless, had Plaintiffs been informed that Mr. Cochran had such expansive knowledge, they would have taken Mr. Cochran's deposition to probe the veracity of the types of statements he now purports to advance through affidavit. The prejudice caused by Mr. Cochran's surprise cannot be cured through continuance as the Parties are midway through summary judgment briefing. Accordingly, the Court would act in within its discretion to strike the Cochran Affidavit for Defendant's failure to disclose Mr. Cochran as someone likely to have discoverable information. *See, e.g.*, *Dogan-Carr v. Saks Fifth Avenue Tex.,* LP, No. , 2007 WL 646375, at *19 (S.D. Tex. Feb. 26, 2007) ("Because Carr failed to disclose Margaret Johnson as a person with knowledge of relevant facts and now attempts to rely on her affidavit testimony, without having afforded Saks the opportunity to depose Johnson before the end of the discovery period, this failure is not harmless."); *Poitra v. Sch. Dist. No. 1*, 311 F.R.D. 659, 666 (D. Colo. 2015) (striking affiant's declaration not identified in initial or supplemental disclosures even where affiant was discussed in depositions because "knowledge of the existence of a person is distinctly different from knowledge that the person will be relied upon as a fact witness"). *Cf., e.g.*, *Denman Tire Corp. v. Compania Hulera Tornel, S.A. De C.V.*, No. DR-12-CV-027-AM/VRG, 2014 WL 12564118, at *6 (W.D. Tex. Mar. 31, 2014) (permitting an affidavit to be submitted only where omission of the affiant from the initial disclosures was inadvertent, where a party immediately supplemented its initial disclosures upon realizing its mistake, and where the

---

[54] *Id*. at LDC App. 00015, ¶ 7.
[55] *Id*. at LDC App. 00015, ¶ 8.
[56] *Id*. at .LDC App. 00015, ¶ 9.
[57] *Id*. at LDC App. 00016, ¶ 13.

evidence presented through affidavit was material to a motion to remand, as opposed to a summary judgment motion).

With regard to Mr. Stockton, as an "Operations Manager," he does not appear even to be covered by any of the impermissibly broad categories set forth in Defendant's Rule 26 disclosures regarding witnesses with knowledge of relevant facts.[58] He is also not listed individually by name in that disclosure.[59] However, he now asserts to Plaintiffs' great surprise that he has purportedly intimate knowledge that OBM cannot be effectively cleaned by normal detergents,[60] that OBM's chemical composition causes the deterioration of property and clothing,[61] and that exposure to OBM reduces the effective useful life of property and clothing.[62] Stockton does not state how he acquired knowledge to support these assertions, nor does he reveal what documents or materials, if any, he consulted. These topics go directly to Defendant's claims with respect to OBM and Plaintiffs were unable to test or refute them due to Defendant's failure to disclose them.

Accordingly, Plaintiffs request that the Court strike the affidavits of Cochran and Stockton in their entirety as inadmissible testimony from undisclosed witnesses.

### 4.   Objections to the O'Neal Affidavit.

Defendant offers the affidavit of O'Neal for several assertions regarding potential actions that may be taken by the Department of Labor Wage and Hour Division ("DOL-WHD"), as well as purported findings and conclusions regarding the facts of this case.[63] Plaintiffs object to this

---

[58] **App. pp. 1-2** (Defendant's Initial Disclosures).
[59] *Id.*
[60] ECF No. 94-1, LDC App. 00023, ¶ 19.
[61] *Id.* at 00023, ¶ 20.
[62] *Id.* at 00024, ¶ 21.
[63] ECF No. 94-3, LDC App.00224-00229.

affidavit and move to strike it from consideration in connection with Defendant's Motion for Summary Judgment.

First, Plaintiffs served Defendant with written discovery on July 19, 2016 requesting extensive data relative to expert witnesses, including the production of all documents provided to any expert Defendant expected to call as a witness, and every expert whose opinion, impressions, or work were reviewed by a testifying expert.[64] However, Defendant never provided responsive documents to same.[65] Additionally, with regard to untimeliness, Defendant did not produce the expert report of O'Neal, which is different than the O'Neal Affidavit, until after it filed its Motion for Summary Judgment.[66] That report, should Defendant attempt to use it in the future in this lawsuit, will be subject to objection and a *Daubert* Motion. However, it is not currently before the Court.

Second, the O'Neal Affidavit offers impermissible legal conclusions to be drawn from Defendant's version of the facts (although Plaintiffs and the Court do not know what those alleged facts are due to Defendant failing to answer written expert discovery). Courts routinely strike such expert testimony in FLSA cases like this. An affidavit may not be conclusory, and "[expert] affidavits setting forth ultimate or conclusory facts and conclusions of law are insufficient to either support or defeat a motion for summary judgment." *Stagliano v. Cincinnati Ins. Co.*, 633 Fed. App'x 217, 220 (5th Cir. 2015) (quoting *Galindo*, 754 F.2d at 1216). "It is the job of the Court – not the expert – to instruct the jury on the applicable law." *Lackey v. SDT Waste and Debris Services, LLC*, No. 11-1087, 2014 WL 3866465, at *7 (E.D. La. Aug. 6, 2013) (collecting 5th Circuit opinions holding that experts may not render legal opinions). Where an

---

[64] **App. pp. 480-481** (Ex. 46 - Plaintiffs' Requests for Production Nos. 25-26).
[65] **App. pp. 482** (Ex. 47 - Decl. of Michael V. Ellis, p. 1, ¶4).
[66] *Id*. at p. 2, ¶ 5.

expert merely "pontificates at length regarding the requirements of the FLSA," he offers nothing more than inadmissible legal conclusions. *Id*. at *8.

The O'Neal Affidavit straddles the line between an impermissibly conclusory affidavit and an expert affidavit which merely offers legal conclusions. O'Neal discusses at length what "the DOL would consider" regarding the factual allegations in this case.[67] He also opines upon whether he would "authorize the assertion of a violation of the FLSA" in his prior role as a Director of Enforcement for the DOL-WHD.[68] If the source upon which an expert's opinion relies is itself of little weight, the expert's opinion should not be admitted. *Orthopedic & Sports Injury Clinic v. Wang Labs., Inc.*, 922 F.2d 220, 225 (5th Cir. 1991). Moreover, where an expert serves as a source of evidence, rather than explaining evidence, the expert's opinion is entitled to less deference. *Salas v. Carpenter*, 980 F.2d 299, 305 (5th Cir. 1992).

An official DOL opinion letter is entitled to a lower degree of deference that actual agency regulations, sometimes called "*Skidmore* deference." *See, e.g.*, *Lipnicki v. Meritage Homes Corp.*, No. 3:10-CV-605, 2014 WL 923524, at *4 (S.D. Tex. Feb. 13, 2014) (collecting cases, including *Skidmore v. Swift & Co.¸* 323 U.S. 134, 140 (1944)). Here, O'Neal's assertions are pure speculation about what an investigating authority *might* do if it were confronted with these facts, and as such are entitled to no level of deference.[69] O'Neal does not cite to a DOL investigation which actually occurred, but guesses about what the DOL might consider if it did investigate. Moreover, even if the DOL had investigated, the outcome of such an investigation would not carry the persuasive effect or be entitled to deference in the same way that DOL opinion letters may. *Compare Chavez v. T&B Mgmt., LLC*, No. 1:16-cv-01019, 2017 WL 2275013, at *10 (M.D.N.C. May 24, 2017) (finding DOL opinion letter persuasive), *with*

---

[67] *See, e.g.,* ECF No. 94-3 LDC Appx. 00227, ¶ 117-19 and 00229, ¶ 24.
[68] ECF No. 94-3, LDC 00228, ¶22 and 00229, ¶25.
[69] *Id*.

*Gonzalez v. Tanimura & Antle, Inc.*, No. 2:06-cv-02485, 2009 WL 1457030, at *2 (D. Ariz. May 21, 2009) (declining to assign deferential value to a DOL investigation).

At times, O'Neal's statements also imply additional requirements or factors that are not contained in the regulations or statutes themselves.[70]

Other assertions made by O'Neal go beyond the conclusory or speculative statements outlined above and instead blatantly offers legal conclusions regarding interpretation of the FLSA and DOL Regulations.[71] These legal determinations are ones to be made only by the Court, not an expert hired by Defendant. *See Lacky*, 2014 WL 2866465, at *7.

Finally, Federal Rule of Evidence 702 requires that the expert's testimony be based on sufficient facts or data. The party offering expert testimony has the burden of establishing that the opinions are reliable and admissible. *Moore v. Ashland Chem., Inc.*¸ 151 F.2d 269, 176 (5th Cir. 1998). Here, O'Neal makes numerous statements about the facts of the case from which he draws his conclusions without disclosing the means by which he obtained that information. For instance, he asserts that OBM Pay is within the range of OBM per diems paid in the industry that reasonably approximates employee's expenses.[72] O'Neal does not describe any particular source that he reviewed to arrive at this conclusion. In contrast, Latshaw's President, Trent Latshaw, testified that Defendant had no means to track or determine the amount of wear or expense resulting from use of OBM.[73] And Defendant's Rule 30(b)(6) corporate representative was, when

---

[70] *See, e.g., Id.* at 00229, ¶ 24 (Asserting that the DOL-WHD would look to the regularity and significance of the bonus is relationship to the employee's gross wages) and 00227, ¶ 19 (Asserting that the DOL-WHD would give great weight to, among other factors, that payment of OBM is a standard industry practice).

[71] *See, e.g., Id.* at 00229, ¶ 25 ("[T]he amount and manner in which Latshaw employees' received Operator Bonuses was within the letter and spirit of the FLSA and DOL regulations").

[72] *Id* at 00226, ¶ 11.

[73] **App. pp. 184-185** (Ex. 3 – Latshaw Dep. 112:11-113:9. ("And, you know, to say it's, you know, it lasted two years when it should have lasted three years because we're in oil-based mud, no. We don't have any way to track that kind of stuff.")).

asked about industry standards, unable to name a single other company who treated OBM Pay as a per diem and excluded it from the regular rate of pay.[74] Finally, just one page later, O'Neal asserts that other drilling companies paid *more* in OBM Pay than Latshaw did, a direct contradiction of his former statement that Latshaw's OBM pay was consistent with the supposed industry standard.[75]

O'Neal also makes factual assertions that are simply incorrect in his affidavit. For example, he states that no Plaintiff reported an injury resulting from the use of OBM.[76] But numerous Plaintiffs reported developing rashes, hives, or burning skin as a result of OBM.[77] Others reported explicitly that they witnessed or experienced an injury as a result of OBM.[78] In short, O'Neal's statement is false. O'Neal's failures to disclose the source of his data regarding the facts of the case and to discuss his methodology in reaching the opinions he asserts demonstrate the facial unreliability of the O'Neal Affidavit.

Because O'Neal merely offers conclusory statements, speculation, and opinions of law in his affidavit, and because Defendant has not demonstrated that his data or methodology are reliable, his testimony should not be permitted pursuant to controlling case law in addition to Federal Rules of Evidence 702 and 703. Plaintiffs ask that the Court strike O'Neal's affidavit, in whole or in part.

---

[74] **App. pp**. **63** (Ex. 2 – Reid 30(b)(6) Dep. 101:10-25).

[75] ECF No. 94-3 LDC Appx. 00227, ¶ 16.

[76] *Id*. at 00228, ¶ 21; *See also Id*. at 00225, ¶ 9 (Stating that the use of OBM cause *some* injuries based on a review of Latshaw's records).

[77] **App. p. 193** (Ex. 4 – Abeyta Dep. 11:1-8); **App. p. 229** (Ex. 7 – Begley Dep. 24:13-19); **App. p. 255** (Ex. 9 – Blasingame Dep. 14:11-14); **App. p. 268** (Ex. 10 – Brown Dep. 15:14-25); **App. p. 275** (Ex. 11 – Burge Dep. 37:2-6); **App. p. 279** (Ex. 12 – Cerna Dep. 13:6-12); **App. p. 287** (Ex. 13 – Ellis Dep. 18:19-19:5); **App. p. 301** (Ex. 14 - Foster Dep. 19:5-7); **App. p. 320-321** (Ex. 15 – Goodwin Dep. 44:5-44:11); **App. p. 358** (Ex. 18 – Meadows Dep. 24:13-23); **App. p. 371** (Ex. 19 - Medlin Dep. 16:3-11); **App. p. 411** (Ex. 22 - Osburn Dep. 18:14-17); **App. p. 422** (Ex. 23 - Rodriguez Dep. 31:19-24); **App. p. 437** (Ex. 25 - Wilkinson Dep. 19:4-12).

[78] **App. p. 234** (Ex. 7 – Begley Dep. 29:20-24); **App. p. 268-269**(Ex. 10 – Brown Dep. 16:3-17:5); **App. p. 311** (Ex. 15 - Goodwin Dep. 21:17-8); **App. p. 327** (Ex. 16 - Hilyer Dep. 9:2-11).

**C.**    **Objections to Defendant's Statement of "Undisputed" Facts."**

Plaintiffs incorporate by reference their statement of the Factual Background of this case contained in their Motion for Summary Judgment.[79] However, Defendant purports to make a statement of "undisputed" material facts in its Memorandum in Support of Defendant's Motion for Summary Judgment.[80] While some of the factual statements made by Defendant can reasonably be characterized as "undisputed," others are hotly contested or wholly inaccurate.

Defendant states that certain opt-in Plaintiffs' paystubs reflect did not receive any OBM pay or Operator Bonuses.[81] With the exception of those pertaining to Reese Young, Defendant has not produced these paystubs, and the Court's deadline for completion of all discovery passed on September 22, 2017.[82] The only evidence Defendant has submitted in support of this proposition is the conclusory affidavit of Mark Cochran, which Plaintiffs object to above, on both the basis of its conclusory nature and other grounds. Moreover, as Defendant has admitted, the parties have agreed to representative discovery in the instant matter.[83] With respect to Mr. Young, while his paystubs do not reflect that he received OBM Pay, in spite of Defendant's assertion to the contrary, they do reflect that he received Bonus Pay during the relevant time period.[84] Accordingly, Plaintiffs reject this assertion as inaccurate and object to Defendant's attempts to circumvent the representative discovery agreement in place between the parties.

Defendant asserts that two opt-in Plaintiffs have already settled their claims with Latshaw.[85] Defendant has not asserted any affirmative defense relating to release or settlement.[86]

---

[79] ECF No. 96 at pp. 11-15.
[80] ECF No. 92 at pp. 2-24.
[81] *Id*. at p. 3, ¶ 4.
[82] ECF No. 87.
[83] ECF No. 92 at p. 2, ¶ 2 ("[T]he testimony of the deposed Plaintiffs is representative of the class as a whole.").
[84] **App. p. 455** (Ex. 27 - Paystub for Reese Young for the pay period ending June 10, 2014).
[85] ECF No. 92 at p. 3, ¶ 5.

Defendant has also not produced these releases, but instead has merely posited that they exist.[87] The only evidence Defendant has offered to support that the claims have been released is the aforementioned conclusory affidavit of Mark Cochran. Because Defendant has not produced the purported releases, the date when they are signed is unknown, including whether they represent a communication regarding this case in violation of the Court's order enjoining Latshaw from communicating with class members. (ECF Doc. 83, p. 8). Moreover, release is an affirmative defense which must be pleaded, and on which Defendant would bear the burden of proof. *Tyler v. Cedar Hill Indep. Sch. Dist.,* 426 Fed. App'x 306, 308 (5th Cir. 2011). Because Defendant has not asserted this affirmative defense, and Defendant produced no evidence of its allegations in discovery, its position should be rejected.

Defendant asserts that Plaintiffs were required to purchase their own work gloves and boots.[88] While Plaintiffs admit that rig workers were not provided a pair of boots upon hire, several Plaintiffs have testified that they were able to use Defendant's points system to acquire replacement boots at no personal expense.[89]

Defendant asserts that OBM pay is a reasonable approximation of expenses that Latshaw expects its employees to incur.[90] The only evidence they cite for this proposition is again the conclusory affidavit of Mark Cochran.[91] The two examples of testimony from Plaintiffs provided by Defendant to support the proposition that OBM is a reasonable approximation of expenses actually demonstrate that OBM pay both (1) uniformly *exceeded* expenses and (2) varied by a

---

[86] ECF No. 1 at p. 10-11.
[87] ECF Doc. 93 at p. 3, FN2.
[88] ECF Doc. 92 at p. 8, ¶ 25.
[89] **App. p. 342-343** (Ex. 17 - Loomis Dep. at 20:24-21:4); **App. pp. 403-404** (Ex. 21 - Munger Dep. 47:23-48:1); **App. p. 438** (Ex. 25 - Wilkinson Dep. 20:16-18).
[90] ECF Doc. 92 at p. 12, ¶¶ 34, 36 and p. 15, ¶¶ 46, 49-50.
[91] *Id.*

significant degree in the amount it did so.[92] As discussed, *supra*, Plaintiffs repeatedly testified that OBM pay was meant to compensate them for the hazardous and unpleasant nature of working with OBM. However, Mr. Cochran's statement is also directly contradicted by the testimony of Latshaw President Trent Latshaw, who stated that Defendant did not and could not track the amount or value of wear on Plaintiffs clothing caused by OBM.[93] Defendant has provided no evidence of the rate at which OBM causes wear on Plaintiffs property, or the value of any such anticipated or actual expenses relating to the same.

Defendant goes on to assert that payment of OBM, and by implication its treatment as excludable from the regular rate of pay, is "standard practice" in oil field drilling.[94] Defendant has provided no evidence to support this statement, beyond the conclusory statements in affidavits. Defendant's Rule 30(b)(6) corporate representative, Amanda Reid, made a similar assertion in her deposition.[95] However, when asked to name even a single other drilling company which excluded OBM or Bonus pay from the regular rate of pay, she was unable to do so, stating, "I'm not familiar with the pay practices of any employer other than Latshaw Drilling during the relevant time period."[96]

Defendant then asserts that the Plaintiffs themselves acknowledged that OBM Pay was merely an offset to replace clothing.[97] They cite to testimony from Plaintiff Johnny Meadows to support this contention, but *in the excerpt they cite*, when asked for his view on why Plaintiffs

---

[92] ECF Doc 92 at p. 15-16, ¶ 50.
[93] **App. pp. 184-185** (Ex. 3 – Latshaw Dep. 112:11-113:9. ("And, you know, to say it's, you know, it lasted two years when it should have lasted three years because we're in oil-based mud, no. We don't have any way to track that kind of stuff.")).
[94] ECF Doc. 92 at p. 12, ¶ 36 and p. 15, ¶¶ 46, 49-50.
[95] **App. p. 19, 58** (Ex. 2 – Reid 30(b)(6) Dep. 31:12-25; 96:5-17).
[96] **App. pp. 63** (Ex. 2 – Reid 30(b)(6) Dep. 101:10-25).
[97] ECF Doc. 92 at p. 12, ¶ 37.

received additional pay for working with OBM, Meadows stated, "One, it's hazardous […]."[98] Consistent with Mr. Meadows's characterization, Plaintiffs have consistently described OBM pay as "hazard pay."[99] Moreover, Defendant itself has described OBM pay as "remuneration for extraordinary wear on an employee's person" in addition to "clothes and property".[100] Accordingly, the notion that any party to this case, including Defendant, contends that OBM pay was compensation only for wear to property is not supported by the evidence.

Defendant contends that OBM "created no more accidents or injuries than working with regular drilling mud."[101] Defendant provides no evidence, however, of the number of accidents or injuries caused by regular drilling mud.[102] It then proceeds to acknowledge that working with OBM *has* resulted in injuries or accidents.[103] Plaintiffs themselves have testified that OBM can cause rashes, hives, or burns on their skin.[104] They note that it poses a slipping hazard.[105]

---

[98] *Id.*

[99] **App. p. 192** (Ex. 4 – Abeyta Dep. 10:20-25); **App. p. 210** (Ex. 5 – Barela Dep. 65:5-14); **App. p. 217** (Ex. 6 – Batten Dep. 40:19-25); **App. p. 229** (Ex. 7 – Begley Dep. 24:10-12); **App. p. 217** (Ex. 8 – Bissell Dep. 24:8-25:11); **App. p. 279** (Ex. 12 – Cerna Dep. 13:3-5); **App. p. 286** (Ex. 13 – Ellis Dep. 17:3-10); **App. p. 319-320** (Ex. 15 - Goodwin Dep. 43:24-44:4); **App. pp. 357-358** (Ex. 18 - Meadows Dep. 23:18-24:5); **App. p. 369** (Ex. 19 - Medlin Dep. 14:18-19); **App. p. 377** (Ex. 20 - Menasco Dep. 31:21-25); **App. p. 402** (Ex. 21 - Munger Dep. 29:15-22); **App. p. 411** (Ex. 22 - Osburn Dep. 18:12-13); **App. p. 422** (Ex. 23 - Rodriguez Dep. 31:10-12); **App. p. 436** (Ex. 25 - Wilkinson Dep. 18:19-24); **App. p. 451** (Ex. 26 - Woods Dep. 46:9-14).

[100] **App p. 456** (Ex. 28 – Defendant's Resp. to Interrogatories at Rog. No. 3).

[101] ECF Doc. 92 at p. 13, ¶ 39.

[102] *Id.*

[103] *Id.*

[104] **App. p. 193** (Ex. 4 – Abeyta Dep. 11:1-8); **App. p. 229** (Ex. 7 – Begley Dep. 24:13-19); **App. p. 255** (Ex. 9 – Blasingame Dep. 14:11-14); **App. p. 268** (Ex. 10 – Brown Dep. 15:14-25); **App. p. 275** (Ex. 11 – Burge Dep. 37:2-6); **App. p. 279** (Ex. 12 – Cerna Dep. 13:6-12); **App. p. 287-288** (Ex. 13 – Ellis Dep. 18:19-19:5); **App. p. 301** (Ex. 14 - Foster Dep. 19:5-7); **App. p. 320-321** (Ex. 15 – Goodwin Dep. 44:5-44:11); **App. p. 358** (Ex. 18 – Meadows Dep. 24:13-23); **App. p. 371** (Ex. 19 - Medlin Dep. 16:3-11); **App. p. 411** (Ex. 22 - Osburn Dep. 18:14-17); **App. p. 422** (Ex. 23 - Rodriguez Dep. 31:19-24); **App. p. 437** (Ex. 25 - Wilkinson Dep. 19:4-12).

[105] **App. p. 211** – Barela Dep. 66:2-3); **App. p. 234** (Ex. 7 – Begley Dep. 29:10-16); **App. p. 314** (Ex. 15 - Goodwin Dep. 24:10-18); **App. p. 331** (Ex. 16 – Hilyer Dep. 24:9-18); **App. p. 369** (Ex. 19 - Medlin Dep. 14:20-22); **App. p. 413** (Ex. 22 – Osburn Dep. 20:17-21).

Plaintiffs have also witnessed or sustained injuries that resulted directly from the use of OBM.[106] Defendant's owner and president also acknowledged that it is "possible" that individuals working with OBM could experience physical side effects.[107]

Defendant states that Latshaw's contracts with its customers do not provide for bonuses, and that it was notified of an operators decision to offer a bonus only after the work was completed.[108] This statement is directly contradicted by Defendant's Rule 30(b)(6) corporate representative, who testified that some contracts did in fact provide for the terms of some Safety and Performance Bonuses.[109] Various correspondence produced by Latshaw also indicates that the criteria by which a bonus was to be paid and the fact that is was going to be paid if those criteria were met were communicated to it in advance.[110]

Defendant then asserts that Plaintiffs were never "promised" a bonus, and that Plaintiffs did not have advance knowledge of the criteria for a bonus.[111] Defendant itself indicated that it would offer "safety bonuses" in its employee handbook.[112] Discovery Plaintiffs likewise testified that they understood the criteria and requirements for a bonus in advance of completion of the work, generally when they first arrived at a rig site.[113] These requirements would often be posted

---

[106] **App. p. 234** (Ex. 7 – Begley Dep. 29:20-24); **App. p. 269-270** (Ex. 10 – Brown Dep. 16:3-17:5); **App. p. 311** (Ex. 15 - Goodwin Dep. 21:17-8); **App. p. 327** (Ex. 16 - Hilyer Dep. 9:2-11).

[107] **App. pp. 173-174** (Ex. 3 - Latshaw Dep. 101:24-102:25).

[108] ECF Doc. 93 at p. 19, ¶ 59, 64.

[109] **App. p. 36-37** (Ex. 2 - Reid 30(b)(6) Dep.  52:23-53:8).

[110] **App. p. 457** (Ex. 29 - Bonus Program Overview from Operator Approach); **App. p. 458** (Ex. 30 - Email from Operator Centennial ("Centennial will being to implement a Peformance Bonus effective for wells spud after October 1, 2014")); **App. p. 459** (Ex. 31 - Drilling Rig Performance Incentive Program from Operator Concho); **App. pp. 460-461** (Ex. 32 - Email from Operator Element ("Element feels this well is the new base line for the project and would like to re-instate the performance bonus of $200.00/day, not to exceed $600.00, for besting this record")).

[110] ECF Doc. 92 at pp. 21-22, ¶¶ 70-71.

[111] ECF Doc. 92 at pp. 21-22, ¶¶ 70-71.

[112] **App. p. 462** (Ex. 33 - Excerpt from Latshaw Employee Handbook).

[113] **App. p. 201** (Ex. 4 – Abeyta Dep. 24:4-20); **App. p. 212** (Ex. 5 – Barela Dep.at 67:15-16); **App. p. 261, 262,  264** (Ex. 9 - Blasingame Dep. 32:21-23, 33:4-11, 62:12-23); **App. p. 281** (Ex. 12 - Cerna Dep. 89:23-25) (plaintiffs were entitled to bonuses "because we had an agreement"); **App. p. 362-363, 364**

in the office of the tool pusher, a Latshaw employee who supervised employees like Plaintiffs.[114]

Accordingly, Defendant's assertion that it did not represent to Plaintiffs in advance that they would receive a bonus for meeting certain criteria is factually incorrect.

Defendant asserts that its customers would face various logistical hurdles if it attempted to pay a bonus to Plaintiffs directly, and that it "may" elect not to pay Latshaw's drilling crew a bonus at all were it not for Latshaw agreeing to "pass the Operator Bonus through its payroll system."[115] These assertions are based on statements made by Trent Latshaw in his deposition, and Plaintiffs object to them as mere speculation unfounded by any evidence beyond Mr. Latshaw's hyperbolic assertions. In fact, Mr. Latshaw himself acknowledged that he did not recall who explained this to him, what operator (if any) they worked for, and that no operator Defendant has ever worked with has had the dilemma he describes relative to issuing bonuses.[116]

Defendant next claims that it "never paid a performance bonus to its drilling crew."[117] This claim is patently false, as every invoice Latshaw has produced in discovery where it is billing its customers for a bonus to be paid to its employees describes such a bonus in terms of safety and/or performance.[118] Latshaw's customers also repeatedly refer to the bonuses as

---

(Ex. 18 - Meadows Dep. 72:17-73:4, 74:16-25); **App. pp. 405, 406-407** (Ex. 21 - Munger Dep. 49:5-12, 50:20-51:4); **App. p. 441-442, 446** (Ex. 25 - Wilkinson Dep. 32:25-33:9, 37:19-38:7).

[114] **App. p. 204** (Ex. 4 – Abeyta Dep. 27:4-12); **App. p. 213** (Ex. 5 – Barela Dep.at 68:3-10); **App. p. 261-262** (Ex. 9 - Blasingame Dep. 32:24-33:3).

[115] ECF Doc. 92 at p. 20, ¶ 69 and p. 22, ¶¶ 72, 74.

[116] **App. p. 167-169** (Ex. 3 - Latshaw Dep. 87:11-89:13).

[117] ECf Doc. 92 at p. 22, ¶ 74.

[118] **App. p. 463** (Ex. 34 - Invoice to Operator Alta Mesa for "Safety and Perfomance Bonus"); **App. p. 464** (Ex. 35 - Invoice to Operator Approach for "Crew Bonus – Performance"); **App. pp. 465-467** (Ex. 36 - Invoice to Operator Bopco for "Crew Bonuses" and attached description of bonus criteria); **App. p. 468** (Ex. 37 - Description of Bonus from Operator Centennial for "Performance & Safety"); **App. p. 469** (Ex. 38 - Invoice to Operator COG for "Crew Bonus – Performance & Safety"); **App. p. 470-471** (Ex. 39 - Invoice to Operator Element for "Crew Bonus – Safety" and attached "Performance & Safety" Bonus Breakdown); **App. p. 472** (Ex. 40 - Invoice to Operator Enervest for "Crew Bonus – Safety"); **App. p. 473** (Ex. 41 - Invoice to Operator Diamondback for "Crew Bonus – Performance"); **App. p. 474** (Ex. 42 - Invoice to Operator Legacy for "Safety & Performance Bonus"); **App. p. 475** (Ex. 43 - Invoice to

"Performance Bonuses".[119] Latshaw's president is aware of no situation in which a customer of Latshaw paid one of these bonuses directly to Latshaw's employees – Latshaw itself is literally the one who "pays" this bonus.[120] Latshaw's assertion that it did not "pay" this bonus is also belied by the fact that the Bonus Pay was paid in Plaintiffs earnings statements issued to them by Latshaw and that Latshaw, not its customers, withheld payroll taxes relative to Bonus Pay.[121] For Latshaw to contend that it did not understand these bonuses to be "performance bonuses" which it "paid" goes against virtually the entire weight of the evidence.

Defendant states that the fact and amount of bonus payments was "discretionary."[122] First, by Latshaw's own admission, *Latshaw* did not retain this discretion.[123] Insofar as this statement is using the term "discretionary" in the legal, rather than colloquial, meaning, as discussed, *infra*, there is ample evidence that Bonus pay was made subject to a contract, promise, or agreement and this such contract, promise, or agreement was made for the purpose of incentivizing Plaintiffs to work more efficiently, faster, and more safely. Therefore the promised bonuses were not "discretionary" as the term is used in the FLSA. Finally, Plaintiffs object to this statement of fact insofar as it is based on the conclusory Cochran Affidavit.

---

Operator Sandridge for "Crew Bonus – Performance"); **App. p. 476** (Ex. 44 - Invoice to Operator Tall City for "Crew Bonus – Performance").

[119] **App. p. 457** (Ex. 29 - Bonus Program Overview from Operator Approach); **App. p. 458** (Ex. 30 - Email from Operator Centennial ("Centennial will being to implement a Peformance Bonus effective for wells spud after October 1, 2014")); **App. p. 459** (Ex. 31 - Drilling Rig Performance Incentive Program from Operator Concho); **App. pp. 460-461** (Ex. 32 - Email from Operator Element ("Element feels this well is the new base line for the project and would like to re-instate the performance bonus of $200.00/day, not to exceed $600.00, for besting this record")).

[120] **App. p. 167-169** (Ex. 3 - Latshaw Dep. 87:11-89:13).

[121] **App. pp. 187-188** (Ex. 3 - Latshaw Dep. 125:19-126:1); **App. p. 86, 90-91, 55-56**   (Ex. 2 – Reid 30(b)(6) Dep. 130:3-14; 134:10-135:8; 93:25-95:11).

[122] ECF Doc. 92 at p. 23, ¶ 76.

[123] **App. p. 186, 187-188** (Ex. 3 - Latshaw Dep. 124:16-21, 125:23-126:1).

Defendant also claims that Plaintiffs did not work differently because of the possibility of a bonus.[124] At the outset, whether the incentive performed as intended with respect to the Plaintiffs is less relevant to the legal analysis than whether Bonus Pay was intended to be an incentive. However, numerous Plaintiffs testified that, in fact, Bonus Pay provided a strong incentive for them to work more efficiently and in a safer fashion.[125]

Finally, Defendant makes a number of conclusory statements about what the Department of Labor Wage and Hour Division ("DOL-WHD") would require or determine with respect to OBM pay and Bonus pay, largely on the basis of the affidavit of Randy O'Neal.[126] Plaintiffs object to this affidavit in its entirety above. However, Plaintiffs also object to Defendant's characterizations of these statements as "undisputed facts" when in fact they are speculative and/or conclusory statements about what the DOL-WHD would do if it investigated. These statements are also misleading statements of law, rather than factual statements of any kind.

---

[124] ECF Doc. 92 at p. 24, ¶ 84.

[125] **App. p. 200, 201-202** (Ex. 4 – Abeyta Dep. 23:16-17, 24:24-25:2); **App. p. 208** (Ex. 5 – Barela Dep.at 39:12-16 ("They was either bottom-hole or curve pay. Deadlines. You know, beat the deadline. You know, the number of days drilled.")); **App. p. 245** (Ex. 7 – Begley Dep. 47:12-19 ("If you complete it in a timely manner then you get paid for that much time.")); **App. p. 256** (Ex. 9 - Blasingame Dep. 27:25-29:3 (bonuses for "[g]etting it done safe and fast.")); **App. p. 271** (Ex. 10 - Brown Dep. 30:4-6 (bonus because they "drilled the hole quick")); **App. p. 278, 281** (Ex. 12 - Cerna Dep. 7:11-8:4, 63:2-21); **App. p. 297** (Ex. 13 - Ellis Dep. 28:10-20 ("I gave a hundred percent all the time, but if – you know, if we knew there was going to a bonus involved, we'd do 110 percent.")); **App. p. 306** (Ex. 14 - Foster Dep. 24:12-25:1 ("[bonus pay in earnings statement shown to witness by defense counsel was a] safety bonus or completion of well before deadline bonus.")); **App. p. 317** (Ex. 15 - Goodwin Dep. 41:5-10 ("Pretty much the faster you could do it without injuries the higher the bonus could be.")); **App. pp. 347, 365** (Ex. 18 - Meadows Dep. 13:18-25, 75:11-20); **App. pp. 384-386** (Ex. 20 - Menasco Dep. 66:24-68:4 ("[bonus] made you want to work better or faster … it's a good incentive")); **App. p. 393-394** (Ex. 21 - Munger Dep. 19:11-21 (bonuses are "a production or safety based incentive.")); **App. p. 427-428** (Ex. 24 - Weems Dep. 16:25-17:5) (availability of bonuses "fired you up", "speed wise."); **App. p. 450** (Ex. 26 - Woods Dep. 36:1-7 ("if we drilled the hole within this amount of days or whatever, we would get bonuses.")).

[126] ECF Doc. 92 at pp. 17-18, ¶¶ 53-58 and pp. 23-24, ¶¶ 77-81.

# IV.   ARGUMENTS AND AUTHORITIES

Plaintiffs incorporate by reference the evidence, factual statement, and argument offered in their Brief in Support of Plaintiffs Motion for Summary Judgment.[127] Defendant has wholly failed to establish that it is entitled to summary judgment in connection with its purported affirmative defenses regarding the two types of remuneration that it undisputedly failed to include in all Plaintiffs' regular rates of pay when calculating their overtime wages during the time period relevant to this lawsuit. Even if such a defense had been properly alleged, Defendant cannot prove an affirmative defense its claims that it offered OBM pay as an expense reimbursement where it did not reasonably approximate any expenses Plaintiffs allegedly incurred through exposure to oil-based mud on Defendant's drilling rigs, nor where the OBM pay was patently offered as a shift differential for work done with oil-based mud which was clearly "hazardous, arduous, and dirty." Similarly, even if Defendant had bothered to plead that it could refrain from including Bonus Pay in Plaintiffs' regular rates of pay when calculating the overtime wages due to them, Defendant cannot prove such an affirmative defense where Plaintiffs clearly demonstrate that such Bonuses were non-discretionary in nature.

## A.   Defendant Cannot Meet Its Burden to Prove that Oil-Based Mud Pay Could Be Excluded from Plaintiffs' Regular Rate of Pay – Defendant is Liable for Its Willful Failure to Pay Proper Overtime Wages.

Plaintiffs now proceed to demonstrate that Defendant has wholly failed to establish that it is entitled to summary judgment on its affirmative defense with respect to OBM Pay.[128]

As shown above, there is a strong presumption that all remuneration paid to an employee should be included in his regular rate of pay for the purposes of calculating the overtime wages to which he is entitled. *See Gagnon v. United Technisource, Inc.*, 607 F.3d 1036, 1041 (5th Cir.

---

[127] ECF Doc. 96 at pp. 23-30.

[128] Plaintiffs again object to Defendant raising this affirmative defense and oppose their motion for leave to raise the same. These arguments are offered in the alternative to, and without waiving, said objection.

2010) (citing 29 U.S.C. § 207(a)(1)). The FLSA offers limited exceptions to that strong presumption, and employers bear the burden of proving that such an exception applies. *Johnson v. Big Lots Stores, Inc.*, 604 F. Supp. 2d 903, 927 (E.D. La. 2009) ("The employer bears the burden of demonstrating that certain payments should not be included in determining its employees' regular rate.") (citing *Idaho Sheet Metal Works, Inc. v. Wirtz*, 383 U.S. 190, 209 (1966)). One such statutory exclusion, now untimely raised by Defendant, is for "reasonable payments for traveling expenses, or other expenses, incurred by an employee in the furtherance of his employer's interests and properly reimbursable by the employer." 29 U.S.C. § 207(e)(2). The regulations applicable further clarify, "The [FLSA] requires the inclusion in the regular rate of . . . **premiums paid for hazardous, arduous, or dirty work**." 29 C.F.R. § 778.207(b) (emphasis added). Additionally, to be excluded from the regular rate under this provision, a payment must be a reimbursement for "[expenses incurred] on [the] employer's behalf or [for sums expended] solely by reason of action taken for the convenience of [the] employer." 29 C.F.R. § 778.217(a). Such reimbursement must finally "reasonably approximate the expenses incurred." *Id.*

### 1.   Oil-Based Mud Pay Did Not Reasonably Approximate Plaintiffs' Purported Expenses to Qualify as a Per Diem Expense Reimbursement.

Defendant claims in its Motion that OBM Pay represents reasonable reimbursement for wear to Plaintiffs clothing, underwear, socks, boots, gloves, and for laundering costs and the purchasing of ointment for skin rashes. Plaintiffs, in contrast, have shown that OBM Pay represents a shift differential payment because of the "hazardous, arduous, and dirty" nature of working with OBM. 29 C.F.R. § 778.207(b). However, assuming *arguendo* that OBM Pay could be construed as a mere attempt to reimburse Plaintiffs for incurred expenses, Defendant would still fails to meet its burden to establish that it is properly excludable under § 207(e)(2).

To begin, OBM Pay on its face cannot be reimbursement for damaged clothing because Latshaw already had in place a system which provided Plaintiffs with clothing and replaced clothes as they wore out. Plaintiffs were provided with multiple pairs of FRC clothing upon commencement of their employment.[129] Latshaw then provided "points" at regular intervals which could be used to replace this clothing at a rate of a set every 1-2 months.[130] As a result of this system, the Discovery Plaintiffs testified repeatedly that they never had to purchase work clothing out of pocket.[131] Insofar as Latshaw contends that OBM pay was meant to pay for replacement boots, several Discovery Plaintiffs testified that they were able to obtain boots through the aforementioned point system as well.[132] While Defendant contends that OBM Pay was meant to reimburse Plaintiffs for laundering expenses associated with OBM, Defendant provided laundering facilities at its worksite and had a policy that, "[c]ontaminated FRC apparel is not to be cleaned in a public washing facility."[133] Therefore, a majority of the costs Defendant claims are reimbursed by OBM Pay were in fact defrayed entirely by alternative mechanisms put in place by Defendant. It strains plausibility for Defendant to concede that these systems existed, yet insist that OBM Pay was necessary to reimburse Plaintiffs' expenses.

---

[129] **App. p. 121** (Ex. 2 – Reid 30(b)(6) Dep.  177:2-16); **App. pp. 177-178** (Ex. 3 - Latshaw Dep. 105:23-106:20); *See also* ECF Doc. 93 at p. 7, ¶ 21.

[130] **App. p. 178-179** (Ex. 3 - Latshaw Dep. 106:21-108:8); **App. p. 121-122** (Ex. 2 – Reid 30(b)(6) Dep. 177:17-178:15); *See also* ECF Doc. 93 at p. 7, ¶ 24.

[131] **App. p. 195** (Ex. 4 – Abeyta Dep. 13:5-15); **App. p. 211** (Ex. 5 – Barela Dep. 66:4-21); **App. p. 219** (Ex. 6 – Batten Dep. 42:6-11); **App. p. 251** (Ex. 8 – Bissell Dep. 34:16-23); **App. p. 338** (Ex. 16 - Hilyer Dep. 31:8-24); **App. p. 359** (Ex. 18 - Meadows Dep. 69:19-70:11); **App. p. 372-373** (Ex. 19 - Medlin Dep. 24:17-25:1); **App. p. 403-404** (Ex. 21 - Munger Dep. 47:3-48:5); **App. pp. 418-419** (Ex. 22 - Osburn Dep. 32:17-33:2); **App. p. 438** (Ex. 25 - Wilkinson Dep. 20:8-15); **App. pp. 452-453** (Ex. 26 - Woods Dep. 63:15-64:2).

[132] **App. p. 342-343** (Ex. 17 - Loomis Dep. at 20:24-21:4); **App. pp. 403-404** (Ex. 21 - Munger Dep. 47:23-48:1); **App. p. 438** (Ex. 25 - Wilkinson Dep. 20:16-18).

[133] **App. p. 478** (Ex. 45 - Latshaw FRC Policy); *See also* **App. p. 195-196** (Ex. 4 – Abeyta Dep. 13:20-14:15); **App. p. 360** (Ex. 18 - Meadows Dep. 70:12-23); **App. pp. 416-417** (Ex. 22 - Osburn Dep. 23:24-24:3).

Furthermore, it is undisputed that Plaintiffs were paid the same amount of OBM Pay regardless of whether they worked with OBM for 1 hour or for an entire shift.[134] If, as Defendant contends, OBM Pay is compensation solely an expense reimbursement for wear resulting from exposure to OBM, then on some days Plaintiffs would encounter very little exposure to OBM (for instance if the rig began drilling with oil-based mud just an hour before a Plaintiff's shift was set to end), and accordingly experience comparatively less wear to their property. However, the purported "reimbursement" would remain the same. Accordingly, the OBM Pay Defendant offered could not be "reasonably" related to Plaintiffs' alleged expenses where their exposure to oil-based mud would frequently vary while OBM Pay would not.

In *Hanson v. Camin Cargo Control*, *Inc*., the Court found that, though the employer asserted that vehicle wear-and-tear for its employees exceeded those of the average commuter, because it did not provide supporting numbers to demonstrate the same, it did not meet its burden to show that a "car allowance" was a properly excludable reimbursement. No. H-13-0027, 2015 WL 1737394, at *4 (S.D. Tex. Apr. 16, 2015). There the court also observed, in reaching this conclusion, that the car allowance calculation included expenses that were already covered by a separate reimbursement referred to as a "mileage payment." *Id*. These facts are remarkably similar to Defendant's position with respect to OBM Pay. Defendant admits that it did not and cannot track the amount wear to Plaintiffs property (or Latshaw's own property) that resulted from exposure to OBM.[135]

Defendant must establish that the OBM Pay received by the Discovery Plaintiffs was "reasonably approximate" to the actual expenses they incurred, and a "post hoc attempt to

---

[134] *Id*. at p. 13, ¶ 41.
[135] **App. pp. 184-185** (Ex. 3 – Latshaw Dep. 112:11-113:9. ("And, you know, to say it's, you know, it lasted two years when it should have lasted three years because we're in oil-based mud, no. We don't have any way to track that kind of stuff.")).

demonstrate the reasonableness" will not suffice to establish the same. *Gagnon*, 607 F.3d at 1041
n.6. Defendant cannot demonstrate that it took into account any alleged expenses before
tendering OBM Pay. It produces no receipts collected at the time Plaintiffs received OBM Pay in
the relevant time period, and cites only two impermissible post-hoc attempts to compute the
expenses incurred by particular Plaintiffs relative to the amount they received for OBM pay.
Even if consideration of those post-hoc attempts were permissible pursuant to *Gagnon*, both of
Defendant's attempts demonstrate that the OBM Pay Plaintiffs received exceeded the expenses
Defendant claims were attributable to OBM, and by different amounts for each of two
Plaintiffs.[136] Because Defendant has made no other attempt to quantify the amount of wear it
contends results from exposure to OBM, and accordingly the amount of expenses it claims
Plaintiffs incurred, it cannot prevail on its burden to establish that the OBM Pay received by
Plaintiffs was a reasonable approximation of expenses they allegedly incurred.

Finally, Defendant's sole citation to support its position that OBM Pay is properly
excludable as an expense reimbursement consists of exactly one sentence from an arbitrator's
award. *In the Matter of the Arbitration Between [Claimant] and [Respondent]*, 2017 WL
1364323, at *8 (AAA) (March 27, 2017) ("Regarding the Oil Based Mud Pay, the evidence
established, including Claimant's own testimony, that this was to roughly reimburse workers for
the cost of cleaning their clothing of this oil-based product."). First, this ruling by an arbitrator
carries no precedential value and is in no way binding on this Court. Second, it was decided on
the basis of California State Law rather than the FLSA. *Id*. at *2. But more importantly, the
arbitrator's award gives precisely *zero* factual support for its determination, relying solely on an
employee's admission that oil-based mud pay that he earned was to "roughly reimburse" him for
the cost of cleaning his clothing. *Id*. at *8. The decision is silent as to specific testimony, the

---

[136] ECF Doc. 93 at p. 27-28.

amount of the OBM Pay, whether OBM Pay was paid on an hourly, daily, or other basis, or what attempts, if any, the employer made to relate any expenses incurred by the claimant to the amount paid. *Id.* It advances no facts as to whether the undisclosed employer provided any clothing to its workers upon their employment or throughout the course of their employment, or provided laundry services as Latshaw did. Accordingly, even were the Court to ascribe some persuasive value to an arbitrator's one-sentence interpretation of OBM Pay under California State Law, the minimal recitation of facts present in the opinion do not demonstrate its applicability to this case.

**2.     Oil-Based Mud Pay Represents a Shift Differential for "Hazardous, Arduous, and Dirty" Work Which Must Be Included in the Regular Rate of Pay.**

"Where an employee receives a higher wage or rate because of undesirable hours or disagreeable work, such wage represents a shift differential or higher wages because of the character of work done or the time at which he is required to labor rather than an overtime premium. Such payments enter into the determination of the regular rate of pay." *Bay Ridge Operating Co. v. Aaron*, 334 U.S. 446, 468–69 (1948).

The Discovery Plaintiffs in the instant case repeatedly assert their understanding that OBM Pay was compensation for the hazards associated with working with OBM.[137] Plaintiffs do, admittedly, testify that it is difficult to wash out of clothing as well as skin and hair.[138] But

---

[137] **App. p. 192** (Ex. 4 – Abeyta Dep. 10:20-25); **App. p. 210** (Ex. 5 – Barela Dep. 65:5-14); **App. p. 217** (Ex. 6 – Batten Dep. 40:19-25); **App. p. 229** (Ex. 7 – Begley Dep. 24:10-12); **App. p. 249-250** (Ex. 8 – Bissell Dep. 24:8-25:11); **App. p. 279** (Ex. 12 – Cerna Dep. 13:3-5); **App. p. 319** (Ex. 15 - Goodwin Dep. 43:24-44:4); **App. pp. 357** (Ex. 18 - Meadows Dep. 23:18-24:5); **App. p. 369** (Ex. 19 - Medlin Dep. 14:18-19); **App. p. 377** (Ex. 20 - Menasco Dep. 31:21-25); **App. p. 402** (Ex. 21 - Munger Dep. 29:15-22); **App. p. 411** (Ex. 22 - Osburn Dep. 18:12-13); **App. p. 422** (Ex. 23 - Rodriguez Dep. 31:10-12); **App. p. 436** (Ex. 25 - Wilkinson Dep. 18:19-24); **App. p. 451** (Ex. 26 - Woods Dep. 46:9-14).

[138] **App. p. 197** (Ex. 4 – Abeyta Dep. 20:14-21); **App. p. 231** (Ex. 7 – Begley Dep. 26:1-5); **App. p. 270** (Ex. 10 – Brown Dep. 17:16-20); **App. p. 275** (Ex. 11 – Burge Dep. 37:12-20); **App. p. 288** (Ex. 13 – Ellis Dep. 19:6-15); **App. p. 319-320** (Ex. 15 - Goodwin Dep. 43:24-44:6); **App. p. 422** (Ex. 23 - Rodriguez Dep. 31:19-24).

they also note that OBM could result in rashes, hives, and burning to their skin.[139] Discovery Plaintiffs testified that OBM posed a slipping hazard.[140] And some Discovery Plaintiffs either experienced or witnessed physical injuries as a result of working with OBM.[141]

Defendant's President confirmed in his deposition that it is "possible" that some individuals working with OBM could have physical side effects.[142] Defendant admits in its Interrogatory Responses that OBM Pay partly represents "remuneration for extraordinary wear on an employee's person."[143] Defendant then confirms in its Motion for Summary Judgment that OBM can result in skin irritation[144] and concedes that exposure to OBM results in at least some *reported* injuries.[145] Accordingly, Defendant implicitly confirms the representative testimony of the Discovery Plaintiffs that OBM was a hazardous and unpleasant material to work with. Accordingly, pay for working with OBM constitutes a shift differential which must be included in the regular rate of pay.

The OBM Pay offered by Defendant is again analogous to the extra remuneration considered by the Court in *Hanson*, which was "offshore duty pay" in the form of an extra $45 per day when the employers boats were out of the harbor (there, as in the instant case, payment

---

[139] **App. p. 193** (Ex. 4 – Abeyta Dep. 11:1-8); **App. p. 229** (Ex. 7 – Begley Dep. 24:13-19); **App. p. 255** (Ex. 9 – Blasingame Dep. 14:11-14); **App. p. 268** (Ex. 10 – Brown Dep. 15:14-25); **App. p. 275** (Ex. 11 – Burge Dep. 37:2-6); **App. p. 279** (Ex. 12 – Cerna Dep. 13:6-12); **App. p. 287-288** (Ex. 13 – Ellis Dep. 18:19-19:5); **App. p. 301** (Ex. 14 - Foster Dep. 19:5-7); **App. p. 320-321** (Ex. 15 – Goodwin Dep. 44:5-44:11); **App. p. 358** (Ex. 18 – Meadows Dep. 24:13-23); **App. p. 371** (Ex. 19 - Medlin Dep. 16:3-11); **App. p. 411** (Ex. 22 - Osburn Dep. 18:14-17); **App. p. 422** (Ex. 23 - Rodriguez Dep. 31:19-24); **App. p. 437** (Ex. 25 - Wilkinson Dep. 19:4-12).

[139] **App. p. 386** (Ex. 20 - Menasco Dep. 68:5-22).

[140] **App. p. 211** (Ex. 5 – Barela Dep. 66:2-3); **App. p. 234** (Ex. 7 – Begley Dep. 29:10-16); **App. p. 314** (Ex. 15 - Goodwin Dep. 24:10-18); **App. p. 331** (Ex. 16 – Hilyer Dep. 24:9-18); **App. p. 369** (Ex. 19 - Medlin Dep. 14:20-22); **App. p. 413** (Ex. 22 – Osburn Dep. 20:17-21).

[141] **App. p. 234** (Ex. 7 – Begley Dep. 29:20-24); **App. p. 269-270** (Ex. 10 – Brown Dep. 16:3-17:5); **App. p. 312** (Ex. 15 - Goodwin Dep. 21:17-8); **App. p. 327** (Ex. 16 - Hilyer Dep. 9:2-11).

[142] **App. pp. 173-174** (Ex. 3 - Latshaw Dep. 101:24-102:25).

[143] **App p. 456** (Ex. 28 – Defendant's Resp. to Interrogatories at Rog. No. 3).

[144] ECF Doc 93 at p. 11, ¶ 33.

[145] *Id.* at p. 13, ¶ 39.

was made at the same rate regardless of whether the boat was offshore for a matter of hours or a matter of days). 2015 WL 1737394, at *3. Though the employer in *Hanson* characterized this additional pay as an expense reimbursement for spending more on hygiene products that employees would have to use more of while at sea, the Court found that the "payment more closely resembles a 'shift differential,'" namely compensation for employee inconvenience. *Id.* The court based this conclusion in part on the employer's failure to offer evidence that the pay reasonably approximated the employees' expenses. *Id.* As shown in the above section, Defendant's evidence in support of its Motion suffers from the same defect.

### B. <u>Defendant Cannot Meet Its Burden to Prove that Bonus Pay Was Properly Excluded from Plaintiffs' Regular Rate of Pay When Calculating the Overtime Pay Due to Them.</u>

In its Motion for Summary Judgment, Defendant correctly cites 29 C.F.R. § 778.211(b), which states that, in order for a bonus to qualify as discretionary, "the *employer* must retain discretion both as to the fact of payment and as to the amount until a time quite close to the end of the period for which the bonus is paid." (emphasis added). This regulation interprets the statutory exclusion to the regular rate for discretionary bonus payments as requiring with respect to such payments that, "both the fact that payment is to be made and the amount of payment are determined at the sole discretion *of the employer* [. . .] and pursuant to any prior contract, agreement, or promise." 29 U.S.C. § 207(e)(3) (emphasis added). Defendant then proceeds to cite to the DOL Field Handbook, but neglects to cite the passage that immediately precedes the language it refers to which again states that discretionary bonuses may be excluded from the regular rate of pay only if "both the fact that payment is to be made and the amount of the payment are determined as the sole discretion *of the employer*." DOL Field Handbook, Ch.

32c01(b) (emphasis added). The DOL Field Handbook is not binding on the Court's analysis, though it may have persuasive effect. *Gagnon*, 607 F.3d at FN6.

Defendant then concedes in its Motion that, "The Operator Bonuses were paid in the sole discretion of the operator."[146] This concession is supported by the testimony of Trent Latshaw[147] as well as Defendant's interrogatory response on the matter.[148] In spite of Defendant's characterization of the remuneration as "from the customer," however, it is undisputed that Bonus Pay  was paid to Plaintiffs in earnings statements issued by Defendant, and that Defendant withheld payroll taxes when it paid that Bonus Pay.[149] No statutory from exclusion exists for remuneration that originates with a customer. 29 U.S.C. § 207(e)(1)-(8); *See also* 29 U.S.C. § 207(e) ("The FLSA regular rate of pay "shall be deemed to include all remuneration for employment *paid to, or on behalf of*, the employee. . ..") (emphasis added). Indeed, most businesses could argue that money it pays to its employees originates in some fashion at the discretion of their customers who chooses to transact with them. There is likewise no statutory exclusion that would be implicated relative to Defendant's assertion that it "stood in the position of a payroll company." *Id*. Defendant does not contend that any of its customers were themselves employers or joint employers of Plaintiffs.[150] Under the plane language of the statute, the Bonuses paid by Defendant are not and cannot be discretionary bonuses under § 207(e).

Defendant refers to the DOL Field Handbook to determine "what level of evidence is required to find a bonus non-discretionary."[151] Insofar as this phrasing implies that bonuses are

---

[146] ECF Doc. 93 at p. 30.
[147] **App. p. 186, 187-188** (Ex. 3 - Latshaw Dep. 124:16-21, 125:23-126:1) ("The operator bonus is money from the customer […] It's at their sole discretion.").
[148] **App p. 456** (Ex. 28 – Defendant's Resp. to Interrogatories at Rog. No. 3).
[149] **App. pp. 187-188** (Ex. 3 - Latshaw Dep. 125:19-126:1); **App. p. 86, 90-91, 55-56**  (Ex. 2 – Reid 30(b)(6) Dep. 130:3-14; 134:10-135:8; 93:25-95:11).
[150] **App. p. 30** (Ex. 2 - Reid 30(b)(6) Dep. 70:9-16).
[151] ECF Doc. 93 at p. 29.

presumed discretionary, it is a mischaracterization of Defendant's burden as an employer under the FLSA. Defendant bears the burden of proving that a statutory exclusion allows it to exclude remuneration from the regular rate of pay. *Johnson,* 604 F. Supp. 2d at 927 ("The employer bears the burden of demonstrating that certain payments should not be included in determining its employees' regular rate.") (citing *Idaho Sheet Metal,* 383 U.S. at 209). At any rate, Defendant refers to the DOL Field Handbook for the proposition that Plaintiffs must describe who promised a bonus, under what circumstances, and whether any reassurances were received at some later time.[152] While these requirements are not statutory or binding on the Court, the evidence in this case supports that Plaintiffs have provided testimony as to all 3 persuasive factors.

Plaintiffs have demonstrated at the outset that the availability of Bonus Pay as a safety or performance incentive was announced to them initially in Defendant's employee handbook.[153] The Discovery Plaintiffs testified that the requirements for a particular bonus were generally communicated to upon their arrival at a particular rig, and at any rate well in advance of the completion of the work and the time of payment.[154] Plaintiffs also have these requirements communicated to them and receive reassurances as to the availability of the bonus by the Tool Pusher or Rig Manager, a Latshaw employee, who would often write the requirements of to attain the bonus on a board in his or her office.[155]

Courts have held that, even where a Plaintiff merely recalls having a bonus discussed verbally at a staff meeting, the same is sufficient to support the notion that a bonus was promised

---

[152] *Id.*

[153] **App. p. 462** (Ex. 33 - Excerpt from Latshaw Employee Handbook).

[154] **App. p. 201** (Ex. 4 – Abeyta Dep. 24:4-20); **App. p. 212** (Ex. 5 – Barela Dep.at 67:15-16); **App. p. 261, 262, 264** (Ex. 9 - Blasingame Dep. 32:21-23, 33:4-11, 62:12-23); **App. p. 281** (Ex. 12 - Cerna Dep. 89:23-25) (plaintiffs were entitled to bonuses "because we had an agreement"); **App. p. 362-363, 364** (Ex. 18 - Meadows Dep. 72:17-73:4, 74:16-25); **App. pp. 405-406** (Ex. 21 - Munger Dep. 49:5-12, 50:20-51:4); **App. p. 441-442, 446** (Ex. 25 - Wilkinson Dep. 32:25-33:9, 37:19-38:7).

[155] **App. p. 204** (Ex. 4 – Abeyta Dep. 27:4-12); **App. p. 213** (Ex. 5 – Barela Dep.at 68:3-10); **App. p. 261** (Ex. 9 - Blasingame Dep. 32:24-33:3).

or agreed to. *Mata v. Caring for You Home Health, Inc.*, No. 7:13–CV–287, 2014 WL 12538135, at *4 (S.D. Tex. Aug. 12, 2014). Courts also look to whether a Plaintiff may have been led to expect a bonus payment. *Id.* Because Bonus Pay in the instant case was premised on specific criteria which were communicated to the Plaintiffs, namely that the 'hole' be drilled within a certain amount of time and that no safety incidents occur, Plaintiffs would have and did expect to receive a bonus when these criteria were met.[156] Trent Latshaw provided a further basis for Plaintiffs to expect to receive a Performance and Safety Bonus when he testified that such bonuses are an "industry tradition."[157]

Defendant contends in its Motion that because the criteria might not be met, that a bonus is necessarily discretionary.[158] However, simply because a bonus is accompanied by conditions which may or may not be met, it does not follow that a such a bonus is discretionary. *See Brock v Two R Drilling Co., Inc.¸* 789 F.2d 1177, 1179 (5th Cir. 1986) (bonus is not discretionary even though it is contingent on meeting five conditions). Even if a bonus is attended by certain conditions and an employee has no right to enforce its payment, it is not discretionary for the

---

[156] **App. p. 200, 203-204** (Ex. 4 – Abeyta Dep. 23:16-17, 24:24-25:2); **App. p. 208** (Ex. 5 – Barela Dep.at 39:12-16 ("They was either bottom-hole or curve pay. Deadlines. You know, beat the deadline. You know, the number of days drilled.")); **App. p. 245** (Ex. 7 – Begley Dep. 47:12-19 ("If you complete it in a timely manner then you get paid for that much time.")); **App. p. 256-258** (Ex. 9 - Blasingame Dep. 27:25-29:3 (bonuses for "[g]etting it done safe and fast.")); **App. p. 271** (Ex. 10 - Brown Dep. 30:4-6 (bonus because they "drilled the hole quick")); **App. p. 278, 281** (Ex. 12 - Cerna Dep. 7:11-8:4, 63:2-21); **App. p. 297** (Ex. 13 - Ellis Dep. 28:10-20 ("I gave a hundred percent all the time, but if – you know, if we knew there was going to a bonus involved, we'd do 110 percent.")); **App. p. 306-307** (Ex. 14 - Foster Dep. 24:12-25:1 ("[bonus pay in earnings statement shown to witness by defense counsel was a] safety bonus or completion of well before deadline bonus.")); **App. p. 317** (Ex. 15 - Goodwin Dep. 41:5-10 ("Pretty much the faster you could do it without injuries the higher the bonus could be.")); **App. pp. 347, 365** (Ex. 18 - Meadows Dep. 13:18-25, 75:11-20); **App. pp. 384-386** (Ex. 20 Menasco Dep. 66:24-68:4 ("[bonus] made you want to work better or faster … it's a good incentive")); **App. p. 393-394** (Ex. 21 - Munger Dep. 19:11-21 (bonuses are "a production or safety based incentive.")); **App. p. 427-428** (Ex. 24 - Weems Dep. 16:25-17:5) (availability of bonuses "fired you up", "speed wise."); **App. p. 450** (Ex. 26 - Woods Dep. 36:1-7 ("if we drilled the hole within this amount of days or whatever, we would get bonuses.")).

[157] **App. p. 168** (Ex. 3 - Latshaw Dep. 88:16-23).

[158] ECF Doc. 93 at p. 30.

purposes of the FLSA if it has been announced in advance to achieve a business goal. *Gonzalez,* 2007 WL 1097887, at *4 (finding that a bonus conditioned in part on the financial state of the company is nevertheless not discretionary). Defendant again refers to the previously cited arbitration panel decision to refute this proposition, but, as with OBM Pay, the decision was grounded in California State Law. *In the Matter of the Arbitration,* 2017 WL 1364323 at *8. The decision does not state the amount of the bonus, whether it was paid directly by the employer, or whether the employer retained discretion regarding the fact or amount of payment. *Id.* It further does not consider the bonus at issue in the case in the context of the FLSA itself. *Id.* As with OBM, this decision should be afforded little or no weight by the Court due to the threadbare record and different statutory framework upon which it was decided.

The regulations state further state, "[b]onuses which are announced to employees to induce them to work more steadily or more rapidly or more efficiently or to remain with the firm are regarded as part of the regular rate of pay. Attendance bonuses, individual *or group production bonuses*, *bonuses for quality or accuracy of work* [...] and the like are in this category. They must be included in the regular rate of pay." 29 C.F.R. § 778.211(c) (emphasis added). The same chapter of the DOL Field Handbook cited by Defendant likewise lists "production bonuses" as well as "bonuses that are paid for performing work in less than an established standard time" as "examples of bonuses which would normally be included in the regular rate of pay." DOL Field Handbook, Ch. 32c00(b). While these criteria of performance and speed are perfectly in line with Plaintiffs characterizations of the bonus criteria cited above, Latshaw's customers would *also* commonly refer to the bonuses as "performance bonuses" or in similar terms.[159] More notably, however, is that Latshaw itself would refer to the Bonuses as

---

[159] **App. p. 457** (Ex. 29 - Bonus Program Overview from Operator Approach); **App. p. 458** (Ex. 30 - Email from Operator Centennial ("Centennial will being to implement a Peformance Bonus effective for

"performance bonuses" or "safety and performance bonuses" when it would invoice its customers for the amount of the bonus to be paid to Latshaw's employees.[160]

"The regular rate cannot be left to a declaration by the parties as to what is to be treated as the regular rate for an employee, instead, courts are required to look beyond that which the parties have purported to do and find the hourly rate actually paid for the normal, non-overtime workweek." *Mata*, 2014 WL 12358125, at *4. (internal quotations and citations omitted). Here, the Discovery Plaintiffs testimony is clear that bonuses were promised to and in fact did incentive them to work in a faster, more efficiently, and in a safer manner.[161]

---

wells spud after October 1, 2014")); **App. p. 459** (Ex. 31 - Drilling Rig Performance Incentive Program from Operator Concho); **App. pp. 460-461** (Ex. 32 - Email from Operator Element ("Element feels this well is the new base line for the project and would like to re-instate the performance bonus of $200.00/day, not to exceed $600.00, for besting this record")).

[160] **App. p. 463** (Ex. 34 - Invoice to Operator Alta Mesa for "Safety and Perfomance Bonus"); **App. p. 464** (Ex. 35 - Invoice to Operator Approach for "Crew Bonus – Performance"); **App. pp. 465-467** (Ex. 36 - Invoice to Operator Bopco for "Crew Bonuses" and attached description of bonus criteria); **App. p. 468** (Ex. 37 - Description of Bonus from Operator Centennial for "Performance & Safety"); **App. p. 469** (Ex. 38 - Invoice to Operator COG for "Crew Bonus – Performance & Safety"); **App. p. 470-471** (Ex. 39 - Invoice to Operator Element for "Crew Bonus – Safety" and attached "Performance & Safety" Bonus Breakdown); **App. p. 472** (Ex. 40 - Invoice to Operator Enervest for "Crew Bonus – Safety"); **App. p. 473** (Ex. 41 - Invoice to Operator Diamondback for "Crew Bonus – Performance"); **App. p. 474** (Ex. 42 - Invoice to Operator Legacy for "Safety & Performance Bonus"); **App. p. 475** (Ex. 43 - Invoice to Operator Sandridge for "Crew Bonus – Performance"); **App. p. 476** (Ex. 44 - Invoice to Operator Tall City for "Crew Bonus – Performance").

[161] **App. p. 200, 201-202** (Ex. 4 – Abeyta Dep. 23:16-17, 24:24-25:2); **App. p. 208** (Ex. 5 – Barela Dep.at 39:12-16 ("They was either bottom-hole or curve pay. Deadlines. You know, beat the deadline. You know, the number of days drilled.")); **App. p. 245** (Ex. 7 – Begley Dep. 47:12-19 ("If you complete it in a timely manner then you get paid for that much time.")); **App. p. 256-258** (Ex. 9 - Blasingame Dep. 27:25-29:3 (bonuses for "[g]etting it done safe and fast.")); **App. p. 271** (Ex. 10 - Brown Dep. 30:4-6 (bonus because they "drilled the hole quick")); **App. p. 278, 281** (Ex. 12 - Cerna Dep. 7:11-8:4, 63:2-21); **App. p. 297** (Ex. 13 - Ellis Dep. 28:10-20 ("I gave a hundred percent all the time, but if – you know, if we knew there was going to a bonus involved, we'd do 110 percent.")); **App. p. 306-307** (Ex. 14 - Foster Dep. 24:12-25:1 ("[bonus pay in earnings statement shown to witness by defense counsel was a] safety bonus or completion of well before deadline bonus.")); **App. p. 317** (Ex. 15 - Goodwin Dep. 41:5-10 ("Pretty much the faster you could do it without injuries the higher the bonus could be.")); **App. pp. 347, 365** (Ex. 18 - Meadows Dep. 13:18-25, 75:11-20); **App. pp. 384-386** (Ex. 20 - Menasco Dep. 66:24-68:4 ("[bonus] made you want to work better or

faster … it's a good incentive")); **App. p. 393-394** (Ex. 21 - Munger Dep. 19:11-21 (bonuses are "a production or safety based incentive.")); **App. p. 427-428** (Ex. 24 - Weems Dep. 16:25-17:5) (availability of bonuses "fired you up", "speed wise."); **App. p. 450** (Ex. 26 - Woods Dep. 36:1-7 ("if we drilled the hole within this amount of days or whatever, we would get bonuses.")).

Because Defendant did not actually retain any discretion as to the amount or fact of the Bonus Payments, and because it announced the same in advance to induce faster, safer, and more productive work from its employees, it has wholly failed to meet its burden of proof to establish exclusion of Bonus Pay from the Plaintiffs' respective regular rates of pay.

## V.    **PRAYER**

Plaintiffs respectfully request that the Court deny Defendant's Motion for Summary Judgment and grant all other relief to which Plaintiffs may be justly entitled.

Respectfully submitted,

By: s/Allen R. Vaught
  Allen R. Vaught, TX Bar No. 24004955
  Melinda Arbuckle, TX Bar No. 24080773
  Michael V. Ellis, TX Bar No. 24068602
  Farsheed Fozouni, TX Bar No. 24097705
  Baron & Budd, P.C.
  3102 Oak Lawn Ave., Suite 1100
  Dallas, TX 75219
  (214) 521-3605 Phone
  (214) 520-1181 Fax
  avaught@baronbudd.com
  marbuckl@baronbudd.com
  mellis@baronbudd.com
  ffozouni@baronbudd.com

ATTORNEYS FOR PLAINTIFFS

## **CERTIFICATE OF SERVICE**

On November 30, 2017 I electronically submitted the foregoing document with the clerk of court for the U.S. District Court, Northern District of Texas, using the electronic case filing system of the Court. I hereby certify that I have served all Counsel of record electronically.

s/Allen R. Vaught
Allen R. Vaught